CERTIFICATE

I, GREGORY J. THORNTON, Assistant General Counsel, United States Parole

Commission, 90 K Street, N.E, Washington, D.C. 20530, certify that the attached documents are

true copies of documents contained in the parole file of Richard Thompson, Register Number

20080-101 reviewed by me on the date stated below.

IN WITNESS WHEREOF, I have signed this 19th day of December, 2018, and have

affixed the seal of the United States Parole Commission.



Gregory J. Thornton
Assistant General Counsel
U.S. Parole Commission

```
PARA4  540*23 *              SENTENCE MONITORING           *     06-15-2018
PAGE 001         *          COMPUTATION DATA               *     09:22:19
                            AS OF 06-15-2018
```

REGNO..: 20080-101 NAME: THOMPSON, RICHARD L


```
FBI NO..........: 304203N7          DATE OF BIRTH:            AGE:
ARS1............: CNK/A-DES
UNIT............:                    QUARTERS.....:
DETAINERS.......: NO                 NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE


---------------------CURRENT JUDGMENT/WARRANT NO: 020 ---------------------

```
COURT OF JURISDICTION...........: CALIFORNIA, CENTRAL DISTRICT
DOCKET NUMBER...................: CR76-1538
JUDGE...........................: HAUK
DATE SENTENCED/PROBATION IMPOSED: 06-27-1977
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 06-04-1980
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 ------------------------
OFFENSE CODE....:  721
OFF/CHG: 18:1111 MURDER

```
 SENTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
 SENTENCE IMPOSED/TIME TO SERVE.: LIFE
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CONSECUTIVE
 DATE OF OFFENSE................: 02-16-1976
```

---------------------CURRENT JUDGMENT/WARRANT NO: 030 ---------------------

```
COURT OF JURISDICTION...........: ILLINOIS, SOUTHERN DISTRICT
DOCKET NUMBER...................: 82-40053
JUDGE...........................: FOREMAN
DATE SENTENCED/PROBATION IMPOSED: 05-18-1983
DATE WARRANT ISSUED.............: N/A
```


```
G0070      PRIOR YCA INMT. PER PS5215,CONSULT REGION COUNSEL BEFORE DISCLOSURE
G0002      MORE PAGES TO FOLLOW . . .
```

Exhibit 1

```
     PARA4   540*23 *           SENTENCE MONITORING        *     06-15-2018
     PAGE 002        *          COMPUTATION DATA           *     09:22:19
                                AS OF 06-15-2018
```

REGNO..: 20080-101 NAME: THOMPSON, RICHARD L


DATE WARRANT EXECUTED..........: N/A
DATE COMMITTED.................: 05-18-1983
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO
SPECIAL PAROLE TERM............:


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  112
OFF/CHG: 18:751(A) KNOWINGLY AND INTENTIONALLY ATTEMPTING TO ESCAPE
         FROM THE CUSTODY OF THE ATTORNEY GENERAL.

  SENTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
  SENTENCE IMPOSED/TIME TO SERVE.:    5 YEARS
  RELATIONSHIP OF THIS OBLIGATION
   TO OTHERS FOR THE OFFENDER....: CONCURRENT
  DATE OF OFFENSE................: 01-13-1982

---------------------CURRENT JUDGMENT/WARRANT NO: 040 ----------------------

COURT OF JURISDICTION..........: ILLINOIS, SOUTHERN DISTRICT
DOCKET NUMBER..................: CR 85-40004-01
JUDGE..........................: FOREMAN
DATE SENTENCED/PROBATION IMPOSED: 08-02-1985
DATE WARRANT ISSUED............: N/A
DATE WARRANT EXECUTED..........: N/A
DATE COMMITTED.................: 08-02-1985
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO
SPECIAL PAROLE TERM............:


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

G0070      PRIOR YCA INMT. PER PS5215,CONSULT REGION COUNSEL BEFORE DISCLOSURE
G0002      MORE PAGES TO FOLLOW . . .

```
    PARA4  540*23 *           SENTENCE MONITORING        *      06-15-2018
    PAGE 003       *          COMPUTATION DATA           *      09:22:19
                              AS OF 06-15-2018
```

REGNO..: 20080-101 NAME: THOMPSON, RICHARD L


------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  011
OFF/CHG: 18:111 ASSAULT ON A FEDERAL CORRECTIONAL OFFICER.

  SENTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
  SENTENCE IMPOSED/TIME TO SERVE.:   10 YEARS
  RELATIONSHIP OF THIS OBLIGATION
   TO OTHERS FOR THE OFFENDER....: CONSECUTIVE
  DATE OF OFFENSE................: 07-17-1983

------------------------CURRENT COMPUTATION NO: 020 ------------------------

COMPUTATION 020 WAS LAST UPDATED ON 04-04-2018 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 06-23-2010 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010, 030 010, 040 010

DATE COMPUTATION BEGAN..........: 06-04-1980
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 10
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 02-16-1976

TOTAL JAIL CREDIT TIME..........: 0
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: N/A
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: 06-03-1990
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: 02-03-2017
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE
TIME SERVED.....................:    38 YEARS     12 DAYS


G0070        PRIOR YCA INMT. PER PS5215,CONSULT REGION COUNSEL BEFORE DISCLOSURE
G0002        MORE PAGES TO FOLLOW . . .
```

```
    PARA4   540*23 *              SENTENCE MONITORING          *      06-15-2018
    PAGE 004        *             COMPUTATION DATA             *      09:22:19
                                  AS OF 06-15-2018
```

REGNO..: 20080-101 NAME: THOMPSON, RICHARD L


NEXT PAROLE HEARING DATE........: 03-00-2013
TYPE OF HEARING.................: STATUTORY INTERIM HEARING

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE

REMARKS.......: STATE BORDER INMATE, RESP OF CNK.
               1-14-2010 DSCC ASSUMED COMP. KRS/N
               06-14-2010 UPDATED TO CHANGE DATE OF EGT
               8/14/12-RPC'D TO RMV FM CCC ROSTER. CASE MONITORED BY CCM-NY.




G0070      PRIOR YCA INMT. PER PS5215,CONSULT REGION COUNSEL BEFORE DISCLOSURE
G0002      MORE PAGES TO FOLLOW . . .

```
PARA4  540*23 *           SENTENCE MONITORING        *      06-15-2018
PAGE 005        *           COMPUTATION DATA          *      09:22:19
                          AS OF 06-04-1980
```

REGNO..: 20080-101 NAME: THOMPSON, RICHARD L


FBI NO...........: 304203N7          DATE OF BIRTH: ███████  AGE: ██
ARS1.............: CNK/A-DES
UNIT.............:                    QUARTERS.....:
DETAINERS........: YES                NOTIFICATIONS: NO


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  06-04-1980 VIA MAND PAR

REMARKS........: ASSLT OF CORR OFFICER ; USM S:IL 85-40004

-----------------------PRIOR JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: VIRGINIA, EASTERN DISTRICT
DOCKET NUMBER...................: 166-74-A
JUDGE...........................: MERHIGE
DATE SENTENCED/PROBATION IMPOSED: 09-13-1974
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 09-24-1974
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT: $00.00

-----------------------PRIOR OBLIGATION NO: 010 -----------------------
OFFENSE CODE....:  754
OFF/CHG: STATE AND GOVERNMENT RESERVATIONS, RAPE.

  SENTENCE PROCEDURE.............: 5010(C) YCA INDETERMINATE EXCEEDING 6 YRS
  SENTENCE IMPOSED/TIME TO SERVE.:    8 YEARS

  REMARKS.......: RELEASED FM THIS SENT. TO CONSEC. LIFE SENTENCE 06-04-1980


G0070     PRIOR YCA INMT. PER PS5215,CONSULT REGION COUNSEL BEFORE DISCLOSURE
G0002     MORE PAGES TO FOLLOW . . .

```
   PARA4  540*23 *            SENTENCE MONITORING         *      06-15-2018
 PAGE 006 OF 006 *            COMPUTATION DATA            *      09:22:19
                                AS OF 06-04-1980


 REGNO..: 20080-101 NAME: THOMPSON, RICHARD L


 -------------------------PRIOR COMPUTATION NO: 010 -------------------------

 COMPUTATION 010 WAS LAST UPDATED ON 07-11-1985 AT MAR AUTOMATICALLY

 THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
 PRIOR COMPUTATION 010:   010 010

 DATE COMPUTATION BEGAN..........: 09-13-1974
 TOTAL TERM IN EFFECT............:      8 YEARS
 TOTAL TERM IN EFFECT CONVERTED..:      8 YEARS

 JAIL CREDIT.....................:    FROM DATE     THRU DATE
                                     06-05-1974    09-12-1974


 TOTAL JAIL CREDIT TIME..........: 100
 TOTAL INOPERATIVE TIME..........: 0
 STATUTORY GOOD TIME RATE........: N/A
 TOTAL SGT POSSIBLE..............: 0
 PAROLE ELIGIBILITY..............: COMMISSION'S DISCRETION
 STATUTORY RELEASE DATE..........: 06-04-1980
 TWO THIRDS DATE.................: 10-04-1979
 180 DAY DATE....................: N/A
 EXPIRATION FULL TERM DATE.......: 06-04-1982
 TIME SERVED.....................:      6 YEARS
 PERCENTAGE OF FULL TERM SERVED..:  75.0

 NEXT PAROLE HEARING DATE........: UNKNOWN
 TYPE OF HEARING.................: UNKNOWN

 ACTUAL SATISFACTION DATE........: 06-04-1980
 ACTUAL SATISFACTION METHOD......: MAND PAR
 ACTUAL SATISFACTION FACILITY....: MAR
 ACTUAL SATISFACTION KEYED BY....: GLG

 DAYS REMAINING..................: 730
 FINAL PUBLIC LAW DAYS...........: 0




 G0070      PRIOR YCA INMT. PER PS5215,CONSULT REGION COUNSEL BEFORE DISCLOSURE
 G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

**U.S. Department of Justice**
United States Parole Commission
Chevy Chase, MD 20815

## Notice of Action

| | | | |
|---|---|---|---|
| **Name** | THOMPSON, Richard L. | | |
| **Register Number** | 20080-101 | **Institution** | Marion |

In the case of the above-named parole action was ordered:

Continue to a 15-year reconsideration hearing in February 2007.

### FINDINGS OF FACT:

**CHARGE NO. 1:** **2/16/76 – MURDER.**

> **Basis:** Details and information supporting the charge, your conviction in docket CR-76-1538 and your life sentence for murder.

**CHARGE NO. 2:** **1/13/82 – ATTEMPTED ESCAPE.**

> **Basis:** The details supporting the charge, the conviction in USDC, Benton, Illinois, case #82-400053-03 and your resulting sentence of 5 years concurrent.

**CHARGE NO. 3:** **7/17/83 – ATTEMPTED MURDER OF A CORRECTIONAL OFFICER.**

> **Basis:** The details and information supporting the charge and the official version of the offense behavior from docket 85-400004-01 and your resulting 10 year consecutive sentence.

**CHARGE NO. 4:** **5/15/89 – FIGHTING.**

> **Basis:** Your admission to the examiner panel, details and information supporting the charge and finding of guilt by DHO on 5/18/89.

**CHARGE NO. 5:** **5/3/89 – POSSESSION OF ANYTHING NOT AUTHORIZED.**

> **Basis:** Your admission to the examiner panel and the details and information supporting the charge and finding of guilt by DHO on 5/11/89.

**CHARGE NO. 6:** **2/20/87 – REFUSING AN ORDER.**

> **Basis:** Your admission to the examiner and the details and information supporting the charge and finding of guilt by IDC on 2/27/87.

---

**Appeals Procedure:**
___ The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26;
_X_ The above is an original jurisdiction decision, and is appealable to the Commission under 28 C.F.R. 2.27;
___ THE ABOVE DECISION IS NOT APPEALABLE.

| April 29, 1992 | | X | sas |
|---|---|---|---|
| (Date of Notice) | (Region) | (National Commissioners) | (Docket Clerk) |

( ) Inmate    ( ) Institution    ( ) Admin. Systems Manager    ( ) U.S. Probation Officer    (X) Commission    ( ) FOIA

Parole Form H-7(a)
May 87

O. J. REFERRAL

Exhibit 2

A presumptive parole date is conditioned upon your maintaining good institutional conduct and the develpment of a suitable release plan. Prior to release, your case will be subject to review to ascertain that these conditions have been fulfilled.

You may obtain appeal forms from your caseworker and they must be filed with the Commission within thirty days of the date thi Notice was sent. Copies of this Notice are sent to your institution and/or your probation officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others, if you wish.

## SALIENT FACTOR SCORE (SFS-81)

ITEM A. PRIOR CONVICTIONS/ADJUDICATIONS *(ADULT OR JUVENILE)*

None = 3; One = 2; Two or three = 1; Four or more = 0

ITEM B. PRIOR COMMITMENTS OF MORE THAN THIRTY DAYS *(ADULT OR JUVENILE)*

None = 2; One or two = 1; Three or more = 0

ITEM C. AGE AT COMMENCEMENT OF THE CURRENT OFFENSE/PRIOR COMMITMENTS OF MORE THAN
     THIRTY DAYS *(ADULT OR JUVENILE)*

Age at commencement of the current offense: 26 years of age or more = 2***; 20-25 years of age = 1***; 19 years of age or less = 0

   ***EXCEPTION: If five or more prior commitments of more than thirty days, (adult or juvenile), place an 'x' here (   ) and
       score this item... = 0

ITEM D. RECENT COMMITMENT FREE PERIOD *(THREE YEARS)*

No prior commitment of more than thirty days *(adult or juvenile)*, or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

ITEM E. PROBATION/PAROLE/CONFINEMENT/ESCAPE STATUS VIOLATOR THIS TIME

Neither on probation, parole confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

ITEM F. HISTORY OF HEROIN/OPIATE DEPENDENCE

No history of heroin or opiate dependence = 1; Otherwise = 0

## MOST FREQUENT SPECIAL CONDITIONS

Special Drug Aftercare Condition:
   You shall participate as instructed by your probation officer in a program approved by the Parole Commission for treatment
   of narcotic addiction or drug dependency, which may include testing and examination to determine if you have reverted to the
   use of drugs.

Special Alcohol Aftercare Condition:
   You shall participate in a community based program for the treatment of alcoholism as directed by your probation officer.

Special Mental Health Aftercare Condition:
   You shall participate in an in-patient or an out-patient mental health program as directed by your probation officer.

Special Community Treatment Center Condition:
   You shall reside in and participate in a program of the Community Treatment Center as instructed until discharge by the
   Center Director, but no later than 120 days from admission.

**U.S. Department of Justice**
United States Parole Commission
Chevy Chase, MD 20815

# NOTICE OF   CTION ON APPEAL

NAME
        THOMPSON, Richard
REGISTER NUMBER                              INSTITUTION
                20080-101                            Marion

NATIONAL APPEALS BOARD/FULL COMMISSION: *The appeal by the above-named has been carefully examined by the National Appeals Board/Full Commission and the following has been ordered:*

Affirmation of the previous decision.   Modify reasons.

**RESPONSE:**

The Full Commission has reviewed your appeal and has modified your salient factor score, time in custody, and guidelines.  The Full Commission finds that you received a mandatory parole on a Youth Corrections Act sentence on June 4, 1980 to the consecutive adult sentences.  Consequently, as of July 1992 you have been in custody on your adult sentences only from June 1980 for a total of 145 months.  All incidents reports you received prior to June 1980 are not countable towards your current aggregate guidelines.  The Full Commission finds that your current offense behavior is a category eight murder offense. While serving this commitment you have suffered one attempted escape which requires guidelines of 8 - 16 months.  You have also committed four separate category three new criminal conduct in a prison facility which required an additional 48 - 64 months to be added to your original guideline range.  You have also twice committed category eight attempted murder behavior which requires 240 plus months to be added to you original guideline range.  And finally, you have committed 16 non-drug related infractions which requires 0 - 32 months to be added to your original guideline range.  Your total aggregate guideline range is 476 plus months.

In regard to your salient factor score we find that a score of 1 is indicated. You have four prior conviction and adjudications and four prior countable commitments.  At the time of the current offense behavior occurring you were 19 years old and therefore item C is correctly scored a 0.  You committed this murder while confined on a previous Youth Corrections Act Rape term and therefore you will receive 0 points in item D & E.  The only point you do receive is item F.

In response to your plea for a more lenient decision, you provide no significant mitigating circumstances sufficient to merit a different decision.

All relevant factors have been considered and no new or significant information is presented which would justify a more lenient decision.

*All decisions by the National Appeals Board/Full Commission on appeal are final.*

July 31, 1992                                      X                        sas
*(Date of Notice)*     *(National Appeals Board)*   *(Full Commission)*   *(Docket Clerk)*

( ) Inmate          ( ) Institution          ( ) U.S. Probation Officer          ( ) Commission          ( ) FOIA
                                          O. J. APPEAL                                          Exhibit 3

A presumptive parole date is conditioned upon your maintaining good institutional conduct and the development of a suitable release plan. Prior to release your case will be subject to review to ascertain that these conditions have been fulfilled.

You may obtain appeal forms from your caseworker and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and/or your probation officer. In certain cases copies may also be sent to the sentencing court. You are responsible for advising any others, if you so wish.

## SALIENT FACTOR SCORE (SFS 81)

ITEM A. PRIOR CONVICTIONS/ADJUDICATIONS *(ADULT OR JUVENILE)*

None = 3; One  = 2; Two or three = 1; Four or more. . . = 0

ITEM B. PRIOR COMMITMENTS OF MORE THAN THIRTY DAYS *(ADULT OR JUVENILE)*

None = 2; One or two = 1; Three or more = 0

ITEM C. AGE AT COMMENCEMENT OF THE CURRENT OFFENSE/PRIOR COMMITMENTS OF MORE THAN THIRTY DAYS *(ADULT OR JUVENILE)*

Age at commencement of the current offense: 26 years of age or more = 2***; 20-25 years of age = 1***; 19 years of age or less = 0

   ***EXCEPTION: if five or more prior commitments of more than thirty days, *(adult or juvenile),* place an 'x' here (  ) and score this item. . . . = 0.

ITEM D. RECENT COMMITMENT FREE PERIOD *(THREE YEARS)*

No prior commitment of more than thirty days, *(adult or juvenile),* or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

ITEM E. PROBATION/PAROLE/CONFINEMENT/ESCAPE STATUS VIOLATOR THIS TIME

Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole confinement, or escape status violator this time = 1; Otherwise = 0

ITEM F. HISTORY OF HEROIN/OPIATE DEPENDENCE

No history of herion or opiate dependence = 1; Otherwise = 0

## MOST FREQUENT SPECIAL CONDITIONS

Special Drug Aftercare Condition:
   You shall participate as instructed by your probation officer in a program approved by the Parole Commission for treatment of narcotic addiction or drug dependency, which may include testing and examination to determine if you have reverted to the use of drugs.

Special Alcohol Aftercare Condition:
   You shall participate in a community based program for the treatment of alcoholism as directed by your probation officer.

Special Mental Health Aftercare Condition:
   You shall participate in an in-patient or an out-patient mental health program as directed by your probation officer.

Special Community Treatment Center Condition:
   You shall reside in and participate in a program of the Community Treatment Center as instructed until discharge by the Center Director, but no later than 120 days from admission.

**U.S Department of Justice**
United States Parole Commission
Chevy Chase, Maryland  20815

## Notice of Action

**Name:** THOMPSON, Richard L.

**Register Number:** 20080-101          **Institution:** Marion

In the case of the above-named parole action was ordered:

No change in 15 year reconsideration hearing in February 2007.

**REASONS:**

Retroactivity does not apply.  Neither your recalculated severity rating (old Category Eight; new Category Eight) nor your recalculated salient factor risk category (old Category Poor, old score 1; new Category Poor, new score 1) is more favorable.  This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of Offense Severity or Salient Factor Scoring.

As required by law, you have also been scheduled for a statutory interim hearing during May 1996.

**Appeals Procedure:**
The above is an original jurisdiction decision, and is appealable to the Commission under 28 C.F.R. 2.27;

June 30, 1994                    National Commissioners               Docket Clerk: lcg

**\* \* Commission Copy \* \***                                          O.J. referral

Page 1 of 1                                                     Exhibit 4

A presumptive parole date is conditioned upon your maintaining good institutional conduct and the development of a suitable release plan. Prior to release your case will be subject to review to ascertain that these conditions have been fulfilled.

You may obtain appeal forms from your caseworker and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and/or your probation officer. In certain cases copies may also he sent to the sentencing court. You are responsible for advising any others, if you so wish.

## SALIENT FACTOR SCORE (SFS-81)

ITEM A.   PRIOR CONVICTIONS/ADJUDICATIONS *(ADULT OR JUVENILE)*

None = 3; One = 2; Two or three = 1; Four or more = 0

ITEM B.   PRIOR COMMITMENTS OF MORE THAN THIRTY DAYS *(ADULT OR JUVENILE)*

None = 2; One or two = 1; Three or more = 0

ITEM C.   AGE AT COMMENCEMENT OF THE CURRENT OFFENSE/PRIOR COMMITMENTS OF MORE THAN THIRTY DAYS *(ADULT OR JUVENILE)*

Age at commencement of the current offense: 26 years of age or more = 2***; 20-25 years of age = 1***; 19 years of age or less = 0

    *** EXCEPTION:  If five or more prior commitments of more than thirty days, *(adult or juvenile)*, place an 'x' here ( ) and score this item... = 0

ITEM D.   RECENT COMMITMENT FREE PERIOD *(THREE YEARS)*

No prior commitment of more than thirty days *(adult or juvenile)*, or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

ITEM E.   PROBATION/PAROLE/CONFINEMENT/ESCAPE STATUS VIOLATOR THIS TIME

Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement, or escape status violator this time = 1; Otherwise = 0

ITEM F.   HISTORY OF HEROIN/OPIATE DEPENDENCE

No history of heroin or opiate dependence = 1; Otherwise = 0

## MOST FREQUENT SPECIAL CONDITIONS

Special Drug Aftercare Condition:
    You shall participate as instructed by your probation officer in a program approved by the Parole Commission for treatment of narcotic addiction or drug dependency, which may include testing and examination to determine if you have reverted to the use of drugs.

Special Alcohol Aftercare Condition:
    You shall participate in a community based program for the treatment of alcoholism as directed by your probation officer.

Special Mental Health Aftercare Condition:
    You shall participate in an in-patient or an out-patient mental health program as directed by your probation officer.

Special Community Treatment Center Condition:
    You shall reside in and participate in a program of the Community Corrections Center as instructed until discharge by the Center Director, but no later than 120 days from admission.

Parole Form H-7(a)
Nov 93

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action**

---

Name: THOMPSON, Richard L.

---

Register Number: 20080-101                    Institution: Atlanta USP

---

In the case of the above-named, the following parole action was ordered:

Amend to Notice of Action dated May 10, 1996 as follows:

Your case has been declassified as Original Jurisdiction status pursuant to 28 C.F.R. 2.17-05.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Reopen and advance 15 Year Reconsideration Hearing date of February 2007 and continue to a Reconsideration Hearing in February 2006.

The above decision is appealable tno the National Appeals Board under 28 C.F.R. 2.26.

You may obtain appeal forms from your caseworker and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and to your probation officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others, if you so wish.

**REASONS:**

Retroactivity does not apply. Neither your recalculated severity rating (old Category Seven; new Category Seven) nor your recalculated salient factor risk category (old Category Poor, old score 1; new Category Poor, new score 1) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of Offense Severity or Salient Factor Scoring.

The above represents a reduction of 12 months for Superior Program Achievement in that you have maintained a clear conduct record and maintained a positive attitude despite your limited programming due to your placement in special housing unit upon transfer from the USP Marion to the USP Atlanta.

As required by law, you have also been scheduled for a statutory interim hearing during April 2000.

fc:      U.S. Probation Office
         Central District of California
         312 North Spring Street
         600 U. S. Courthouse
         Los Angeles, CA  90012-4708

---

Date: May 15, 1998                                          Clerk: dlw

                                                                        Exhibit 5
                    Page 1 of 1                          THOMPSON.200BOP-ATL

**U.S. Department   of Justice**                          **Notice  of Action**

United  States  Parole  Commission
5550  Friendship   Boulevard
Chevy  Chase,  Maryland   20815-7201

---

Name:  THOMPSON,   Richard  L.

---

Register  Number:  20080-101                  Institution:   Marquette,   MI State  Branch  Prison

---

In  the  case  of  the  above-named,   the  following  parole  action  was  ordered:

No  change.   Continue   to  a  15-Year  Reconsideration   date  (February   2006).

**REASONS**:

Retroactivity    does  not  apply.   Neither  your  recalculated   severity   rating  (old  Category  Eight;  new
Category  Eight)  nor  your  recalculated   salient  factor  risk  category  (old  Category  Poor,  old  score  2;  new
Category  Poor,  new  score  2) is more  favorable.   This  statement   means  that  a  finding  has  been  made
by  the  Parole  Commission   at your  hearing  that  no  regulatory   or  procedural   changes  have  been  made
by  the  Parole  Commission   since  your  last  hearing   which  would  positively   affect  your  case  in  terms
of Offense  Severity   or Salient  Factor  Scoring.

As  required   by  law,  you  have  also  been  scheduled   for  a  statutory   interim  hearing  during  February
2003.

The  above  decision  is appealable   to  the  National   Appeals   Board  under  28  C.F.R.  2.26.   You  may
obtain  appeal  forms  from  your  caseworker   or U.S.  Probation   Officer  and  they  must  be  filed  with  the
Commission   within   thirty  days  of  the  date  of  this  Notice.

Copies  of this  Notice  are  sent  to your  institution   and  to  your  U.S.  Probation   Officer.  In  certain  cases,
copies  may  also  be  sent  to  the  sentencing   court.  You  are  responsible   for  advising   any  others  you  wish
to  notify.

cc:       U.S.  Probation  Office
          Central  District  of California
          312  North  Spring  Street
          600  U. S.  Courthouse
          Los  Angeles,  CA  90012-4708

**Date:  March   26,  2001**                                    Clerk:  mdd

**BOP-Detroit    CCM**              **Page   1 of 1**              **THOMPSON.200**

Exhibit 6

U.S. Department of Justice       **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

| | |
|---|---|
| Name:  Thompson, Richard | Institution: Marquette State Branch Prison<br>Detroit CCM |
| Register Number:  20080-101 | Date:  March 3, 2003 |

In the case of the above-named, the following parole action was ordered:

No change in 15-Year Reconsideration date (February 2006).

**REASONS**:

Retroactivity does not apply.  Neither your recalculated severity rating (old Category **Eight for Murder**; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Poor**, old score **1**; new Category **Poor**, new score **0**) is more favorable.  This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

In addition, you have also been scheduled for a statutory interim hearing during February 2005.

THE ABOVE DECISION IS APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:  U.S. Probation Office
    Central District of California
    312 North Spring Street
    600 U.S. Courthouse
    Los Angeles, CA 90012-4708

Thompson 20080-101     -1-     Clerk:  ADC
Queued: 03-04-2003 12:34:37 BOP-Detroit CCM | USPO-Central District of California, 1 - Main (Los Angeles) |

Exhibit 7

U.S. Department of Justice                              **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

Name:  THOMPSON, Richard                     Institution  :  Marquette Branch Prison
                                             Detroit CCM
Register Number:  20080-101                  Date        :October 13, 2006

---

As a result of the hearing conducted on September 20 2006, the following action was ordered:

Continue to expiration.

You shall be subject to the Special Sex Offender Aftercare Condition.  You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment.  You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your Probation Officer.

In addition, you shall not have any contact or communication with the victim of your offense.

**REASONS**:

Your offense behavior has been rated as Category Eight severity because it involved Murder.  Your salient factor score is 1.  See the attached sheet for an explanation of your individual Salient Factor Score items. The table at the bottom presents the points for Salient Factor Score Item C.  You have been in federal confinement as a result of your behavior for a total of 387 months as of September 5, 2006.  Guidelines established by the Commission for the above offense behavior indicate a range of 180+ months to be served before release for cases with good institutional adjustment and program achievement.

You have committed 16 non-drug related infraction(s).  Guidelines established by the Commission indicate a range of up to 2 months be added to your guideline range for each non-drug related infraction.

You escaped or attempted to escape from secure custody 1 time(s).  Guidelines established by the Commission indicate a range of 8-16 months be added to your guideline range for each occurrence.

In addition, you committed new criminal conduct while in a prison facility of Category Three severity because it involved Assault on Correctional Officer.  Guidelines established by the Commission indicate a range of 12-16 months to be added to your guideline range.

In addition, you committed new criminal conduct while in a prison facility of Category Eight severity because it involved Attempted Murder. Guidelines established by the Commission indicate a range of 120+ months to be added to your guideline range.

---

Thompson 20080-101                          -1-                      Clerk:   SRM
Queued: 10-13-2006 15:39:40 BOP-Detroit CCM | USPO-Eastern District of Michigan, 1 - Main (Detroit) |

Exhibit 8

In addition, you committed new criminal conduct while in a prison facility of Category Eight severity because it involved Attempted Murder. Guidelines established by the Commission indicate a range of 120+ months to be added to your guideline range.

In addition, you committed new criminal conduct while in a prison facility of Category Three severity because it involved Possession of a Weapon (Knife). Guidelines established by the Commission indicate a range of 12-16 months to be added to your guideline range.

In addition, you committed new criminal conduct while in a prison facility of Category Three severity because it involved Possession of a Weapon (Knife). Guidelines established by the Commission indicate a range of 12-16 months to be added to your guideline range.

In addition, you committed new criminal conduct while in a prison facility of Category Three severity because it involved Assault on a Correctional Officer. Guidelines established by the Commission indicate a range of 12-16 months to be added to your guideline range.

Your aggregate guideline range is 476+ months to be served.

After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating case factors. You are a more serious risk than indicated by the guidelines. While serving an 8-year term for rape, you murdered an inmate, committed an attempted murder, attempted to escape from custody, and assaulted a staff member by stabbing him 17 times. In addition, you incurred other disciplinary infractions which include 3 incidents of new criminal conduct involving Assaults and Possession of Prohibited Weapon and 32 administrative infractions. Although you have incurred any disciplinary infractions since 1985, your criminal history and poor institutional adjustment warrants your continue to incarceration to your mandatory release date.

In addition, you have also been scheduled for a statutory interim hearing during September 2008.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    U.S. Probation Office
       Eastern District of Michigan
       901 U.S. Courthouse
       231 West Lafayette Street
       Detroit, MI 48226

## SALIENT FACTOR SCORE (SFS-98)

| Your Pts | Salient Factor Score (SFS-98) Item Explanations |
|---|---|
| 0 | A - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0 |
| 0 | B - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0 |
| 1 | C - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation) |
| 0 | D - Recent commitment free period (three years)<br>No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0 |
| 0 | E - Probation/parole/confinement/escape status violator this time<br>Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0 |
| 0 | F - Older offenders<br>If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0 |
| 1 | Salient Factor Score (SFS-98) (sum of points for A-F above) |

| Points For SFS Item C | | | |
|---|---|---|---|
| Age | Prior Commitments | | |
| | 0-1 | 4 | 5+ |
| 26 & Up | 3 | 2 | 1 |
| 22-25 | 2 | 1 | 0 |
| 20-21 | 1 | 0 | 0 |
| 0-19 | 0 | 0 | 0 |

U.S. Department of Justice                          **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

---

Name:  THOMPSON, Richard                     Institution: New York CCM

Register Number:  20080-101            Date:      April 30, 2009

---

As a result of the hearing conducted on February 26, 2009, the following action was ordered:

No change in continuance to expiration.

The Parole Commission has decided to continue you to the expiration of your sentence.  If the two-thirds date of your sentence (30 years in the case of a sentence of 45 years or more) precedes the mandatory release date calculated by the Bureau of Prisons, the Commission will conduct a record review of your case approximately 9 months prior to the two-thirds date.  If a parole is not ordered as a result of the record review, the Commission will conduct a hearing for you.  The purpose of the review or hearing is to determine whether there is a reasonable probability that you will commit any Federal, State, or local crime, or whether you have frequently or seriously violated the rules of the institution. See 28 C.F.R. § 2.53(a).  If parole is denied, you will be continued until the expiration of your sentence less good time.

The Bureau of Prisons is requested to forward a copy of the prisoner's progress report approximately 9 months prior to the scheduled two-thirds date.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition.  You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment.  You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your Probation Officer.

In addition, you shall not have direct or indirect contact with the victim unless approved by your U.S. Probation Officer and the U.S. Parole Commission.

**REASONS**:

Retroactivity does not apply.  Neither your recalculated severity rating (old Category **Eight**; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Poor**, old score **1**; new Category **Poor**, new score **1**) is more favorable.  This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

---

Exhibit 9

In addition, you have also been scheduled for a statutory interim hearing during February 2011.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     U.S. Probation Office
        Eastern District of Missouri
        Thomas F. Eagleton U.S. Courthouse
        111 South 10th Street, Suite 2-325
        St. Louis, MO  63102-1116


        Designation & Sentence Computation Ctr
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX  75051

U.S. Department of Justice                          **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

| | |
|---|---|
| Name:  THOMPSON, Richard | Institution:  New York CCM |
| Register Number:  20080-101 | Date:        April 11, 2011 |

As a result of the hearing conducted on March 11, 2011, the following action was ordered:

No change in continuance to expiration.

The Parole Commission has decided to continue you to the expiration of your sentence.  If the two-thirds date of your sentence (30 years in the case of a sentence of 45 years or more) precedes the mandatory release date calculated by the Bureau of Prisons, the Commission will conduct a record review of your case approximately 9 months prior to the two-thirds date.  If a parole is not ordered as a result of the record review, the Commission will conduct a hearing for you.  The purpose of the review or hearing is to determine whether there is a reasonable probability that you will commit any Federal, State, or local crime, or whether you have frequently or seriously violated the rules of the institution. See 28 C.F.R. § 2.53(a).  If parole is denied, you will be continued until the expiration of your sentence less good time.

The Bureau of Prisons is requested to forward a copy of the prisoner's progress report approximately 9 months prior to the scheduled two-thirds date.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition.  You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment.  You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall not have any contact or communication with the victim of your offense, without the prior written approval of your Probation Officer and the Parole Commission.  This prohibition includes any written or electronic correspondence (for example, a letter or e-mail), telephone call (including a voice mail message), or communication through another person.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your U.S. Probation Officer.

**REASONS**:

Retroactivity does not apply.  Neither your recalculated severity rating (old Category **Eight**; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Poor**, old score 1; new Category **Poor**, new score **1**) is more favorable.  This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole

---

THOMPSON 20080-101                                    -1-                        Clerk:  MDR
Queued: 04-11-2011 15:33:11 BOP-New York CCM | BOP-Designation & Sentence Computation Ctr | USPO-Eastern
District of Missouri, 1 - Main (St. Louis) |

Exhibit 10

Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

You have also been scheduled for a statutory interim hearing during March 2013.


THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:     U.S. Probation Office
        Eastern District of Missouri
        Thomas F. Eagleton U.S. Courthouse
        111 South 10th Street, Suite 2.325
        St. Louis, MO  63102-1116

        Designation & Sentence Computation Ctr
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX  75051

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action**

| | |
|---|---|
| Name:  THOMPSON, Richard | Institution: New York CCM |
| Register Number: 20080-101 | |
| DCDC No: | Date: April 15, 2011 |

### Amend Notice of Action Dated April 11, 2011 to Read:

As a result of the hearing conducted on **March 7, 2011**, the following action was ordered:

No change in continuance to expiration.

The Parole Commission has decided to continue you to the expiration of your sentence.  If the two-thirds date of your sentence (30 years in the case of a sentence of 45 years or more) precedes the mandatory release date calculated by the Bureau of Prisons, the Commission will conduct a record review of your case approximately 9 months prior to the two-thirds date.  If a parole is not ordered as a result of the record review, the Commission will conduct a hearing for you.  The purpose of the review or hearing is to determine whether there is a reasonable probability that you will commit any Federal, State, or local crime, or whether you have frequently or seriously violated the rules of the institution. See 28 C.F.R. § 2.53(a).  If parole is denied, you will be continued until the expiration of your sentence less good time.

The Bureau of Prisons is requested to forward a copy of the prisoner's progress report approximately 9 months prior to the scheduled two-thirds date.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition.  You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment.  You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall not have any contact or communication with the victim of your offense, without the prior written approval of your Probation Officer and the Parole Commission.  This prohibition includes any written or electronic correspondence (for example, a letter or e-mail), telephone call (including a voice mail message), or communication through another person.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your U.S. Probation Officer.

**REASONS**:

Retroactivity does not apply.  Neither your recalculated severity rating (old Category **Eight**; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Poor**, old score **1**; new Category **Poor**, new score **1**) is more favorable.  This statement means that a finding has been made by the Parole

---

Queued: 04-15-2011 14:59:52 BOP-New York CCM | BOP-Designation & Sentence Computation Ctr | USPO-Eastern District of Missouri, 1 - Main (St. Louis) |

Exhibit 11

Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

You have also been scheduled for a statutory interim hearing during March 2013.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:    U.S. Probation Office
       Eastern District of Missouri
       Thomas F. Eagleton U.S. Courthouse
       111 South 10th Street, Suite 2-325
       St. Louis, MO  63102-1116

       Designation & Sentence Computation Center
       U.S. Armed Forces Reserve Complex
       Grand Prairie Office Complex
       346 Marine Forces Drive
       Grand Prairie, TX  75051



U.S. Department of Justice                                    **Notice of Action**
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C.  20530

---

Name:  THOMPSON, Richard                     Institution:  New York CCM

Register Number:  20080-101                  Date:      May 28, 2013

---

As a result of the hearing conducted on May 7, 2013, the following action was ordered:

No change in continuance to expiration.

The Parole Commission has decided to continue you to the expiration of your sentence.  If the two-thirds date of your sentence (30 years in the case of a sentence of 45 years or more) precedes the mandatory release date calculated by the Bureau of Prisons, the Commission will conduct a record review of your case approximately 9 months prior to the two-thirds date.  If a parole is not ordered as a result of the record review, the Commission will conduct a hearing for you.  The purpose of the review or hearing is to determine whether there is a reasonable probability that you will commit any Federal, State, or local crime, or whether you have frequently or seriously violated the rules of the institution. See 28 C.F.R. § 2.53(a).  If parole is denied, you will be continued until the expiration of your sentence less good time.

The Bureau of Prisons is requested to forward a copy of the prisoner's progress report approximately 9 months prior to the scheduled two-thirds date.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition:  You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment.  You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall not have any contact or communication with the victim of your offense, without the prior written approval of your Probation Officer and the Parole Commission.  This prohibition includes any written or electronic correspondence (for example, a letter or e-mail), telephone call (including a voice mail message), or communication through another person.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your U.S. Probation Officer.

**REASONS**:

Retroactivity does not apply.  Neither your recalculated severity rating (old Category **Eight**; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Poor**, old score **1**; new Category **Poor**, new score **1**) is more favorable.  This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole

---

THOMPSON 20080-101                           -1-                        Clerk:  MDR

Exhibit 12

Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

You have also been scheduled for a statutory interim hearing during May 2015.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:     Trenton State Prison
        2nd St & Cass Street
        Trenton, NJ  08611

        U.S. Probation Office
        Central District of California
        312 North Spring Street
        600 U.S. Courthouse
        Los Angeles, CA  90012-4708

        Designation & Sentence Computation Ctr.
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX  75051

U.S. Department of Justice                   **Notice of Action**
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

| Name: THOMPSON, Richard | Institution:  New York CCM |
| | New Jersey State Prison, NJ |
| Register Number: 20080-101 | Date:        August 17, 2015 |

As a result of the hearing conducted on August 4, 2015, the following action was ordered:

No change in continuance to expiration.

The Parole Commission has decided to continue you to the expiration of your sentence. If the two-thirds date of your sentence (30 years in the case of a sentence of 45 years or more) precedes the mandatory release date calculated by the Bureau of Prisons, the Commission will conduct a record review of your case approximately 9 months prior to the two-thirds date. If a parole is not ordered as a result of the record review, the Commission will conduct a hearing for you. The purpose of the review or hearing is to determine whether there is a reasonable probability that you will commit any Federal, State, or local crime, or whether you have frequently or seriously violated the rules of the institution. See 28 C.F.R. § 2.53(a). If parole is denied, you will be continued until the expiration of your sentence less good time.

The Bureau of Prisons is requested to forward a copy of the prisoner's progress report approximately 9 months prior to the scheduled two-thirds date.

**In addition,** you shall not have any contact or communication with the victim of your offense, without the prior written approval of your Probation Officer and the Parole Commission. This prohibition includes any written or electronic correspondence (for example, a letter or e-mail), telephone call (including a voice mail message), or communication through another person.

**In addition,** you shall be subject to the highest level of supervision.

**In addition,** you shall be subject to an annual polygraph examination.

**In addition,** you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your U.S. Probation Officer.

**REASONS:**

Retroactivity does not apply. Neither your recalculated severity rating (old Category **Eight**; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Poor**, old score **1**; new Category **Poor**, new score **1**) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

**In addition,** you have committed 1 non-drug related infraction(s). Guidelines established by the Commission indicate a range of up to 2 months be added to your guideline range for each non-drug related infraction.

THOMPSON 20080-101     -1-     Clerk:   MDR
Queued: 08-17-2015 11:36:47 BOP-New York CCM | BOP-Designation & Sentence Computation Ctr | USPO-Central District of California, 1 - Main (Los Angeles) |

Exhibit 13

Your rescission guideline range is 0-2 months to be added to your original guideline range of 180+ months to be served. After review of all relevant factors and information presented, a departure from the guidelines at this consideration is not warranted.


THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    U.S. Probation Office
       Central District of California
       312 North Spring Street
       600 U.S. Courthouse
       Los Angeles, CA 90012-4708

       Steven Johnson
       Administrator
       New Jersey State Prison
       P.O. Box 861
       Trenton, NJ 08625

       Designation & Sentence Computation Ctr
       U.S. Armed Forces Reserve Complex
       Grand Prairie Office Complex
       346 Marine Forces Drive
       Grand Prairie, TX 75051



U.S. Department of Justice             **Notice of Action**
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

---

Name: THOMPSON, Richard        Institution: New York CCM

Register Number: 20080-101        Date:     May 31, 2016

---

In the case of the above-named, the following action was ordered:

Schedule for a mandatory parole hearing on the next available docket.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.



---

Exhibit 14

U.S. Department of Justice                                    **Notice of Action**
*United States Parole Commission*
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

---

Name:  THOMPSON, Richard                          Institution:  New York CCM
                                                  Trenton State Prison, NJ
Register Number: 20080-101                        Date:        August 10, 2016

---

In the case of the above-named, the following action was ordered:

Deny mandatory parole. Continue to expiration.


**REASONS:**

You have seriously and frequently violated the rules of the institutions you were confined in over the last 40 years. Specifically, you killed an inmate while at USP Lompoc in 1976, attempted to escape from USP Marion in 1983, stabbed a BOP staff member 17 times in 1983, found guilty of fighting, assault, threatening bodily harm and possession of dangerous weapons. These and many more infractions highlight your inability to comply with the institutions rules and indicate a high probability that you will not follow society's folkways and mores if released. For these reasons, mandatory parole is being denied.

**You have also been scheduled for a statutory interim hearing during July 2018. At that time, your case will be reviewed again pursuant to 18 U.S.C. §4206(d).**


THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     Designation & Sentence Computation Ctr
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX  75051

---

Exhibit 15



# APPEAL

**U.S. Department of Justice**
**United States Parole Commission**

Name  **RICHARD THOMPSON**

Register No.  **#568688 / #158535**                     Institution  **NEW JERSEY STATE PRISON**

I received a Notice of Action dated  *August 10, 2016* ~~November 15, 2016~~                     and appeal that decision.

*Richard Thompson*
*(Signature)*

*November* ~~December~~ **28, 2016**.
*(Date)*

## INSTRUCTIONS:

**Procedures.** The appeal must be mailed to the Commission within 30 days from the date on the Notice of Action. The permissible grounds for appeal are described below. On page two of this form, you must provide a brief summary of all the grounds for your appeal. On page three of this form, you must provide a statement of the facts and reasons in support of each ground identified in your summary. Continuation pages are permitted for longer appeals. You may provide any additional information in an addendum to your appeal. The Commission may refuse to consider any appeal, which does not follow this format. The appeal will be decided on the record, and you will be notified of the Commission's decision through a Notice of Action. Do not submit multiple copies of your appeal, and do not submit documents, which are in the Commission's file.

**Mailing address.**   You should mail the appeal to U.S. parole Commission, Appeals Unit, 90 K. Street, N.E. 3rd Floor, Washington, D.C. 20530.

**Permissible grounds for appeal.**

(a) The Commission relied on erroneous information, and the actual facts justify a different decision.

(b) There was significant information in existence but not know to me at the time of hearing, and a different decision would have resulted in the information had been presented.

(c) The Commission made a procedure error in my case, and a different decision would have resulted if the correct procedure had been followed.

(d) The Commission applied a statute or regulation incorrectly (e.g., in determining my period of imprisonment as a supervised release violator, and/or my further term of supervised release).

(e) The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody).

(f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

(g) There, are especially mitigating circumstances in my case, which justify a different decision.

Exhibit 16

# SUMMARY OF GROUNDS FOR APPEAL

**Instructions:** Briefly describe the error, which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

**Ground One:** THE COMMISSION APPLIED STATUTES / AND OR REGULATION INCORRECTLY WHICH APPLIED CORRECTLY WOULD HAVE A DIFFERENT DECISION.

_____

_____

_____

_____

**Ground Two:** THE COMMISSION MADE SEVERAL PROCEDURAL ERRORS, AND A DIFFERENT DECISION WOULD HAVE RESULTED IF THE CORRECT PROCEDURE HAD BEEN FOLLOWED.

_____

_____

_____

**Ground Three:** THE COMMISSION RELIED ON ERRONEOUS INFORMATION AND THE ACTUAL FACTS JUSTIFY A DIFFERENT DECISION.

_____

_____

_____

_____

**Ground Four:** THE COMMISSION MADE ERROR IN CALCULATING TIME IN CUSTODY.

_____

_____

_____

_____

**Note:** You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

**Parole Form I-22 (February 2013)**

# SUMMARY OF GROUNDS FOR APPEAL

**Instructions:** Briefly describe the error, which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

**Ground Five:** THE COMMISSION ENGAGED IN DISPARITY THAT WAS UNJUSTIFIABLY WIDE AND WHAT THE 1984, SENTENCING REFORM ACT WAS DESIGNED TO CORRECT. HAD THE COMMISSION FOLLOWED THE ACT'S INTENTIONS A DIFFERENT DECISION WOULD HAVE RESULTED.

**Ground Six:** THE COMMISSION'S STATED REASONS IN ITS NOTICE OF ACTION DATED AUGUST 10, 2016, ARE FACTUALLY NOT TRUE AND HAD THE DISC OF HEARING BEEN LISTENED TO A DIFFERENT DECISION WOULD HAVE BEEN REACHED.

**Ground Seven:** THERE ARE ESPECIALLY MITIGATING CIRCUMSTANCES WHICH JUSTIFY A DIFFERENT DECISION.

**Ground Eight:**

**Note:** You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

The text of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

**Parole Form I-22 (February 2013)**

# STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL

**Instructions:** Please present your grounds for appeal in the order in which they appeal in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

**Ground One:** (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f   g).

Facts: _SEE:  GROUND ONE ATTACHMENT OF FACTS (1)_
_____ADDENDUM TO GROUND ONE FACTS (2)_____
_____ADDENDUM TO GROUND ONE FACTS (3)_____
_____
_____
_____
_____

Reasons:_SEE:  ATTACHED REASONS (1)_____
_____ADDENDUM TO REASONS (2)_____
_____ADDENDUM TO REASONS (3)_____
_____
_____
_____

**Ground Two:** (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f   g).

Facts: _SEE:  GROUND TWO ATTACHMENT OF FACTS (1)_
_____ADDENDUM TO GROUND TWO FACTS (2)_____
_____ADDENDUM TO GROUND TWO FACTS (3)_____
_____ADDENDUM TO GROUND TWO FACTS (4)_____
_____ADDENDUM TO GROUND TWO FACTS (5)_____
_____ADDENDUM TO GROUND TWO FACTS (6)_____

Reasons:_SEE:  ATTACHED REASON (1)_____
_____ADDENDUM TO REASONS (2)_____
_____ADDENDUM TO REASONS (3)_____
_____ADDENDUM TO REASONS (4)_____
_____ADDENDUM TO REASONS (5)_____
_____ADDENDUM TO REASONS (6)_____

## STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL

**Instructions:** Please present your grounds for appeal in the order in which they appeal in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

**Ground Three:** (Circle the applicable ground for appeal from Page 1: a  b  c  d  e  f  g).

**Facts:** _SEE: GROUND THREE ATTACHMENT OF FACTS (1)_

**Reasons:** _SEE: ATTACHMENT REASONS (1)_

**Ground Four:** (Circle the applicable ground for appeal from Page 1: a  b  c  d  e  f  g).

**Facts:** _SEE: GROUND FOUR ATTACHMENT OF FACTS (1)_

**Reasons:** _SEE  ATTACHED REASONS (1)_

this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

**Parole Form I-22 (February 201**

**Ground Five:** (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f   g).

**Facts:**  SEE:  GROUND FIVE ATTACHMENT OF FACTS (1) _____

_____

_____

_____

_____

_____

**Reasons:**  SEE: ATTACHED REASONS (1) _____

_____

_____

_____

_____

_____

**Ground Six:** (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f   g).

**Facts: :**  SEE:  GROUND SIX ATTACHMENT OF FACTS (1) _____

_____

_____

_____

_____

_____

**Reasons:**  SEE:  ATTACHED REASONS (1) _____

_____

_____

_____

_____

_____

**Ground Seven:** (Circle the applicable ground for appeal from Page 1:  a   b   c   d   e   f   g).

**Facts:** _SEE:  GROUND SEVEN ATTACHMENT OF FACTS (1)_ _____

_____

_____

_____

_____

_____

**Reasons:** _SEE: ATTACHED REASONS (1)_ _____

_____

_____

_____

_____

_____

**Ground Eight:** (Circle the applicable ground for appeal from Page 1:  a   b   c   d   e   f   g).

**Facts:** _____

_____

_____

_____

_____

_____

**Reasons:** _____

_____

_____

_____

_____

_____

Petitioner's case from the very beginning has been rife with direct violations, in consistencies, and disparities that the 1984, Sentencing Reform Act was design to correct. These infirmities culminated and ultimately led to the U.S.P. Commission disproportionate decision as reflected in Petitioner's N.O.A. dated 8/10/16. Petitioner respectfully request the Commission to address these complaints chronologically as listed so Petitioner can preserve these issues for further review if need be.

## GROUND ONE ATTACHMENT OF FACTS (1)

The U.S. Parole Commission Rules and Procedure Manual § 2.5 Sentence Aggregation makes it clear prisoners serving more than one sentence are to have those sentences aggregated with the completion of two-thirds for each sentence before a single action of parole eligibility. Petitioner life sentence started in 1980 and ended with its two-thirds date in 2010.

## REASONS (1)

Petitioner ten (10) years consecutive sentence started in 2010, and ends with a two thirds date of 2017. When the Commission saw Petitioner, it was for his ten (10) year sentence since that sentence started running in 2010. Petitioner ten (10) year consecutive sentence expires on 2/3/17, at Petitioner's two-thirds date, and to deny Petitioner parole beyond that date the Commission would have to stop Petitioner's ten (10) year sentence and revert back to Petitioner's life sentence, which the Commission cannot do legally which is to stop and start time.

Petitioner's two-thirds date of 2/3/17 was calculated at the end of Petitioner's ten (10) year sentence, and not Petitioner's life sentence. The Court in Thompson v. Warren, USDC New Jersey, 2012, made this critical observation. U.S. Dist. Lexis, 147067, Civil

1

Action No: 11.4813.  (See: Attachment A-4, Bottom left hand corner).

The Commission cannot deny Petitioner parole beyond that two-thirds date.  In its N.O.A., dated 9/20/06, the Commission acknowledges Petitioner had a mandatory release date, and the National Appeals Boards affirmed the Commission's decision on 1/19/07, to parole Petitioner to his mandatory release date (See: Attachment A-2).  The Commission now seeks to violate its own decision made by the Commission in 2006, and affirmed by the National Appeals Board in 2017

### ADDENDUM TO GROUND ONE FACTS (2)

U.S. Commission Rules and Procedure Manual § 2.53 (a), Mandatory Parole. Petitioner does not meet the criteria to be carried beyond his two-thirds date.

### ADDENDUM TO REASONS (2)

The first criteria is frequency excluding the Y.C.A. reports the examiner included in his determination in violation of the Commission's 1992 decision.  Petitioner has had starting from 1980 until the present, 2016.  May be six (6) reports.  Petitioner has gone from 1984 to 1989, five (5) years without any infractions and from 1989 to 2104, twenty-five (25) years without any incident reports. This information is in the B.O.P. case files, which the Commission have access to, for the level of frequency of incident reports Petitioner have a score of zero.

Seriousness', Petitioner have a score of seven (7)-severity rating by the B.O.P. because of his conviction for a violent crime.  However, Petitioner submits two of his six infractions were for serious infractions that occurred decades ago which Petitioner have paid the punitive aspect for and in recognition of that Petitioner custody level dropped from max to medium.

2

The examiner determined Petitioner would not commit any crimes in the future and did not discuss that issue.

Additionally, Petitioner is serving a regular adult life sentence with a ten (10) year consecutive sentence. Life under the old law which Petitioner is serving has a forty five (45) year cap of thirty (30) years less good time, and a two-thirds date of six (6) years and eight (8) months less good time for his ten (10) year sentence for an aggregated thirty six (36) years and eight (8) months two-thirds date.

Furthermore, the Commission appears to base its decision to deny Petitioner parole on Title 18 § 4206 (d), and on it's understanding of the word has and how it applies to Petitioner. Petitioner submits the Commission has broad discretion in granting or denying parole. However, Petitioner also submits the Commission must take all of the relevant facts in evaluating a prisoner for parole and not just a mechanical and narrow application of the above statute. The meaning and definition of the word has, have, both past and present usage.

Petitioner would contend (d) (See: Attachment B, Title 18 § 4206), which the Commission relied on, is unfair and unreasonable because it relates back to incidents almost forty (40) years ago when Petitioner was technically a juvenile being oriented and influenced by an environment his YCA sentence was designed to protect him from which the B.O.P. violated. (See: Attachment B), is more relevant and more applicable to Petitioner because of the far greater number of years covered, and is reflective of Petitioner as a mature adult. At Petitioner initial hearing, in 2/26/95, he was given a fifteen (15) year reconsideration hearing. At Petitioner's 4/21/98, S.I.H., he was given a twelve (12) month Superior Program Achievement Award reducing his fifteen (15) year

reconsideration hearing by one (1) year because of Petitioner's maintaining clear conduct and a positive attitude.  Carrying Petitioner beyond his two-thirds date wipes that out and is inconsistent with the Commission awarding Petitioner the S.P.A. Petitioner has not incurred any frequent or / and serious institutional rule violations that would warrant the Commission regretting awarding Petitioner the S.P.A. or justifying canceling it.

What further tilts the scale in Petitioner favor in support of his contention is in La Magna v. B.O.P., 494 F.Supp.  189, where the Court determined Mandatory Parole is expressly conditioned upon the Commission finding the inmate will not be a risk to him or society.  The examiner made such a finding, and this should be the overall determining factor in the application of (a) or (d) and whether or not Petitioner is suitable for parole after considering the totality of Petitioner's case.

## ADDENDUM TO GROUND ONE FACTS (3)

In 2/22/01, the examiner at Petitioner's S.I.H., Mr. John F. Sicoli, determined Petitioner was a better risk for parole than his salient factor score indicated

## ADDENDUM TO REASONS (3)

Because of the substantial period of time, Petitioner has been in custody, substantial period of time with no incident reports and Petitioner's strong community ties.  The Commission's decision of no change in Petitioner's N.O.A, is totally in consistent with the overall factual record.

## GROUND TWO ATTACHMENT OF FACTS (1)

In 1974, Petitioner was originally sentence as a Y.C.A. Offender.  The Court imposing the sentence made a determination Petitioner would benefit from the provisions of the Y.C.A.

However, Petitioner was never given the opportunity to benefit from the Act.   In 1979, the Court found the B.O.P. in violation of the Y.C.A., and ordered the B.O.P. to transfer Petitioner to a Y.C.A. facility after Petitioner had already spent years in adult facilities.   The B.O.P. stated in its argument before the Courts.   "Petitioner was one of those prisoner's who fell through the cracks".

Those cracks had dire consequences for Petitioner.   Petitioner did not enter into the B.O.P. with a life sentence.   Petitioner takes full responsibility for his actions to the degree that a youthful offender can at that stage in his mental development.   This violation has never been considered or mentioned in any of the Commission's N.O.A.

## **REASON (1).**

In 1992, the Commission determined in a modified N.O.A. that none of the incident reports incurred by Petitioner while serving his Y.C.A. sentence could be used or counted against his adult sentence.   (See: Attachment A-1 6th Paragraph.   Although Petitioner YCA conviction is decades old and not a point of contention herein.   Petitioner nonetheless, in the event of further review would like judicial notice of misinformation contained in Petitioner's file, to wit: Petitioner was convicted of rape.   The Commission has Petitioner's commitment papers, and is aware of Petitioner's and the BOP complaints regarding this misinformation and the Commission have acknowledged there is misinformation contained in Petitioner's file).   At petitioner's mandatory hearing, the examiner, Mr. Tanner, used those incident reports against Petitioner's objections in making his recommendation to deny Petitioner parole at his two-thirds date.

## ADDENDUM TO GROUND TWO FACTS (2)

§ 2.13-01, Examiner Functioning (a) U.S. Parole Commission Rules and Procedure Manual Mandates the appropriate case manager is to be in attendance at hearings.

## ADDENDUM TO REASON (2).

This procedure policy was violated at Petitioner's hearing.

## ADDENDUM TO GROUND TWO FACTS (3)

§ 2.13-011, of the U.S. Parole Commission Rules and Procedure Manual governs Interested Parties Opposing Parole.

## ADDENDUM TO REASON (3).

There is absolutely nothing in (a) or (b) that allows or gives the Commission authority to reach out to the B.O.P. Director for his/her input regarding Petitioner's parole suitability. The B.O.P. Director is not a Criminal Justice Official, to compound this violation; the director's opposition letter was never read or summarized to Petitioner by any examiner depriving Petitioner of his right to respond.

To further compound this violation there is a "clean hands" doctrine, which means, a person must have clean hands to prevail in Court. A person running a swindle cannot take their victim to Court for damages once the victim becomes aware of the swindle because the scammer does not have clean hands. The B.O.P. does not have clean hands. After initially violating Petitioner's right under the Y.C.A., and forty-two (42) years later when they have an opportunity to correct their mistake and at least give Petitioner the chance they took away is bureaucracy at its worst.

The Director does not know Petitioner.  He did not write the letter.  He only signed off on it, without any investigation of the facts.  Worse still, § 2.13-011, does not allow the Commission who is suppose to be an independent agency, authority to reach out to the BOP director, prior to reaching out to the BOP the Commission's file indicates they were moving towards releasing Petitioner at his two-thirds date (See: Attachment A-2).  But, after receiving the BOP opposition letter in 2013, which Petitioner still have not seen it was only then the Commission began backing away from Petitioner's projected two-third release date.

## ADDENDUM TO GROUND TWO FACTS (4)

§ 2.14, Subsequent Proceedings.  There was no progress report made in violation of the Commission's policy and procedure.  The purpose of a progress report is to afford The Commission an opportunity to review Petitioner progress from one report and hearing to the next so the Commission can make an informed decision based on relevant information.

## ADDENDUM TO REASON (4)

This violation hurt Petitioner as well as the Commission by depriving the Commission of important relevant information in its decision making process.  Had a progress report been prepared some of the information of importance to the Commission would have been:

1. **Petitioner had completed a typing course, while at the halfway house.**

2. **Petitioner completed several program goals designed by his unit team.**

3. **Petitioner had enrolled at a Mental Health Facility to ascertain the effect of long-term incarceration.**

4. Petitioner had gone on furloughs and several passes all
   unescorted and without any incidents.

5. While at the K.C.C.D.C., Petitioner was approached by law
   enforcement officials to speak to the youth about joining in
   gangs and making bad decisions. Petitioner readily agreed
   to participate in the program.  The program was approved.
   Petitioner was waiting for the chief of security to work out
   the logistics when the Marshals started the procedure to have
   Petitioner transported back to New Jersey State Prison.

6. Although Petitioner went to the halfway house
   serendipitously, his accomplishments while there and the facts
   Petitioner went on furloughs and passes all unescorted and
   without incident have to be looked at and evaluated.

The most recent report from New Jersey State Prison Classification Committed

(See attachment C, reclassification instrument dated: 9/21/16).highlighting Petitioner's

parole suitability in factual contrast to the Commission N.O.A. in consistent decision.

## ADDENDUM TO GROUND TWO FACTS (5)

§ 2.53-06 Subsequent hearing for long-term prisoners denied mandatory parole.

## ADDENDUM TO GROUND TWO FACTS (5)

Petitioner last S.H.I., was on August 4, 2015, Petitioner received a mandatory

hearing on May 31, 2016, and was continued to the expiration of his sentence. Petitioner

next S.I.H. is schedule for July 2018. This is wrong. A mandatory hearing is not the same

type of hearing as a S.I.H., the S.I.H., date set is beyond Petitioner's 8/4/15, S.I.H. by (11)

eleven months. Petitioner's S.I.H., date should be 8/4/17, which is twenty-four (24)

months from Petitioner's S.I.H., held on 8/4/15.

## ADDENDUM TO GROUND TWO FACTS (6)

At Petitioner's fifteen (15) year reconsideration hearing, the examiner, Mr. Paul

Howard, was under the impression Petitioner would be statutory release on 2/3/17, and

consequently failed to consider Petitioner for an effective Parole date, which made

Petitioner's fifteen (15) year reconsideration hearing totally void and deprived Petitioner of his right to appeal the decision on those grounds.  In the Commission's NOA the Commission compounded this deprivation as well.

### ADDENDUM TO GROUND TWO FACTS (6)

In the Commission's NOA dated 10/13/06, it clearly indicated a presumption of Petitioner's release at his two-thirds date by its language.  If the Commission had followed its own procedure and intent of its NOA, a different decision would have resulted. In the intervening years, Petitioner received no serious or frequent rule violations to warrant a change in its decision. At petitioner fifteen (15) years reconsideration hearing held on 9/20/06, Petitioner's entire record was taking into account and Petitioner was continue to expiration of his sentence with a presumption of release after service of two-thirds of his sentence.

The examiner's recommendation was affirmed by the Commission and later by the National Appeals Board. All of Petitioner's subsequence S.I.H., and National Appeals affirmed the decision reach at Petitioner's fifteen (15) year reconsideration hearing. Between that hearing and presumption of release Petitioners Mandatory hearing head on July 22, 2016, Petitioner have not engage in any serious or frequent rule violation that would warrant a change in the Commissions or National Appeals Board decision to Parole Petitioner at his two-thirds date. The Commission's N.O.A. dated 10/10/16, denying Petitioner Mandatory Parole contradicts these earlier decisions and is not explainable. Petitioner has done nothing and there is no new information to warrant such a drastic departure. The N.O.A. also violates the Commissions policy of consistency.

## GROUND THREE ATTACHMENT OF FACTS (1)

Petitioner is unsure of which incident as it relates to a fight the Commission is referring to in its N.O.A.

### REASONS (1)

Petitioner has known Mr. Tanner, for a little over six (6) years and for four (4) of those years Mr. Tanner, has been the examiner at two of Petitioner's hearing where he has engaged Petitioner in lengthy conversation on and off the record. In about 1989, Petitioner intervened in a fight where groups of prisoners were assaulting another prisoner, who petitioner did not know. If this is the incident the Commission is referring to in its N.O.A. and what Mr. Tanner questioned Petitioner about the Commission has the facts wrong. Petitioner did not receive an infraction for this incident.

Petitioner was credited with saving this prisoner's life. If the Commission is referring to a fight during the latter part of 1989, for which Petitioner did receive an infraction the Commission still have the facts wrong. In retaliation for stopping the assault Petitioner was the victim of an assault by these same group of prisoners, and ultimately Petitioner had to be placed in State custody for his own protection.

## GROUND FOUR ATTACHMENT OF FACTS (1)

The Commission made an error in calculating time in custody.

### REASONS (1)

There was no break in custody. The Commission credited Petitioner with his Y.C.A. time. (See: S.I.H. Dated 2/01/03).

## GROUND FIVE ATTACHMENT OF FACTS (1)

The 1984 Sentencing Reform Act was designed to correct disparities. The examiner, Mr. Tanner, made the determination that he felt Petitioner would no longer engage in any future criminal activity and was not an issue for him to discuss. Three of Petitioner's Co-Defendants have been paroled.

## REASONS (1)

§ 2.18, (Parole Manual) Granting Parole. (1) Reports and Recommendation by staff. (5) Reports of Psychiatric examination. As early as 1994, and up until 2015, after having been incarcerated for forty (40) years, both Federal and State staff have supported Petitioner's effort for Parole high lighting Petitioner's achievements. The Commission have never acknowledged or even mentioned any of these staff observations. In 1994, the Commission recommended Petitioner be transferred from U.S.P. Marion to a lesser secure facility.

Petitioner unit team complied with the Commission's recommendation and Petitioner was transferred to U.S.P. Atlanta hoping the transfer would increase Petitioner's chance at making parole. However, the Commission ignored their own recommendation, and failed to mention it in its N.O.A., as there was no change.

Petitioner held an orderly job for approximately seven years at New Jersey State Prison assisting prisoners with special needs. Petitioner did such an exemplary job the Assistant Superintendent at that time, Mr. Holmes, wrote to the B.O.P. inquiring if Petitioner could receive meritorious good time. Because Petitioner is serving a life sentence, he was not eligible to receive meritorious good time.

11

These factual in consistencies contained in the Commission's files for review makes Petitioner's N.O.A. denying parole completely arbitrary, and not supported by the factual record. This arbitration is further compounded by the Commission's authorization to send Petitioner to a halfway house in anticipation of Petitioner being granted parole (See attachment D, Progress Notes Report. Bottom right corner), and then denying Petitioner parole.

The psychiatric examination report contained in Petitioner's parole file by Dr. Urbanik detailed Petitioner's growth in maturity and impulse control. The report was completely ignored by the Commission and never acknowledged in any of its N.O.A.

§ 2.20-6, Clinical Judgment Regarding Parole Risk. The Commissioners and examiners are not trained psychologist or psychiatrist. When John Hinkley, who committed one of the most worst crimes besides a nuclear attack, by attempting to assassinate the President of the U.S. psychologist /psychiatrist gave a clinical analysis of his mental state and parole eligibility.

The Commission deferred to their reports. However, Petitioner's psychiatric report prepared by Dr. Urbanik, noting Petitioner would be an excellent parole risk was not given the same level of deference and never acknowledged or mentioned in any of the Commission's N.O.A. Petitioner is well aware each case has its own merits. Nonetheless, the only real difference besides level of offense is that Mr. Hinkley was impaired by mental complications and to a degree so was Petitioner to the degree Petitioner was impaired by weak impulse control do to his youthfulness and level of maturity.

Petitioner is the youngest of all his co-defendants. None of Petitioners co-defendants started out with life sentences. All received numerous disciplinary transfers, and all at some point incurred institution infractions for various related offenses that were rated as serious.

Nonetheless, the Commission took a chance on them and they were granted parole. Discounting Petitioner's Y.C.A. infractions, from 1984 to the present, everyone including all of Petitioner's examiners recognized and acknowledged a shift in Petitioner's behavior. Petitioner has incurred (3) three infractions in (32) thirty-two years, and for twenty-five (25) of those years Petitioner received no infractions! Petitioner has less infraction than any of his paroled Co-Defendants.

Petitioner is aware each case has its own unique characteristic, and what specifically sets petitioner's case apart from his Co-Defendants and similar situated prisoners is the Commission took a more riskier chance of granting them parole while they were still in prison without any measure of degree or indication how they would function once they were released. One of Petitioner's Co-Defendants has since returned to prison.

Petitioner's strongest argument is the Commission had a barometer to measure Petitioner's behavior once released. Petitioner was already on the streets in a halfway house waiting to see the parole board and establishing a factual record for the Commission to review which they never had an opportunity to do because no progress report was prepared. The Commission's decision to deny Petitioner his two-thirds date is such a wide disparity it is a travesty of justice and a really bad decision.

## GROUND SIX ATTACHMENT OF FACTS (1)

The Commission's stated reasons for denying Petitioner Mandatory Parole are in consistent with the **disc** of the hearing held on May 31, 2016.

### REASONS (1)

In the Commission's N.O.A., the first part of its reasons for denying Petitioners Mandatory Parole is Petitioners, "seriously and frequently violated the rules of the institutions you were confined in over the last forty (40) years". This rational and statement is utterly not true, and once more, Petitioner's institutional record and the Commissions own findings can prove this observation to not be true.

As early as 1996, at Petitioner's S.I.H., held on April 15, 1996, at U.S.P. Marion, Petitioner's staff represented Mr. Bozman, who has known Petitioner for years acknowledge he as well as staff at U.S. Marion had recognized a shift in Petitioner's behavior.

In its N.O.A. of May 10, 1998, the Commission itself, and later affirmed by the National Appeals Board, Petitioner was awarded a twelve (12) month reduction of his fifteen (15) years Reconsideration hearing for Superior Program Achievement for maintaining a clear conduct record and positive attitude.

At the time Petitioner was awarded the Superior Program Achievement Award, the Commission was fully aware Petitioner had been convicted and received a Life Sentence for the demise of another prisoner in 1976, the attempted escape from U.S.P. Marion in 1983, and the stabbing of a B.O.P. staff member in 1983.

Starting from 1983, to the present, 2016, Petitioner have incurred approximately, two (2) institutional rules violations in thirty (33) years. Neither of thee reports were

serious. More specifically from the time Petitioner was awarded the Superior Program Achievement Award until 2016, Petitioner have incurred only one minor rule violation so the assertion Petitioner have seriously and frequently violated the rules of the institutions Petitioner were confined in over the last forty (40) years is patently not true.

The second part of the Commission's stated reason for denying Petitioner Mandatory Parole were Petitioner's many infractions starting from June 1980 until 2016, Petitioner have incurred approximately six(6) institutional rule violations over thirty six (36) years period. The remaining rule violations the Commission alluded to in its rational were incurred while Petitioner was serving his Y.C.A. sentence for which the National Appeals Board have already determined in its modified N.O.A. dated 7/31/92, could not be used against Petitioner. Furthermore, this was a Y.C.A. sentence and by law, the Commission is prohibited from mixing these reports with Petitioner's adult sentence.

The third and final rational for the Commission denying Petitioner Mandatory Parole is because of Petitioner's inability to comply with institution's rules (which Petitioner and the Commission's own files have already debunked as not true). Indicate a high probability that he will not follow society folkways and more if released. Petitioner urges the Appeal Panel to listen to the disc of Petitioner's Mandatory hearing held on May 31, 2016. The examiner, Mr. Tanner, never felt or made a determination that there was a reasonable probability that Petitioner would commit any Federal, State or local crime if release. The disc will should when Petitioner tried to address that issue the examiner indicated he did not feel Petitioner would commit or be involved in any future criminal activity, and did not want to address that aspect of the hearing.

Instead, Mr. Tanner's focus was on what he believes to be Petitioner seriously or frequently violation of institution rules, which included Petitioner's Y.C.A. infractions. To raise that issue now is very unfair to Petitioner when listening to the disc it clearly was not an issue at the hearing. After ~~twelve (12)~~ years of incarceration, and the reasons given for denying Petitioner Parole which have prove to be factually in–correct based on Petitioner's past thirty six (36) years of incarceration and the Commissions own records where Petitioner was awarded the S.P.A. Award is really sad. The stated reasons are further compounded wrong when viewed against the fact Petitioner was already in a halfway house moving towards becoming a productive member of society.

## GROUND SEVEN ATTACHMENT OF FACTS (1)

Petitioner has health complications and Petitioner was already in a Halfway House prior to appearing before the Parole Commission.

## REASONS (1)

Physically, Petitioner has a deteriorating chronic back condition that he is currently on medication for. Because of this condition Petitioner walks tilted forward with the assistance of a cane in a hunched over position. Petitioner is no longer able to run or engage in certain physical activities. Petitioner's left hand no longer open and closes properly, and at some point in the future will need further surgery.

During petitioner's long incarceration, he has lost his father, a Sister, a Brother, and just recently while at the halfway house his Mother. Petitioner's Mother anticipating his release willed Petitioner her house and a substantial amount of money. Petitioner's probation officer, Mr. Hess, also anticipating petitioner's release visited petitioner's house and talked with Petitioner's family members. While Petitioner was on furlough, he

16

reacclimated with family members; some Petitioner was meeting for the very first time. Paroling Petitioner to his two-thirds date would not depreciate or promote disrespect for the law. Petitioner would have served out the punitive aspect of his sentence. Petitioner has satisfied the bottom half for his guidelines of four hundred and seventy six (476) months.

Petitioner will be in continuous custody for forty-two (42) years. The overall factual record and staff support on both Federal and State level illustrates petitioner, who is now (60) year old is not the same immature weak impulse control kid that he was at (17) years old, when he first entered the B.O.P.

Petitioner's short stay at the halfway house also illustrates this point. Petitioner is/was engaged to be married, that may be put in jeopardy now. Petitioner was going about his business of moving forward with his life by seeking employment, health care insurance, and establishing his identification.

Prior to Petitioner's Mother's medical complications where she needed constant around the clock care, Petitioner's family members attended his parole hearings. They witnessed and heard the many staff accolades complementing Petitioner's rehabilitation and their support for Petitioner's parole efforts, which included the Commission's examiners determination Petitioner, is a better risk for parole than his salient factor score in the case.

After hearing, such observations Petitioner would contend the Commission's decision to deny Petitioner parole at his two-thirds date would depreciate and promote disrespect for the law because of its callousness.

After forty-two (42) years of continuous custody, testimony by staff as to

Petitioner's rehabilitation, and releasing Petitioner to a halfway house where he went on furloughs and numerous passes all unescorted and without incident.

Having Petitioner to reacclimate with his family, and then for the Commission to not only deny Petitioner parole, but to continue Petitioner to the expiration of his sentence is like a cruel magic bait and switch act on Petitioner and his family. Paroling petitioner to his two third date would allow Petitioner to continue his forward progress of reintegrating into society.

Having experienced the difficulties of reintegrating into society after forty-two (42) years of incarceration Petitioner submits he will need to be placed in a halfway house. Continuing Petitioner to expiration of a life sentence that has no end date except death is extremely harsh when reviewed against petitioner's factual record and other prisoners similarly situated and defeats the purpose of the sentencing Reform Act which was designed to correct these wide disparities.

The halfway house is not a secure facility. The doors only locked from the out side to keep the public from entering unannounced. The residents could leave at any time. The doors did not lock inwardly. When Petitioner was told to report down stairs and the Marshals were waiting. Petitioner surrendered without incident, which validates the clinical psychiatric report done by Dr. Urbanik.

This Commission will never know what it feels like to be incarcerated for forty-two (42) years, but consider this, after leaving Trenton Petitioner made a commitment to himself to never be placed in cuffs again.

Then after almost a month of being in the halfway house, going on furlough, passes all unescorted, and without incident and starting to build a life to suddenly be

placed back in cuffs again is an indescribable experience fraught with all kinds of emotions, and a true testament to Petitioner's level of maturity and impulse control. If the Commission allow Petitioner to be parole to his two-thirds date, he will not disappoint himself first, his family second, all the people who have supported Petitioner over the years, and lastly this Commission.

If Petitioner is granted parole to his two-thirds date, it will still allow Petitioner some time in the half way house and once released he will still be under the jurisdiction of this Commission allowing the Commission to keep track of Petitioner progress. Petitioner will also be under very strict conditions while on parole. At the very least, petitioner should be given a new hearing to correct all the deficiencies noted in this appeal.

Respectfully submitted,

Dated: ~~December~~ November 28, 2016

Richard Thompson

c:
    FILE

19

Richard Thompson PB
P.o. Box 861
Trenton, NJ 08625

Federal Number
80080.101

INSPECTED 7

United States Parole Commission
Appeals Unit
90 K Street,
Washington, D.C.
N.E. 3rd Floor
D.C. 20530

DOJ MAILROOM
JUN 28 2017

RECEIVED
25 JUN 2017
TRENTON NJ 086
JUN 28 2017 PM 2 L

INSPECTED 12

U.S. Department of Justice                                    **Notice of Action on Appeal**
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C.  20530

| | |
|---|---|
| Name:  Thompson, Richard | Institution:   New York CCM |
| | Trenton State Prison, NJ |
| Register Number:  20080-101 | Date:         October 20, 2017 |

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirm the previous decision.


**REASONS**:

In your appeal, you claim that: (1) "[t]he Commission applied statutes/and or regulation incorrectly
which applied correctly would have a different decision;" (2) "[t]he Commission made several
procedural errors and a different decision would have resulted if the correct procedure had been
followed;" (3) "the Commission relied on erroneous information and the actual facts justify a different
decision; (4) "the Commission made error in calculating time in custody;" (5) "the Commission engaged
in disparity that was unjustifiably wide and what the 1984, Sentencing Reform Act was designed to
correct.  Had the Commission followed the act's intent, a different decision would have resulted;" (6)
"the Commission's stated reasons in its notice of action dated August 10, 2016, are not factually true
and had the [audio] of the hearing been listened to a different decision would have been reached;" and
(7) "there are especially mitigating circumstances which justify a different decision."  For the following
reasons, your appeal is denied.

In your first claim, you argue that you have completed your life sentence for murder in 2010.  You
further argue that you are currently *only* serving your 10 year sentence for Assault on a Federal
Correctional Officer which was ordered to be served consecutively to your life sentence.  Your first
claim is meritless.

Pursuant to 28 C.F.R. § 2.53, the Commission holds mandatory parole hearings when a federal inmate
has served 30 years of a life sentence unless there are additional consecutive sentences.  Because you
had a 10 year sentence that will run consecutive to your life sentence for murder, the Commission held
your mandatory parole hearing on July 27, 2016 before your aggregate two-thirds date calculated in
compliance with 28 C.F.R. § 2.53.  The calculation of your mandatory parole hearing date (i.e. your
two-thirds date as calculated by the Bureau of Prisons) does not mean that either your life sentence for
murder or your consecutive 10 year sentence for Assault on a Federal Correctional Officer have expired.
The calculation is done for your mandatory parole hearing only.

In addition, your understanding of the Commission's term "mandatory parole" is in error.  The
Commission makes a decision to grant an inmate parole at a mandatory parole hearing in accordance
with 18 U.S.C. § 4206(d) which states:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under
> this section or any other applicable provision of law, shall be released on parole after
> having served two-thirds of each consecutive term or terms, or after serving thirty years
> of each consecutive term or terms of more than forty-five years including any life term,
> whichever is earlier: *Provided, however,* That the Commission shall not release such

Exhibit 17

prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

In the Notice of Action dated August 10, 2016, the Commission stated that it denied you mandatory parole because "[y]ou have frequently and seriously violated the rules of the institutions you were confined in over the last 40 years." Specifically, "you killed an inmate while at USP Lompoc in 1976, attempted to escape from USP Marion in 1983, stabbed a BOP staff member 17 times in 1983, [were] found guilty of fighting, assault, threatening bodily hard, and possession of dangerous weapons...." Therefore, the Commission's decision to deny you mandatory parole was in compliance with 18 U.S.C. § 4206(d) and your first claim is denied.

In your second claim, you argue that the Commission erred by considering the entirety of your record in prison and should have limited its review of your disciplinary and criminal infractions while incarcerated to a more limited time frame. 28 C.F.R. § 2.19 governs the information considered by the Commission. While the timing of criminal convictions and violations of the rules of the institution are considered by the Commission, the Commission also considers the seriousness of the violations. Here, the Commission complied with 28 C.F.R. § 2.19 and your second claim has no merit.

In your third claim, you argue that a letter submitted by the Director of the Bureau of Prisons opposing your parole should not have been considered by the Commission in its decision. You also argue that the Commission did not consider your latest progress report and that the Commission's decision would have been different had they considered the progress report. Again, the Commission complied with 28 C.F.R. § 2.19, so your third claim has no merit. Furthermore, the submission of the letter by the Director of the Bureau of Prisons did not prejudice you. Notwithstanding the letter, you had murdered another inmate and stabbed a BOP staff member 17 times while incarcerated. Furthermore, you have committed over 45 DHO level violations while incarcerated. The weight of the evidence, excluding the letter from the Director of the Bureau of Prisons, supports the Commission's decision and reasons to deny you parole.

In your fourth claim, you argue that the Commission made an error in calculating your time in custody. The Commission is not responsible for calculating your time in custody and does not have the authority to change your time credited. If you have an issue with the calculation of your time in custody, you are required to address that with the Bureau of Prisons.

In your fifth claim, you argue that the Commission has engaged in sentence disparity by not granting you parole because the co-defendants of your original rape charge have been paroled and some members of prison staff have written letters supporting your parole. This claim lacks merit. While your co-defendants have been paroled, they also were not convicted of murder and did not stab a corrections officer 17 times. Furthermore, the Commission is presumed to have considered all letters of support of your parole that you submit. The Commission made its decision in accordance with 18 U.S.C. § 4206(d) based on the entirety of your record. Therefore, your fifth claim is denied.

In your sixth claim, you argue that the Commission's reasons for denying you parole as stated in the Notice of Action are not consistent with the record of your hearing. The Commission is presumed to have reviewed the entirety of your hearing. Furthermore, all of the Commission's reasons for denying your mandatory parole are supported by documentary evidence in your record. Your sixth claim is meritless.

In your seventh and final claim, you argue that there are exceptionally mitigating circumstances in your case that justify a different decision. Specifically, you argue that you had performed well when placed in a halfway house and that you have major health complications. The Commission reviewed that the

entirety of your record and determined that your frequent and serious violations of institutional rules outweigh factors in mitigation.  The Commission also found that there is a high probability you will violate laws if released.  Therefore, ground seven does not have merit.

All decisions by the National Appeals Board on appeal are final.


cc:      Designation & Sentence Computation Ctr
         U.S. Armed Forces Reserve Complex
         Grand Prairie Office Complex
         346 Marine Forces
         Grand Prairie, TX  75051

## Mandatory Parole Hearing and Prehearing Summary

### Part One: Prehearing Assessment

**Offense of Conviction:** The subject is serving a term of Life for Murder First Degree (CA/Northern CR76-1538); 5 years for Attempted Escape (IL/Southern 82-40053); and 10 years, c/s for Assault on a Correctional Officer (IL/Southern CR85-4004-01).

| | | | |
|---|---|---|---|
| **Name** | : Thompson, Richard | **BOP Institution:** | Trenton State Prison, NJ |
| **Reg No** | : 20080-101 | **Full Term Date:** | Life |
| **Assessment Date:** | June 12, 2018 | **Two Thirds Date:** | 2/3/2017 |
| **MR Date (if release at 2/3 not granted):** | | **Sentence Length:** | Life |
| **Months in Custody:** | 456 as of 6/25/2018 | **Reviewer** | : Oscar L. Vela |

### I.    Codefendants:

George L. Awkard, 12517-116; paroled 12-15-1992. USPC file archived on 10/10/01.

John Wright Williams, 01486-168; (AKA: Abdul Ali)  paroled 2-3-2006. Supervision terminated 10/15/12.

Clarence Hinnant, 19972-101. Life sentence on 6/22/77. Currently incarcerated with a 2/3's date of 9-5-2017. He also has a c/s 30-month sentence with a projected release date of 11-8-2019. The USPC has continued this case to expiration.

Paul Milton Laney, 29336-117. Life sentence on 6/27/77.   Paroled 1-16-2009 at his mandatory parole hearing. Revoked 12/15/11 for drug use. Re-paroled 5/12/12 to Greenbelt, MD. Revoked 6/30/14 with PE date of 12/31/14/ PE date retarded via NOA dated 12/16/2014 to address new law violations (Bank Robbery 2 cts; Bank Robbery Forfeiture). NOA dated 1/11/16 ordered, "Parole previously revoked n NOA dated 6/30/14. None of the time spent on parole shall be credited.  Parole effective 1/3/16 nunc pro tunc to the consecutive 78-month term in Case PJM-8-14-CF-00566-001.  Projected release date 8/24/2021

### II.    Victim information:

The victims in this case were an inmate who was murdered on 2-17-1976, William Allen Lewis. Additionally, the subject attempted to murder a federal correctional officer on 7-17-1983, Richard Haynes. He was stabbed a total of 17 times.

In a letter dated 3/3/11, the Director of the Bureau of Prisons, opposed granting parole to Mr. Thompson.

The record does not indicate there are any registered victims or family members. Due to the nature of these offenses, the case will be referred to the USPC Victim Witness Coordinator for further review.

### III.    Summary of the confining offense(s) and prior decisions of the Commission:

Exhibit 18

*The following is taken, in part, from a PHA dated 6/22/2018 by Examiner Tanner. It has been updated to reflect current action.*

The subject is serving a term of Life for Murder First Degree (CA/Northern CR76-1538); 5 years for Attempted Escape (IL/Southern 82-40053); and 10 years, c/s for Assault on a Correctional Officer (IL/Southern CR85-4004-01).

The subject was originally sentenced to 6-8 year YCA 5010c term in the ED/VA on 9/13/74, for Rape (166-74-A). This offense involved the subject and 3 others forcing two young woman (19 and 17 years of age) into a van 5/29/74 and forcing them to disrobe. One of the women was raped and the other was told by her assailant to fake having intercourse so the others would not bother her. The subject was mandatory paroled to the Adult terms on 6/4/80.

The subject was sentenced to Life on 6/27/77, for Murder (CR 76-1538). On 2/16/76, while serving the YCA term, the subject was involved in the murder of another inmate at Lompoc. The subject was also sentenced to 5 years (concurrent) on 5/18/83, for Attempting to Escape (82-40053). The subject attempted to escape from Marion on 1/13/82. The subject was also sentenced to 10 years (Consecutive) on 8/2/85, for Assault on a Federal Correctional Officer (CR 85-40004-01). On 7/17/83, he and another inmate stabbed a correctional officer approximately 17 times.

The Initial Hearing was conducted on 2/26/92 and his case was designated as an Original Jurisdiction (OJ) case. The subject was given a Fifteen-Year Reconsideration Hearing in 2/2007. The aggregate guidelines were a total of 628+ months with a SFS of 2. The subject committed a total of approximately 46 DHO level reports. On appeal, the reasons were modified to a SFS of 1 with the Commission ignoring the IR's on the YCA case, which reduced the guidelines to 476+, changed the SFS to 1, and made the base offense the murder rather than the Rape case. NOA dated 7/31/92.

The Commission conducted Statutory Interim Hearing (SIH) in 1994 no changes were made and he had clear conduct at Marion while essentially in a lockdown situation. He had previously been at Oak Park Height in MN. The SIH conducted in April 1996 revealed the subject continued clear conduct at Marion and worked as an orderly since 1995. No change was made. The case was declassified from OJ by NOA dated 5/10/96. On appeal to the NAB the decision was affirmed 12/10/96.

In 4/98 the 15-year Reconsideration Hearing was advanced to 2/2006. An error was made in using the YCA rape offense behavior as Category 7 rather than the Murder on the adult case, which was Category 8. The advancement was made for clear conduct and a positive attitude despite his limited programming opportunities. The NAB affirmed the decision 9/3/98.

The Commission conducted a SIH on 2/22/01 at State Branch Prison. The offense was corrected back to Eight and the SFS was 2 which was an error since the SFS was from the Initial Hearing and had been changed to a 1 at the Appeal process that recalculated only the adult offenses in the consideration process 7/31/92. NOA 3/26/01. On appeal to the NAB the decision was affirmed 9/7/01.

The Commission conducted a SIH on 2/11/03 at State Branch Prison. The offense was corrected back to Eight and the SFS was 1. NOA 3/3/03. On appeal to the NAB the decision was affirmed 4/28/03.

The USPC conducted a 15 year Reconsideration Hearing on 9/20/06. The USPC in a NOA dated 10/13/06, ordered, Continue to expiration with sex offender aftercare, GPS, annual polygraph examinations, and no contact with the victim. The subject' offense severity was rated a Category EIGHT and the SFS was 1. The subject's aggregate guideline range was 476+ months. Reasons given on the NOA dated 10/13/06 are as follows:

A decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating case factors:  You are a more serious risk than indicated by the guidelines. While serving an 8-year term for rape, you murdered an inmate, committed an attempted murder, attempted to escape from custody, and assaulted a staff member by stabbing him 17 times. In addition, you incurred other disciplinary infractions which include 3 incidents of new criminal conduct involving Assaults and Possession of Prohibited Weapon, and 32 administrative infractions. Although you have incurred any disciplinary infractions since 1985, your criminal history and poor institutional adjustment warrants your continue to incarceration to your mandatory release date.

On appeal to the NAB the decision was affirmed 1/19/07.

An SIH was conducted on 2-26-2009 at the New Jersey State Prison in Trenton.  Subject presented information about his programs (Cage Your Rage) and indicated he had been in open population since 2-2007 and worked in the hospital.  He was also tutoring other inmates in reading Spanish and English.  Per NOA dated 4-30-09, there was no change in Continue to Expiration.  Subject appealed this decision and claimed he did not properly receive the YCA benefits from the 1974 sentence and desired a parole date to assist with release planning.  Per NOA dated 2-2-2010, the NAB affirmed the previous decision.  It was specifically noted that the YCA sentence expired in 1982 while he was serving the adult sentences.

He was scheduled for the next SIH in February 2011.

An SIH was conducted on 3/11/11 at the New Jersey State Prison in Trenton. State officials denied his request to have a chaplain attend the hearing. He did not waive his right to have a staff representative (Chaplain Rasul Suliki), but he chose to proceed with the hearing so the Commission could review his progress.  He had completed a 20 hour paralegal program and worked in the hospital as an orderly and assisting handicapped inmates.  Per NOA dated 4/15/11, there was no change in Continue to Expiration.  Subject appealed the decision and claimed the USPC needed to set a parole date before the expiration date of 10/31/11 and objected to going forward without a representative.  The NAB affirmed the decision via NOA dated 7/21/11, noting the extension of the Commission mooted his first argument and the right to a representative is not absolute.

A rehearing was conducted on 5/7/2013 at Trenton State Prison, Trenton, New Jersey.  Via NOA dated 5/28/2013, the Commission ordered: No Change in Continue to Expiration.  The subject appealed to the NAB citing a violation of the Sentencing Reform Act and that the addition of the sex offender condition violates the ex post facto clause of the Constitution. Via NOA dated 11/8/2013, the NAB ordered: Modified the previous decision; Withdraw Sex Offender Special Condition; Affirm the remainder of the previous decision.  The NAB concluded the sex offense is too remote in time from his release on parole.

An SIH was conducted on 8/4/15 at Trenton State Prison and no change to previous decision was made of continue to expiration.

A Mandatory Parole Hearing was conducted on 7/22/2016.  Via NOA dated 8/10/2016, the Commission ordered: Deny mandatory parole. Continue to Expiration.  The Commission noted that the subject has seriously and frequently violated the rules of the institution including the murder of an inmate while at USP Lompoc in 1976, attempted escape while at USP Marion in 1983, the stabbing of a BOP staff member (17 times) in 1983 and DHO"s of fighting, assault, threatening bodily harm and possession of dangerous weapons.

On 11/28/2016, the subject appealed to the NAB.  Via NOA dated 10/20/2017, the NAB ordered: Affirm the previous decision.

On 3/28/2018, the subject applied for parole via form I-24. He listed Maria Figueroa, BOP Case Manager as his representative and requested disclosure of USPC and Institutional documents.  On 6/8/2018, the subject was provided disclosure by the Commission.   His hearing is scheduled for the week of 6/25/2018 at the New Jersey State Prison.

**IV.    Summary of the prisoner's institutional conduct during this period of incarceration (include a list all incident reports that have occurred during the current period of confinement that resulted in findings of guilt by a Disciplinary Hearing Officer and/or any new criminal  conduct that has occurred):**

The subject was in service of a rape conviction when he killed another inmate at USP Lompoc on 2/16/76 and was convicted of the offense receiving life.  He is currently in service of that life term.  Further, while confined at USP Marion, he cut out a window and made it to the roof of a housing unit in an attempt to escape on 5/18/1983.  He was convicted in federal court and sentenced to five years in prison.  Finally, while confined at USP Marion, he stabbed a correctional officer 17 times in an attempt to kill him.  He was convicted in federal court and sentenced to a consecutive 10 year term.

The following are the infractions in which the DHO found him guilty:

| | |
|---|---|
| 6/4/2014 | Refusing to work/accept assignment |
| 5/18/89 | Fighting |
| 5/11/89 | Possession of anything not authorized |
| 2/27/87 | Refusing to obey an order |
| 2/28/85 | Possession of unauthorized locking device – handcuff key |
| 12/16/83 | Possession of a sharpened instrument and a hazardous tool most likely used for escape. |
| 12/7/83 | Conduct which disrupts, most like refusing to obey an order |
| 11/16/83 | Possession of a sharpened instrument |
| 11/16/83 | Assault |
| 8/24/83 | Threatening bodily harm |
| 7/29/83 | Attempted killing, assault and possession of a sharpened instrument (this is where he attempted to kill a staff member) |
| 7/29/83 | Possession of a sharpened instrument |
| 4/6/83 | Refusing to obey an order |
| 4/2/82 | Attempted Assault on correctional officer |
| 2/5/82 | Assault – correctional officer |
| 1/13/82 | Attempted escape |
| 12/18/80 | Encouraging others to demonstrate |
| 11/17/80 | Assault- stabbed an inmate |

2/6/80        Assault – through hot coffee on inmate
7/22/79      Possession of a weapon
1/12/76      Assault – rendered an inmate unconscious

In reviewing the subject's three files, he has committed over 50 infractions but to the best of my review, the above list is all the DHO/IDC infractions.

A BOP progress report dated 3/16/2018 was reviewed.   The report noted the subject was released to an RRC from 5/26/2016 through 6/23/2016. While at the RRC, staff indicated he was a "model resident". The subject was released in error and returned to custody.  While awaiting return to BOP, he was housed at a local detention center.  Two staff, Cpl. Kermit Burrell and Lt. Steve Wallace of the Kent County Jail wrote letters to BOP indicating they were impressed by the subject's behavior and if the subject was going to be there longer, they would have had him facilitate a program regarding deterring future criminality.  He mentored the younger inmates and had a positive impact while there.  He was in Kent County from 6/28/2016 – 8/11/2016.

The report opines he worked as a cell sanitation worker (current assignment); porter and runner.  He participated in anger management, Islamic Purification of the Heart, Islamic Studies and Ramadan GP while in Trenton State Prison.

**V.**       **Prisoner's release plan (as indicated in the most recent BOP progress report):**

The subject plans to reside with his mother, ▮▮▮▮▮▮▮▮ at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**VI.**      **Standard(s) for release at this hearing:**

The Commission has determined at a previous mandatory parole hearing that release should be denied under 18 U.S.C. §4206(d) based on a finding that there has been frequent or serious violations of institution rules or that there is a reasonable probability that he would commit any Federal, State or local crime. At this hearing, the Commission needs to determine whether either of these factors continue to warrant denial of release.

**VII.**     **Pre-hearing Examiner's evaluation of the case:**

The subject is a 61 year old male appearing before the Commission for an SIH after denial of Mandatory Parole. The Commission last denied MP based on the subject's serious and frequent violations of institutional rules.  He has maintained clear institutional conduct since his last hearing on 7/22/2016.

He was erroneously released prior to his last mandatory parole hearing and while temporarily housed at a local detention center, he impressed staff so much with his positive behavior, staff wrote letters to BOP to ensure his good behavior was noted.

As of 6/25/2018, he has served 456 months (38 years) in custody. His FT date is Life.

OLV
June 12, 2018


**Part Two: Hearing Summary**

*[handwritten at top: 4383 / (609-292-4700 / WESLEY·Fitzgerald 2 @ US DOJ·gov ) USMS ✓]*

**Date of Hearing:** 6/27/18
**Location of Hearing:** Trenton New Jersey State Prison
**Hearing Examiner:** Joseph M. Pacholski

I.   **Name of prisoner's representative and Information provided: (if prisoner waived representative, type "waived"):** Waived

II.  **Victim Information considered by the Examiner:**

Though requested at the pre-hearing stage, the Examiner did not receive any additional information from any victim representative prior to or during the hearing.

There was no new information received by the Commission's Victim Unit as of the date of this report.

III. **Information provided by the Prisoner at the hearing:** Our subject stated he was grateful that a mistake was made in his favor in that he was released and at a Halfway House and was able to be with his mother when she past (June 2016). Our subject is 61 years old and had spine surgery and is wheelchair bound. Our subject attends therapy but is unable to walk without assistance. Our subject explained he is eligible for SSI and plans to live at his mother's home because it was left to him when she past. Our subject explained that when he was released he was at the Halfway House and did what he was required to do. When the BOP explained he was released in error he stayed at the Halfway House until the US Marshals retrieved him and went back to custody. Our subject completed an anger management course and continued to do time until this hearing. Our subject stated that he was blessed to see his mother before she past and that was a big event in his life. Our subject explained he did not run because he felt his good fortune should not be disrespected by more poor choices.

IV.  **Information provided by hearing participants other than those listed above (e.g. prisoner's case manager):** Our subject had a staff member Sgt. Samosuk, from the facility that stated our subject has been a model inmate and helpful to keep the peace. The facility's staff explained the subject was not a management problem and in fact was trying to program until his health issues began to hinder his ability to move.

Two staff, Cpl. Kermit Burrell and Lt. Steve Wallace of the Kent County Jail wrote letters to BOP indicating they were impressed by the subject's behavior and if the subject was going to be there longer, they would have had him facilitate a program regarding deterring future criminality.  He mentored the younger inmates and had a positive impact while there.  He was in Kent County from 6/28/2016 – 8/11/2016.

*[handwritten at bottom left: Jail Prison / Nicole, cade @ SP3·NJ.gov / B / NJ state prison]*

*[handwritten at bottom right: USMS email above ↑ / Phone 609·989·2069· / USM Fax 609·989·2145]*

**V.  Release plan presented at the hearing:** Our subject plans to release to his mother's home (Arlington, VA) which he received upon her passing. Our subject will receive SSI benefits plus the money he inherited.

**VI. Options of the Commission at this hearing:**

If the Commission finds that the prisoner should be released pursuant to 18 U.S.C. §4206(d), it shall order mandatory parole at the two-thirds date or, if the two-thirds date has already passed, grant mandatory parole effective on a specific date as soon as is practicable.

If the Commission finds that the prisoner should be denied release under 18 U.S.C. §4206(d), it shall order to deny mandatory parole and continue to expiration. If the prisoner has more than 2 years remaining until his statutory/mandatory release date as indicated in the pre-hearing assessment, the prisoner shall be eligible for a Statutory Interim Hearing in 24 months and, at that time,  shall be reviewed again for release under 18 U.S.C. 4206(d). If this prisoner has 2 years or less until his statutory/mandatory release date, the Commission shall order continue to expiration without any further consideration for release.

**Hearing Examiner's Evaluation of the case:**  Our subject has been in custody for 456 months as of 6/25/18. Our subject was in a wheelchair for the hearing and staff at the facility confirmed the subject had spine surgery. The BOP report noted the subject was released to an RRC from 5/26/2016 through 6/23/2016. While at the RRC, staff indicated he was a "model resident".  The subject was released in error and returned to custody. He waited for the US Marshals and there was no issues. Our subject stated he was grateful to see his Mother outside of prison before she died. I believe the subject truly believes this was a blessing and this event did change his outlook on his future. I am recommending release because our subject's health issues and his 4 weeks of freedom provided him an opportunity to succeed. Our subject did complete a anger management course after the last hearing and continued to program. I believe the subject has the resources to succeed and a good release plan. I believe the age and health issues has lessen his risk if release.

THE BOP SUBMITTED AN EMAIL DATED 7/12/18, FROM Maria Figueroa, Residential Reentry Oversight Specialist, EXPLAINING THE RELEASE AND RETURN TO CUSTODY. (attached to the summary.)

**VII.   Hearing Examiner's Recommendation:**

Reopen and Advance Continue to Expiration. Grant mandatory parole effective 11/21/18.

**VIII.   Reasons to deny release (if recommending release, type N/A):** NA

**IX. Special Conditions (if recommending denial, type N/A):** Drug and Sex Offender

**X.  Examiner signature block:**

**I certify that I have reviewed this hearing summary.**

*Joseph M. Pacholski, J.*

Joseph M. Pacholski, Hearing Examiner

**XI. Additional comments by the Executive Reviewer:**

# Memorandum



| | |
|---|---|
| **Subject** | **Date** |
| **Thompson, Richard**<br>**Reg. No. 20080-101** | July 27, 2018 |

| | |
|---|---|
| **To** | **From** *Husk* |
| Commissioner<br>U.S. Parole Commission | Stephen J. Husk<br>Case Operations Administrator<br>U.S. Parole Commission |

**Summary:** This memorandum serves as the Executive Reviewer's comments to the Statutory Interim hearing (following denial of release at the two-thirds date) conducted by Examiner Joseph Pacholski on 07/10/2018. The Examiner is recommending that the USPC reopen and advance its previous decision to deny mandatory parole and continue to expiration. It appears the Examiner found that his age (61) and health conditions (including being wheelchair bound) warrant a change from the previous decision. It is also noteworthy that Mr. Thompson was erroneously released to a Residential Re-Entry Center since his last hearing for about 4 weeks and was compliant during that time.

The USPC denied mandatory parole at the two-thirds date of 02/03/2017 because Thompson had seriously and frequently violated the rules of the institution. Most noteworthy, Thompson's base offense is for murdering another inmate in a federal facility while serving a youth act sentence for rape. In addition to that, he attempted to escape from a U.S. Pentintiary in 1983 and also stabbed a BOP staff member 17 times. I find that, despite the passage of 2 additional years in prison and the fact that he remained in a halfway house for 4 weeks without committing a new crime, the USPC's conclusions from 2016 continue to be applicable under the standards at 18 U.S.C. §4206(d).

**Recommendation:** No change in previous decision to deny mandatory parole and continue to expiration.

**Reasons:** The Commission continues to find that you have seriously violated the rules of the institution and should be denied release pursuant to 18 U.S.C. §4206(d). Specifically, you murdered another inmate in 1976 while serving a Youth Act sentence for Rape. You also attempted to escape from a United States Penitentiary in 1983 and, also in 1983, stabbed a Bureau of Prisons inmate multiple times. The Commission continues to find that these are serious violations of the prison rules and that you should be denied release

Exhibit 19

U.S. Department of Justice                          Notice of Action
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C.  20530

---

Name:  THOMPSON, Richard              Institution: New York CCM

Register Number:  20080-101          Date:     July 31, 2018

---

In the case of the above-named, the following action was ordered:

No change in previous decision to deny mandatory parole and continue to expiration.

**REASONS**:

The Commission continues to find that you have seriously violated the rules of the institution and should be denied release pursuant to 18 U.S.C. §4206(d).  Specifically, you murdered another inmate in 1976 while serving a Youth Act sentence for Rape.  You also attempted to escape from a United States Penitentiary in 1983 and, also in 1983, stabbed a Bureau of Prisons inmate multiple times.  The Commission continues to find that these are serious violations of the prison rules and that you should be denied release.

You have also been scheduled for a statutory interim hearing during June 2020.  At that time, your case will be reviewed again pursuant to 18 U.S.C. §4206(d).

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:    Designation & Sentence Computation Ctr
       U.S. Armed Forces Reserve Complex
       Grand Prairie Office Complex
       346 Marine Forces Drive
       Grand Prairie, TX  75051

Exhibit 20



**APPEAL**

RECEIVED
AUG 2 3 2018
Parole Commission

**U.S. Department of Justice**
**United States Parole Commission**

Name  *Richard Thompson:* Federal Number 26330.101

*State Number:*  State Boader Prisoner at:

Register No. *568688 /0080158535* Institution *New Jersey State Prison*

I received a Notice of Action dated  *7-31-18*  and appeal that decision.

*Richard Thompson*                    *8 - 12 - 18*
        (Signature)                        (Date)

**INSTRUCTIONS:**

**Procedures.** The appeal must be mailed to the Commission within 30 days from the date on the Notice of Action. The permissible grounds for appeal are described below. On page two of this form you must provide a brief summary of all the grounds for your appeal. On page three of this form you must provide a statement of the facts and reasons in support of each ground identified in your summary. Continuation pages are permitted for longer appeals. You may provide any additional information in an addendum to your appeal. The Commission may refuse to consider any appeal which does not follow this format. The appeal will be decided on the record, and you will be notified of the Commission's decision through a Notice of Action. Do not submit multiple copies of your appeal, and do not submit documents which are in the Commission's file.

**Mailing address.** You should mail the appeal to U.S. Parole Commission, Appeals Unit, 90 K Street, N.E., 3$^{rd}$ Floor, Washington, D.C. 20530.

**Permissible grounds for appeal.**

(a) The Commission relied on erroneous information, and the actual facts justify a different decision.

(b) There was significant information in existence but not known to me at the time of the hearing, and a different decision would have resulted if the information had been presented.

(c) The Commission made a procedural error in my case, and a different decision would have resulted if the correct procedure had been followed.

(d) The Commission applied a statute or regulation incorrectly (<u>e.g.</u>, in determining my period of imprisonment as a supervised release violator, and/or my further term of supervised release).

(e) The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody).

(f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

(g) There are especially mitigating circumstances in my case which justify a different decision.

Exhibit 21

## SUMMARY OF GROUNDS FOR APPEAL

**Instructions:** Briefly describe the error which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

**Ground One:** The commission failed to adhere to it's guidelines and operating procedures.

**Ground Two:** The Commission failed to adhere to it's guidelines and operating procedures 2.13.01.

**Ground Three:** The Commission failed to adhere to it's guidelines and operating procedure c and or F.

**Ground Four:** There are especially mitigating circumstances in my case which justify a different decision.

**Note:** You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

**STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL**

**Instructions:** Please present your grounds for appeal in the order in which they appear in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

**Ground One:** (Circle the applicable ground for appeal from Page 1:  a  b  c  d  e  f  g ).

Facts: Petitioner requested to inspect disclosable material in his institution file. Petitioner also requested to inspect disclosable material in the Commission's files. (SEE: Attached Notice of Parole Application (SEE continuation)

Reasons: Petitioner did not waive his right to any of the above disclosable pre-hearing material. The procedure the commission should have followed as outlined in 2.20, to establish a national paroling policy. (SEE continuation)

**Ground Two:** (Circle the applicable ground for appeal from Page 1:  a  b  c  d  e  f  g ).

Facts: Petitioner's Corrections oversight Specialist was never notified of the commission's hearing date. Ms/Figueroa was also Petitioner's representative.

Reasons: In accordance with 2.20 to establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making, Petitioner's hearing should have been postponed (see: continuation)

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

Page 3 of 4                    Parole Form I-22 (February 2013)

**Ground Three:** (Circle the applicable ground for appeal from Page 1: a b c d e f g ).

**Facts:** In 1996, Petitioner was awarded with a Superior Program Achievement.

**Reasons:** In accordance with 2.60, before a petitioner receives a superior program achievement award the commission stresses that a clear conduct record is expected, and 2.60.01, where the commission states that the granting of such an award does not threaten (see continuation)

**Ground Four:** (Circle the applicable ground for appeal from Page 1: a b c d e f g ).

**Facts:** On 3/20/18, Petitioner was diagnosed with having lumbar stenosis, and had to undergo major surgery.

**Reasons:** As a result of Petitioner's lumbar stenosis Petitioner has permanent disabilities which include, but not limited to: petitioner can no longer run, stand on his toes, or bend forward. Petitioner is currently in a wheel chair. At some point petitioner will need another operation. (see: Attached medical reports

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

Page 4 of 4                        Parole Form I-22 (February 2013)

**CONTINUATION OF:**
**STATEMENT OF FACTS AND REASONS**
<u>**IN SUPPORT OF EACH GROUND FOR APPEAL**</u>

**GROUND ONE FACTS CONTINUATION:** Representation and Disclosable Request.)

**REASONS:** Petitioner did not waive his right to any of the above disclosable prehearing material. The procedure the commission should have followed is outlined in 2.20, to establish a national paroling policy to promote a more consistent exercise of discretion, and enable fairer and more equitable decision making the hearing should have been postponed as stated at the bottom of the application.

**GROUND TWO REASONS CONTINUATION** : and his representative, Ms/ Figueroa notified.

**GROUND THREE REASONS CONTINUATION:** public safety (b) (1) (2) and 2.20 (h.) In the commission's N.O.A. dated 8/10/16, the determined because of petitioner's institutional infractions petitioner was unable to comply with institution rules and indicated a high probability that petitioner would not follow society's folkways and morals if released. This finding completely contradicts the reasons why petitioner was awarded the superior Program Achievement award, and the commission's mission statement. In addition to petitioner having almost 40 years in complying with institution rules. Petitioner also spent time in a halfway house on the street without incident. Accordingly, the commission moved away from that position in its most recent N.O.A. dated 7/31/18. Now, denying petitioner parole based on his institutional file for the same reasons he was awarded a Superior Program Achievement award for. Petitioner has served out the punitive aspect of his sentences and institutional infractions some of which was incurred while serving another sentence decades old, and because of petitioner's age was a mitigating factor. Petitioner has also served out the punitive aspects of his institutional conduct when the commission gave petitioner a 15 set off. Nonetheless, the commission continues to go back almost 40 years to continuously deny petitioner parole giving no credence what-so-ever to petitioner's many staff and custody representatives from every facility petitioner has been incarcerated at including recommendations for parole from active law enforcement officers. When all these factors are

considered, and if petitioner's hearing was to determine his current mindset and behavior, weighed against a 40 year old history when petitioner was a youthful offender, and the recidivism rate for prisoners age group has determined on a factual basis that his age group is the less likely to reoffend, then the benefit of doubt should tilt towards petitioner for the granting of parole. The mandatory parole provision "provides a more liberal criteria for release on parole for prisoners with long sentences after they have completed two-thirds of any sentence or 30 years whichever comes first." S. Rep. No. 94-648, at 27. At the beginning of petitioner's hearing, the examiner, Mr. Pacholaski, told petitioner that the purpose of the hearing was to determine petitioner's current mindset and behavior for parole suitability which was not reflected in the commission's N.O.A., which compounded the improprieties by the commission making arbitrary and result oriented decisions.

**GROUNFD FOUR REASONS CONTINUATION:** 10 pages.) As time goes on petitioner's condition will become more debilitating.

**GROUND FIVE:** The commission violated the expost facto clause of the U.S. Const.

**REASONS:** Petitioner was sentenced in 19977, for the current offense. Petitioner should have been subjected to the parole criteria for mandatory release in existence at that time, and not the criteria being used as examiner, Mark Tanner, informed petitioner at his 2016, hearing which is on tape.

## CONCLUSION

For all the above reasons the commission's decision should be modified granting petitioner parole, or at the very least, a new hearing to correct the identified violations.

U.S. Department of Justice
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

**Notice of Action on Appeal**

---

Name:  Thompson, Richard

Institution:   New York CCM

Register Number: 20080-101

Date:        October 25, 2018

---

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirm the previous decision.

**REASONS**:

You claim that you were denied prehearing disclosure, but you have not established that the outcome of the hearing would have been different had you been provided with whatever documents you claim you were not provided.  Similarly, you claim that your representative was not provided notice of the hearing, but the record indicates that you waived your right to have a representative at the hearing and did not ask that the hearing be postponed. You have not demonstrated that the outcome would have been any different had she been provided notice.  Further, the hearing examiner obtained a copy of Ms. Figueroa's statement by email, which became a part of the record the Commission reviewed.

You also claim that the Commission's decision to deny mandatory is belied by your award for superior program achievement in 1996, the recommendations of various institutional staff members and officials, and your physical disability.  The Board finds that the Commission properly applied the statutory criteria for mandatory parole for the reasons stated in the Notice of Action.

You also raise a claim under the *Ex Post Facto* Clause, but you have not set forth in specific terms the basis for your argument. The criteria for mandatory parole under 18 U.S.C. § 4206(d) was in effect in 1997.

All decisions by the National Appeals Board on appeal are final.


cc:     Designation & Sentence Computation Ctr
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX  75051

Exhibit 22

ORIGINAL

**Richard Thompson**
#568688/SBI#OOS0158535
New Jersey State Prison
P. O. Box 861
Trenton, N.J. 08625-0861



RECEIVED
DEC - 4 2017
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLOMBIA

RICHARD THOMPSON,

            Plaintiff,

      V.

ISSAC FULWOOD, JR., Chairman,
U.S.P.C.; HARLEY G. LAPPIN, Former
Director, B.O.P.; CHARLES E.
SAMUELS, JR., Director, B.O.P.; EARL
BRACEY, U.S.P.C., Case Operation
Assistant; STEPHEN T. NASKO, U.S.P.C.
Commissioner-Designee; PATRICIA K.
CUSHWA, U.S.P.C. Commissioner-
Designee; MARK TANNER, U.S.P.C.
Examiner; STEPHEN HUSK, U.S.P.C.
Examiner; JOHN DOE, U.S.P.C., Regional
Commissioner; J. PATRICIA WILSON
SMOOT, Chairperson, U.S.PC.; JOHN
DOE, U.S.P.C. Correspondent Specialist,

            Defendants.

Case: 1:17-cv-02603
Assigned To : Moss, Randolph D.
Assign. Date : 12/4/2017
Description: Pro Se Gen. Civil

## **INTRODUCTION**

COMES NOW, Richard Thompson, Plaintiff, pro-se, and beseeches this
Honorable Court to treat this instant cause liberally, and afford it the principles of a pro-
se litigant as established by the U.S. Supreme Court in <u>Haines v. Kerner</u>, 404 U.S. 519,
92, S.Ct. 594, 30 L.Ed. 2d. 652, and <u>Estelle v. Gamble</u>, 429 U.S. 106.

Exhibit 23

DEC - 4 2017

## COMPLAINT

Richard Thompson, Plaintiff, pro-se, Allege and complain against Defendants, Isaac Fulwood, Jr., Harley G. Lappin,, Charles E. Samuels, Jr., Earl Bracey, Stephen T. Nasko, Patricia K. Cushwa, Stephen Husk., Mark Tanner, Jane Doe, Patricia Wilson Smoot, John Doe as follow:

## JURISDICTION AND VENUE

1. This is a Bivens action brought to redress the deprivation under the Civil Right Act enacted by Congress to redress the deprivation, under Color of Federal Law, and Constitution of the United States of America. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 1343 (a) (3). Jurisdiction over plaintiff's claims for declaratory relief can be found at 28 U.S.C. § 2201 and 2202. Jurisdiction over plaintiff's claim for injunctive relief can be found at 28 U.S.C. § 2283 and 2284 and Rule 65 of the Federal Rules Civil Procedure.

2. The United States District Court for the District of Colombia is the appropriate venue pursuant to 28 U.S.C. § 1391 (b) (2) because it is where events giving rise to this action occurred.

## PREVIOUSLY DISMISSED ACTIONS

3. Plaintiff has not had an action or appeal dismissed on three or more prior occasions on the grounds that the action or appeal was frivolous, malicious, or failed to state a claim upon which relief may be granted.

## PARTIES

4. Plaintiff, RICHARD THOMPSON, is a Federal prisoner convicted and sentenced by a United States District Court, and is confined as a contract Federal prisoner

2

pursuant to 18 U.S.C. § 4002 and 5003. With the New Jersey Departments of Corrections at New Jersey State Prison At all times relevant to this complaint defendants were acting under the Color of Federal Law. Plaintiff is a citizen of the United State. At all times relevant to this Complaint defendants were acting under Color of Federal Law.

5. Defendant, ISSAC FULWOOD, JR. was the Chairman of the United States Parole Commission (Hereafter U.S.P.C.), during the violation complained of by plaintiff. Defendant Fulwood, carries out his official duties at U.S.P.C. 90 K Street, N.E. Washington, D.C., 20530. Defendant Fulwood was the chairman of the U.S.P.C. and was responsible for implementing rules. Policies, and operating procedures of the Commission in a consistent manner as well of enforcing the same. Defendant Fulwood, was also responsible for supervising the commission's parole examiners, and signing off on all parole decisions made by the commission. Defendant Fulwood, is being sued in his individual and official capacity.

6. Defendant, HARLEY G. LAPPIN, was the Bureau of Prison Director (Hereafter B.O.P.) during the violations complained of by plaintiff. Defendant Lappin, carries out his official duties at B.O.P. Central office, 320 First Street, N.W. Washington, D.C. 20534. Defendant Lappin was responsible for implementing rules, policies, and operating procedures of all the Federal prisons, and other facilities and offices under its jurisdiction in a consistent and cohesive manner. Defendant Lappin was also responsible for enforcing the same, and caring for the custody and treatment of all Federal prisoners under its jurisdiction. Defendant Lappin is being sued in his individual and official capacity.

3

7. Defendant, CHARLES E. SAMUELS, JR., was the B.O.P., Director, during the violations complained of by plaintiff. Defendant Samuels carries out his official duties at B.O.P. Central office, 320 First Street, N.W. Washington, D.C. 20534. Defendant Samuels was responsible for implementing rules, policies, and operating procedures of all the Federal prisons, and other facilities and offices under its jurisdiction in a consistent and cohesive manner. Defendant Samuels was also responsible for enforcing the same, and caring for the custody and treatment of all Federal prisoners under its jurisdiction. Defendant Samuels is being sued in his individual and official capacity.

8. Defendant, EARL BRACEY, was the U.S.P.C., case Operations Assistant, during the violations complained of by plaintiff. Defendant Bracey carries out his official duties at U.S.P.C., 90 K Street, N.W. Washington, D.C. 20530. Defendant Bracey as far as plaintiff know is responsible for preparing prisoners case file for their appearance before the U.S.P.C., under its jurisdiction. Defendant Bracey is being sued in his individual and official capacity.

9. Defendant, STEPHEN t. NASKO, was the U.S.P.C., case Analyst, during the violations complained of by plaintiff. Defendant Nasko carries out his official duties at U.S.P.C., 90 K Street, N.W. Washington, D.C. 20530. Defendant Nasko as far as plaintiff know is responsible for analyzing prisoner's case file who appears before the U.S.P.C., under its jurisdiction, and to make recommendations on whether or not a prisoner should be paroled. Defendant Nasko is being sued in his individual and official capacity.

10. Defendant, PATRICIA K. CUSHWA, was the U.S.P.C., Commissioner/Designee, during the violations complained of by plaintiff. Defendant Cushwa carries out his official duties at U.S.P.C., 90 K Street, N.W. Washington, D.C.

4

20530. Defendant Cushwa as far as plaintiff know is responsible for preparing prisoner's case file who appearance before the U.S.P.C., under its jurisdiction. Defendant Cushwa is also responsible for signing off and approving or disapproving examiner recommendations to deny or grant prisoners parole, making sure the examiner follow the U.S.P.C. guidelines and enforcing them. Defendant Cushwa is being sued in her individual and official capacity.

11. Defendant, MARK TANNER, was the U.S.P.C., Examiner, during the violations complained of by plaintiff. Defendant Tanner carries out his official duties at U.S.P.C., 90 K Street, N.W. Washington, D.C. 20530. Defendant Tanner is responsible for reviewing prisoner's case file conducting parole hearings for prisoners under its jurisdiction of the U.S.P. C., and to make recommendations to the U.S.P.C. Whether or not to deny or grant a prisoner parole in compliance with the U.S.P. C.'s guidelines. Defendant Tanner is being sued in his individual and official capacity.

12. Defendant, STEPHEN J. HUSK, was the U.S.P.C., Examiner, during the violations complained of by plaintiff. Defendant Husk carries out his official duties at U.S.P.C., 90 K Street, N.W. Washington, D.C. 20530. Defendant Husk is responsible for reviewing prisoner's case file, conducting parole hearings for prisoners under its jurisdiction of the U.S.P. C., and to make recommendations to the U.S.P.C. Whether or not to deny or grant a prisoner parole in compliance with the U.S.P. C.'S guidelines. Defendant Husk is being sued in his individual and official capacity.

13. Defendant, JOHN DOE, was the U.S.P.C., Regional Commissioner, during the violations complained of by plaintiff. Defendant Doe carries out his/her official duties at U.S.P.C., 90 K Street, N.W. Washington, D.C. 20530. Defendant Doe to the best of

plaintiff's knowledge is responsible for supervising the U.S.P. C.'S examiner to make sure they are in compliance with the U.S.P.C.'S guidelines, reviewing the examiners parole recommendations and conforming or rejecting them, and reviewing prisoners' case files prisoner's under its jurisdiction of the U.S.P. C. Defendant John Doe is being sued in his individual and official capacity.

14. Defendant, PATRICIA WILSON SMOOT, is the Chairperson of the U.S.P.C., during the violations complained of by plaintiff. Defendant smoot carries out her official duties at U.S.P.C., 90 K Street, N.W. Washington, D.C. 20530. Defendant Smoot is responsible for implementing rules, policies, and operating procedures of the Commission in a consistent and cohesive manner and enforcing the same. Defendant Smoot is also responsible for supervising the Commission's parole examiners, making sure their recommendations are in compliance with the U.S.P.C.'S guidelines and signing off on all parole decisions effecting prisoner's under its jurisdiction. Defendant Smoot is being sued in his individual and official capacity.

## FACTS

15. On or about 9/13/74, plaintiff was sentenced to an eight (8) year Youth Correction Act (Hereafter Y.C.A.) imposed by the U.S. District Court for the Eastern District of Virginia.

16. On or about 6/27/77, while serving his Y.C.A. sentence plaintiff was sentence to a consecutive life sentence in violation of 18 U.S.C. § 1111 imposed by the U.S. District Court for the Central District of California.

17. On or about 6/4/80, plaintiff was paroled from his Y.C.A. sentence to his life sentence.

18. On or about 1/13/82, plaintiff was sentenced to a five (5) year concurrent sentence in violation of 18 U.S.C. § 751(a) imposed by the U.S. District Court for the Southern District of Illinois.

19. On or about 7/17/83, plaintiff was sentence to a ten (10) years consecutive sentence in violation of .18 U.S.C. § 11, imposed by the U.S. District Court for the Southern District of Illinois.

20. On or about 3/29/92, plaintiff appeared before the U.S.P.C. for his initial parole hearing on his life sentence. At the hearing, the examiner recommended plaintiff receive a fifteen (15) year reconsideration hearing 2007.

21. Pursuant to 18 U.S.C. § 4208 (h) plaintiff is entitled to statutory Interim hearing (Hereafter S.I.H.) every two (2) years. Subsequently, from 1992 to 1994, plaintiff appeared before the U.S.P.C. for his S.I.H., where he received no change from the U.S.P.C., Notice of Action (Hereafter N.O.A.) continuing plaintiff to his fifteen (15) year reconsideration hearing.

22. In 1998, plaintiff appeared before the U.S.P.C. for his S.I.H., where he received a reduction of twelve (12) months for Superior Program Changing Achievement for maintaining a clear conduct record and positive attitude charging plaintiff's fifteen (15) year reconsideration hearing from 2007 to 2006. See: (Exhibits A1 to A3).

23. Pursuant to 18 U.S.C. § 4208 (h) plaintiff appeared before the U.S.P.C. from 1998 to 2004, with no change in plaintiff's N.O.A. and he was continued to his fourteen (14) year reconsideration hearing.

24. On or about 9/21/06, plaintiff appeared before the U.S.P.C., for his fourteen (14) year reconsideration hearing where plaintiff's entire case file including plaintiff's

institutional record was evaluated. The examiner, Mr. Paul Howard, recommended plaintiff be continued to incarceration and paroled at his two-thirds mandatory release date at 2/3/2017, with detailed and specific parole conditions which created a presumption of release. See: Exhibits (B1 to B5).

25. On or about 10/13/06, in its N.O.A. the U.S.P.C., confirmed the recommendation given at plaintiff fourteen (14) year reconsideration hearing by its examiner with detailed specific parole conditions. See: (Exhibits C1 to C2).

26. On or about 1/19/07, in its N.O.A. the National Appeal Board (hereafter N.A.B.) affirmed the U.S.P.C. decision to continue plaintiff to his mandatory release date. All decisions by the N.A.B. are final and binding. See: (Exhibit D).

27. Pursuant to 18 U.S.C. § 4208 (h) plaintiff appeared before the U.S.A.C. for his S.I.H. and from 2007 to 2011 there was no change in the U.S.P.C., N.O.A. dated 4/11/11, and amended 4/15/11, See: (Exhibits E1 to E7). In both N.O.A., the U.S.P.C., notes plaintiff condition for parole which again, continues plaintiff presumption of release. The U.S.P.C., N.O.A. were confirmation of plaintiff's S.I.H. herd on 3/11/11, by examiner Joseph M. Pachoiski. On exhibit E1, victim information: the U.S.P.C. admits there was no response by the B.O.P. regarding plaintiff offense. On exhibit E2, line 13, examiner Pacholski acknowledged plaintiff's two-third date 2/3/17.

28. On 5/7/13, plaintiff appeared before the U.S.P.C., for his S.I.H. conducted by defendant Tanner. See: Exhibits (F1 to F2). Defendant Tanner acknowledge plaintiff's two-third date of 2/3/17, and for the first time plaintiff became aware the U.S.P.C. had contacted the B.O.P. regarding plaintiff parole suitability.

29. On 5/ 28/13, the U.S.P.C., confirmed plaintiff's S.I.H. recommendation with parole conditions for his two-thirds date of 2/3/17. See: Exhibits (G1 to G2).

30. On 10/22/13, plaintiff filed a Writ of Habeas Corpus alleging; (A) plaintiff's Due Process Rights were violated when the U.S.P.C., violated the Sentencing Reform Act by failing to set plaintiff a release date, and (B) violation of plaintiff's Due Process Rights by attaching a Special Sex Offender Aftercare Program as part of plaintiff's condition for parole. Plaintiff has been complaining for years about false and erroneous charges in his file pertaining to a kidnapping and alleged rape. Although the U.S.P.C., acknowledge they are aware of the false information and does not use the information in their decision making process the information still crops up to plaintiff's detriment. In its N.O.A. dated 11/8/13, all sex offender related aftercare programing was removed as a condition for plaintiff parole.

31. On or about 12/30/13, plaintiff filed a Supplemental to his original Writ of habeas Corpus alleging, the U.S.P.C., violated plaintiff's Due Process Right by not making him aware of the B.O.P.'S opposition letter to plaintiff's parole or affording plaintiff an opportunity to respond to the B.O.P. letters.

32. On 1/20/16, Mr. Mcfarland, Residential Reentry Manager (Hereafter RRM) wrote to Defendant Bracey requesting that plaintiff's presumptive parole two-thirds date of 2/3/17, be made into an effective parole date. See: (Exhibit H).

33. On 2/12/16, plaintiff's release plan was approved by Senior U.S. Probation Officer, Mr. Raymond Hess. (See: Exhibit I).

34. On 5/23/16, plaintiff was released from New Jersey State Prison, and transferred to Volunteers of America halfway-house located in Baltimore, MD, in anticipation of his parole. See: (Exhibits J).

35. On 5/26/16, Defendant Nasko, prepared a case analysis report where he cherry picked plaintiff's case file to arrive at a specific oriented outcome where he recommended plaintiff be denied mandatory parole. See: (Exhibit K).

36. On 5/27/16, Defendant Cushwa agreed with defendant Nasko recommendation to deny plaintiff parole, and plaintiff was scheduled for a mandatory parole hearing See: (Exhibit L and M).

37. On 5/31/16, plaintiff was scheduled for a mandatory parole hearing on the next available docket. (See: Exhibit N).

38. On or about 6/7/16, plaintiff was taken into custody from the hallway-house and transported to the Federal Supermax jail in Baltimore, M.D. and subsequently to the Kent County Detention Center in Chestertown, M.D.

39. On 6/21/16, in a B.O.P. Docket Cover Sheet prepared by Defendant Bracey, for plaintiff's mandatory parole hearing wrote plaintiff had a victim notification in his file. See: (Exhibit O). Also, on 6/21/16, Defendant Bracey prepared a Case Operation Victim referral Summary for plaintiff mandatory parole hearing where he listed Laura Williams and Denise Rice as victims who had participated in past parole hearings which is blatantly untrue. The summary goes on to say the B.O.P. require victim notification, but then admits there are no victim registration forms contained in plaintiff file. See: Exhibits (P1 to P2). Yet, on another B.O.P. Docket cover sheet prepared by Defendant Bracey he checked of plaintiff did not have victim notification. See: (Exhibit Q).

40. On or about 7/22/16, plaintiff appeared before the U.S.P.C., for his mandatory parole hearing. The hearing was conducted by examiner Defendant Tanner. Defendant Tanner recommended plaintiff be denied mandatory parole. See: (Exhibit R).

41. On or about 7/27/16, defendant Husk, signed an order denying plaintiff mandatory parole. (See: Exhibit R).

42. On or about 7/28/16, John Doe, signed an order denying plaintiff mandatory parole. See: (Exhibit R).

43. On or about 8/10/16, Defendant John Doe, approved the order denying plaintiff parole, and on 8/10/16, the U.S.P.C. issued its N.O.A. See: (Exhibit S).

44 Defendant Smoot, gave her final approval of the action denying plaintiff mandatory parole.

45. On 10/27/16, the District Court denied plaintiff original Writ of habeas Corpus No. 3:13-cv. 06282 <u>Thompson v. Dillio</u>. The Court gave plaintiff 30 days to address the issue if he still wanted to address the issues contained in his supplement and if so, the Court would reopen the case.

46. On 11/7/16, plaintiff filed a Motion requesting the Court to reopen the case pertaining to the issues contained in plaintiff supplemental complaint.

47. On or about 11/28/16, plaintiff filed his first appeal of the U.S.P.C. denying him mandatory parole to the National Appeals Unit. See: (Exhibit T1 to T2).
The National Appeal Unit never responded to plaintiff appeal. See: (Exhibit, V Copy of Certified Return Receipt).

48. On 4/13/17, plaintiff wrote to John Doe, correspondent specialist, requesting his parole tapes, CD'S and any and all relevant information concerning his mandatory

parole hearing. See: Exhibit W1 to W5. Also See: (Exhibit X, certified Return Receipt Card), but they never responded.

49. On or about 6/8/17, plaintiff's Brother, Earl Thompson, went to the U.S.P.C. office building to inquire about the status of plaintiff appeal. Plaintiff's Brother was told "the appeal unit never received the appeal."

50. On 6/13/17, plaintiff mailed the appeals unit, for the second time a copy of his original appeal. See: (Exhibit X, Postage remit receipt, Signed by plaintiff's cell block officer) again, the appeals unit never responded to plaintiff's appeal.

51. On 6/15/17, plaintiff filed a 28 U.S.C. § 2241, against the U.S.P.C. alleging plaintiff's Due process Rights were violated when, (1) The U.S.P.C. failed to adhere to its own Statutory Regulation 2. 13. 01. (2) Failed to adhere to its own Statutory Regulation 2. 53. 01, (3) Failed to adhere to its own Statutory Regulation 2. 35 (a), (4) Failed to adhere to its own Statutory Regulation 2. 13. 11 (a) (b), (5) Failed to adhere to 18 U.S.C. § 4206 (h) (2). (6) Failed to adhere to 18 U.S.C. § 4215, and (7) Failed to adhere to 18 U.S.C. § 4206 (d). This was a new failing. However, the clerk's office made a mistake and filed this Petition with plaintiff's pending old case: 3: 13 cv. 06282 Thompson v. Dillio.

52. On 6/23/17, the U.S. District Court granted plaintiff's Motion to reopen his case and gave the respondent. (U.S.P.C.) 30 days to respond to plaintiff's Supplemental complaint and turn over the letter from Defendants Lappin and Samuels.

53. On 7/23/17, plaintiff mailed his appeal to his Brother, Earl Thompson, See: (Exhibit Z). Postage remit to give to the U.S.P.C., and on or about 8/3/17, plaintiff's

Brother faxed his appeal for the third time to a Ms. Graham at the U.S.P.C. and the N.A.B. still did not respond to plaintiff's appeal.

54. On 8/7/17, the Respondent's represented by Counsel David Bober, turned over the response letters from the Defendants Lappin and Samuels. See: Exhibits (AA1 to AA3) Letter dated: 3/3/11 and 4/9/13.

55. On 8/28/17, plaintiff filed his response to Respondent's answer to his Supplemental complaint.

56. On 10/19/17, plaintiff filed a Motion to compel requesting the District Court to Compel Respondent to turn over the U.S.P.C. letters dated 2/28/11, and 3/20/13, to the B.O.P.'S represented by Defendants Lappin and Samuels to plaintiff.

57. Plaintiff have exhausted the applicable administrative remedies pursuant to 42 U.S.C. § 1991 (e). See: (Exhibits U1 to U7, V1 to V26, and W, Copy of Certified Return Card).

58. Prior to filing this complaint about the practices, acts, and failure to act, which resulted in plaintiff's Due process Rights being violated when it is well established law that the Defendants could not engage in unauthorized actions which violated plaintiff's rights. Defendants knew or should have known that their actions as described in the complaint were in direct violation of well-established Court decisions designed to protect prisoners' rights under the Constitution of the United States.

59. Defendants' actions as set forth in the complaint and the paragraphs above demonstrate defendants had no legitimate penological interest or/and security concerns justifying the arbitrary, malicious, capricious, and intentional infringement on plaintiff's rights with reckless disregard for the consequences of their actions and inactions.

60. Plaintiff reassert 27, 28, 32, 35, 36 ,39 ,41 ,44, 47 to 50, 53, and 54, and states Defendants practices, acts and failure to act, are in violation of clearly established law known to Defendants, divesting them of any shield of qualified immunity.

## CAUSE OF ACTION I

## VIOLATION OF DUE PROCESSRIGHTS BY THE DEFENDANTS

## UNATHORIZED ACTIONS

61. Plaintiff repeats and alleges paragraphs 27, 28, 32, 35, 36, 40, to 41, 44, to 47, 50, 53 and 54, if same has been set forth herein.

By their practices, acts, and failure to act, defendant's arbitrarily, maliciously, capriciously, and intentionally engaged in unauthorized actions which resulted in Plaintiff's Due process Rights being violated when they conspired in unauthorized actions by continuing plaintiff pass his mandatory two-thirds release date of 2/3/17, which had already been affirmed by the National Appeals Board which have the final authorized power to do and their decisions are un-appealable administratively and bonding. The reasons given by Defendants for denying plaintiff mandatory parole were illogical when the Defendants had already awarded plaintiff Superior Program Achievement knew of plaintiff's institutional history back 2006, when plaintiff was continued to his mandatory release date, and there was no new disciplinary actions between 2006, and 2016, to warrant the Defendants unauthorized actions.

## PRAYER FOR RELIEF

Plaintiff has no adequate remedy at law to redress the wrongs set forth in the complaint. Plaintiff have suffered and will continue to suffer irreparable injury as a result

of the unlawful practices, acts, and failure to act by the Defendants as alleged herein unless he is granted the injunctive relief he seeks.

WHEREFORE: Plaintiff requests that this Court grant the following relief:

A.      Adjudge and declare the practices, acts, and failure to act by the Defendants violates Bivens, and the Constitution of the United States and for these violations plaintiff seeks compensatory in the amount of $ 31, 200, from each Defendant.

B.      Adjudge and declare Defendants actions as set forth in the Complaint and paragraphs above demonstrates they maliciously, arbitrarily, capriciously, and intentionally deprived plaintiff of his Due Process Rights by their unauthorized actions with reckless disregard for the consequences of their actions and in actions. Consequently, plaintiff is entitled to an award for punitive damages in the amount of $100.000, 000 dollars from each defendant which hopefully is sufficient amount to deter Defendants from continuing such practices.

C.      A permanent injunction ordering defendants their agents, official employees, and all persons acting in concert with them, Under Color of Federal Law to take all necessary actions to: (1) Correct the violations herein the complaint by affording reinstating plaintiff release date immediately, returning plaintiff back to the halfway-house, and any other amenities this Court deem just and fair

D.      Appoint of Counsel;

E.      Order a Jury Trial.

F.      Grant such other relief as the Court deem just and equitable.

Respectfully submitted,

Dated: November 23, 2017

Richard Thompson, (Pro-Se)
#568688/SBI#OOS158535
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLOMBIA

| | |
|---|---|
| RICHARD THOMPSON, | *CIVIL ACTION* |
| Plaintiff, | NO: |
| V. | **CERTIFICATION OF SERVICE** |
| ISSAC FULWOOD, JR., Chairman, et. al, Defendants. | |

I, Richard Thompson, Plaintiff, pro se, do hereby declare and certify that I have placed for mailing an original and (1) copy to the Clerk of the Court, and eleven (11) copies for each defendant of plaintiff's complaint, Exhibits A1 to A3, B1 to B5, C1 to C2, D, E1 to E7, F1 to F2, G1 to G2, H, I, J, K, L, M, N, O, P1 to P2, Q, R, S, T1 to T7, U1 to U26, V, W1 to W5, ▪ ▪ X, Y, Z, AA1 to AA3, and Certificate of Service to be mailed to: District of Colombia, United States Courthouse, 3$^{rd}$ and Constitution Avenue, N.W. Washington, D.C. 2001, on this 15$^{rd}$ day of November, 2017, by the prison mailing system by placing the above said document in the hands of the officer in charge of the mail on unit 2-Left for which a postage remit was submitted for first class mailing and signed by the unit officer whose name appear on the postage remit.

Respectfully submitted,

*Richard Thompson*

**Richard Thompson, (Pro-Se)**

**Dated: November 15, 2017**

# PLAINTIFF'S EXHIBITS

## SIH/REVIEW HEARING SUMMARY

**Hearing Type:** .. SIH

**Name:** ......... THOMPSON, Richard

**Reg No:** ........ 20080-101

**Hearing Date:** ... 4-21-1998

**Institution:** ..... Atlanta USP (check location for

Notice of Action)

**Examiner:** ...... Lee H. Chait

**2/3 or MR Date:** ..... 2-3-2017

**Projected MR Date:** ..

**Full Term Date:** ..... Life

**Months in Custody:** .. 287 since

6-5-74

**As Of:** ... 5-5-1998

**Recommended Release** 15-year reconsideration hearing February, 2005. (This represents an advancement of 2 years from the old reconsideration date of February 2007)

---

### I.    Previous Commission Action:

See the prereview dated 3-18-1998.

### II.    Codefendants:

### III.    Institutional Adjustment And Release Plans:

See the prereview dated 3-18-1998. Subject is in the special housing unit since his arrival at the USP Atlanta due to separation issues. He had worked as an orderly at Marion for two years prior to his transfer.

Subject's release plans are indefinite but he notes that his father passed away since his last hearing and he is concerned that his support system is eroding away. He stated that he has completed a number of college courses and earned his GED while in custody. This was reflected in the progress report.

### IV.    Fines, Restitution, Court Assessment:

None.

### V.    Representative:

Subject was represented at today's hearing by Case Manager Wayne Fearington who stated that the subject was transferred as a lesser security transfer from Marion over a year ago. He has not received any incident reports and was placed in the special housing unit as a result of separation concerns. It appears that the subject is likely to be transferred to Terre Haute,

THOMPSON.200

Page 1 of 3

EXHIBIT
12

Indiana in the near future. Designation was approved as of this past Friday.

## VI.  Risk:

The subject was found to be a serious risk by virtue of the original decision for the 15 year reconsideration hearing. Based on his repetitive new criminal conduct in the institution resulting in a guideline range of several hundred months this still ....(inaudible) the minimum guidelines for accountability.

## VII.  Evaluation:

Retroactivity does not apply.

The subject has maintained a clear conduct record and is eligible for superior program consideration of up to 45 months.

The subject's programming has been limited due to his special housing unit status.

At today's hearing, the subject appeared to have a positive attitude and indicated that he would continue to do the best he can regardless of what the Commission's decision was.

The subject stated that at the least hearing he was told that he should maintain clear conduct; be transferred from Marion; attempt to be placed in general population; and he states that he has done this.

While the subject has not excelled in the institution, he has maintained a clear conduct record, which for him is a significant accomplishment.

This examiner recommends that the 15-year reconsideration hearing in February 2007 be advanced to February 2005. The subject's Two-Thirds date occurs in 2017 and at the time of the 15 year reconsideration hearing he can either be given a parole date or continued to expiration.

## VIII.  Recommendation:

Reopen and advance 15-year reconsideration hearing in February 2007 to a 15-year reconsideration hearing in February 2005.

## IX.  Reasons:

The above represents a reduction of 24 months for Superior Program Achievement in that you have maintained a clear conduct record; and maintained a positive attitude despite your limited programming due to your placement in special housing unit upon transfer from the USP Marion to the USP Atlanta.

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

EX. A3

Name: THOMPSON, Richard L.

Register Number: 20080-101          Institution: Atlanta USP

In the case of the above-named, the following parole action was ordered:

Amend to Notice of Action dated May 10, 1996 as follows:

Your case has been declassified as Original Jurisdiction status pursuant to 28 C.F.R. 2.17-05.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Reopen and advance 15 Year Reconsideration Hearing date of February 2007 and continue to a Reconsideration Hearing in February 2006.

The above decision is appealable tno the National Appeals Board under 28 C.F.R. 2.26.

You may obtain appeal forms from your caseworker and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and to your probation officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others, if you so wish.

<u>REASONS:</u>

Retroactivity does not apply. Neither your recalculated severity rating (old Category Seven; new Category Seven) nor your recalculated salient factor risk category (old Category Poor, old score 1; new Category Poor, new score 1) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of Offense Severity or Salient Factor Scoring.

The above represents a reduction of 12 months for Superior Program Achievement in that you have maintained a clear conduct record and maintained a positive attitude despite your limited programming due to your placement in special housing unit upon transfer from the USP Marion to the USP Atlanta.

As required by law, you have also been scheduled for a statutory interim hearing during April 2000.

fc:      U.S. Probation Office
         Central District of California
         312 North Spring Street
         600 U. S. Courthouse
         Los Angeles, CA 90012-4708

Date: May 15, 1998

Exhibit 7

Page 1 of 1

THOMPSON.200BOP-ATL

EXHIBIT
B-1

## HEARING SUMMARY

**Name:** Thompson, Richard                                      **Reg No:** 20080-101

### Hearing Parameters

    Hearing Format ............................ : In Person
    Hearing Type................................ : **15-Year Reconsideration**
    Hearing Date ............................... : September 20, 2006
    Examiner ...................................... : Paul R. A. Howard
    Institution ,................................... : Marquette Branch Prison, 1960 US Highway 41 South
Marquette, MI 49855

### Sentence Parameters

    Sentence Type ............................. : Federal
    MR/Statutory Release ................. : 2/3/2017
    Full Term Date ............................ : Life
    Months in Custody ...................... : 387 months as of 9/5/06
    Fines/Restitution/Assessment ..... : 0
    Detainer ....................................... : None

**Additional text regarding the above parameters:** This matter was originally scheduled for a Statutory Interim Hearing on 6/9/2005. The subject requested a continuance because his representative was unable to attend the hearing and believed there was significant developments/changes that might result in an advance of his 15-Year Reconsideration Hearing date of February of 2006. Because the subject is being held at a State Facility, there were issues in rescheduling the SIH prior to his 15-Year Reconsideration Hearing and a SIH was not conducted.

### Prior Action & Institutional Factors

**Prior Action:** A Prehearing Assessment was not prepared for the purpose of conducting a 15-year reconsideration hearing and a SIH pre-hearing assessment dated March 3, 2005 was used to conduct today's hearing.

The subject was originally sentenced to an 8-year YCA term for Rape in 1974. While serving this term, he was convicted of Murder and received a life term on 6/27/77. He was mandatory released from the YCA term on 6/4/80, and commenced serving the life sentence. He attempted to escape from custody in 1982 and received a 5-year concurrent term on 5/18/83. On 7/17/83, he and another inmate stabbed a correctional officer 17 times. He was convicted of Assault on a Federal Correctional Officer and received a 10-year consecutive term on 8/2/85.

---

**Codefendants:** Murder (Original Offense):

**Exhibit** _10_

EXHIBIT
B-2

George L. Awkard- File archived on 10/10/01.

John Wright Williams- No current information.

Clarence Hinnant- Life sentence on 6/22/77.

Paul Milton Laney- Life sentence on 6/27/77.

Assault on a Federal Correctional Officer:

Andrew Ingram - Acquitted.

**Representative & Representative's Statement:** James Gerametta, Federal Public Defender's Office, 645 Griswald, Suite 2255, Detroit, MI 48226, phone (313) 961-4150. Mr. Gerametta stated that he believes the subject's comments have captured the major issues, surrounding his life. The subject is 50 years old and is a person who has seen a lot of pain and anger in his life. He noted that the subject incurred his last disciplinary infraction 18 years ago, which shows that he made a decision 18 years ago to change his behavior. The subject has now served 32 years of confinement and his codefendant was paroled in 1992. He understands that each individual case is different but the US Parole Commission should look at his rehabilitation in his current setting. The subject will be living with his mother, who is in failing health. The subject has a strong support system that will ease his transition back into society.

Mr. Gerametta referenced the initial hearing summary and statutory interim hearings where Bureau of Prison staff stated they noticed a change in the subject's behavior after his initial poor adjustment.

**Prisoner's Statement:**

The subject stated he was 17 years old, immature, angry, and irresponsible when he commenced serving the initial 8-year term. He was placed in an adult facility instead of a youth facility. With the negative traits he had already developed and being housed in an adult facility increased his negative behavior and he acted out.

He takes responsibility for the murder but would liken the Commission to know that one of the eyewitnesses that was granted immunity was actually involved in the murder. The other inmates who testified against him overheard his comments about the murder used those comments for parole purposes. However, he does admit that he attempted to provide an alibi for one of the participants in the murder. The life sentence benefited him because of his mindset at the time. Had he been released from custody he probably would have been killed or committed other really serious offenses.

His behavior worsened after he was transferred to USP Marion, which was the Headquarters for the Aryan Brotherhood at the Mexican Mafia. There was a lot of strife and the black prisoners were under attack. He and other inmates decided to take action to bring light to their situation and decided to assault a staff member. Although the offense appears to be serious, they were non life threatening wounds, for which he received a 10 year sentence. Since the attack he spoke with the officer involved about what happened and that was the first time he finally felt remorse for his behaviors.

Thompson, Richard, Reg. No. 20080-101                    Page 2 of 5

Case 3:18-cv-04569-FLW Document 10-1 Filed 03/15/19 Page 102 of 213 PageID: 248
Case 4:17-cv-02603-RDM Document 1 Filed 12/06/17 Page 7 of 82

*EXHIBIT B-3*

He received his GED and is 28 credits short of receiving an Associates Degree in Political Science. His educational pursuit was shortened after the government ended the PEL Grants. He was transferred to a State Facility in 1989, after his release from Segregation and spent 9 years in a State of Minnesota Facility. During this period, he received certificates for tutoring inmates in math and algebra, vocational training and supervising inmates in job assignment.

He returned to the Bureau of Prisons in 1981 and spent the next 18 years at USP Marion. It was the USP Marion staff that noticed a change in his behavior, decided to work with him and be supportive at parole hearings. He has made every attempt to comply with Commission recommendations and would like to be paroled at this time because any further period of confinement will not benefit him. He is 50 years old and his mother is 86 years of age. He has been in custody for over 30 years and has been working on making the transition from incarceration to the community. He hopes the Commission will take into account his current age, time served, and level of maturity.

He is certain he will not re-offend in the community because of his changed character and wants to attain the traditional things in life such as a wife and a family. He has written two unpublished manuscripts about Societal Issues and Solutions, and the American Educational System.

Disciplinary Infractions

According to prior notice of actions, and review of a Presentence, between 11/17/80 and 1/6/85, the subject committed 1 DHO infraction for escape, 4 DHO infractions for new criminal conduct ( 2 for Assault on a Staff Member and 2 for Possession of a Prohibited Weapon –knife), 2 DHO Infractions for Attempted Murder and 16 non drug infractions.

The subject admitted to all of the infractions without comment.

The subject committed three additional infractions prior to 11/80; for Assault, Possession of a Weapon and Assault. A NOA dated 7/31/92 stated that all incident reports prior to June 1980 would not be applicable to his guideline range.
Base offense = 180+
Total Administrative Infractions = 0-32
New Criminal Conduct = 288
Attempted Escape = 8-16
Total guidelines = 476+ Months

The subject has not incurred any disciplinary infractions since February of 1985.

Program Achievement: The subject received his GED in 1989 and needs 28 credits towards an Associates Degree in Political Science and Fundamental Economics. The subject received a certificate for Tutoring from the Laubach Tutoring School in Minnesota in 1979. The subject completed Anger Management in 1989.

The subject states that he received certification as a Presser, Tailor, Soldering and Soldering in 1988.

The subject is not currently involved in any ongoing Educational/Vocational Programs.

*EXHIBIT B-4*

The subject is currently unemployed because his job as a Tailor was transferred to another Unit within the institution. The subject claims he was in this position for approximately 5 years and is seeking alternative employment.

**Release Plans:** When released, the subject will reside with his mother ███████████ at ███████████ ███████████████████████████████████████████████████

## Guideline Parameters, Evaluation & Recommendation

**Severity Justification:**   Category Eight because it involved Murder.

**Salient Factor Score:**   1

2.20 Guideline Range:.......................................180+
Disciplinary Guideline Range: ...........................296
Total Guideline Range: ....................................476+

**Evaluation:** The subject is serving an aggregate life sentence for Murder, Escape and Attempted Murder. The subject was serving an 8-year term for Rape when he committed the current offense. The most serious offense occurred in 1976 when he and another inmate stabbed an inmate to death at FCI Lompoc. He received a life sentence on 6/27/77. He incurred a DHO level infraction for Assault on a Person with a Knife (Attempted Murder) on 11/17/80, committed an Attempted to Escape from USP Marion in 1982 and received a 5-year concurrent term on 5/18/83, Stabbed a Staff Member 17 times in 1983 and received a 10-year consecutive term on 8/2/85. The subject was not criminally prosecuted for the 11/17/80 offense.

The subject had an Initial Hearing in 1992 and was continued to a 15-Year Reconsideration in February of 2006. Subsequent Statutory Interim Hearings resulted in no change in the previous decision except for adjustments to his guideline range. His current guidelines are 476+ months and he has served 387 months as of 9/5/2006, which is 89 months below the bottom of the guidelines.

The subject spoke at length about his level of maturity when he was initially incarcerated and his growth over the years. His initial behaviors were due to his age and being placed in an adult environment. He claims that attack on the staff member was due to a hostile racial environment. He did not give any justifications for the killing of the other inmate or the attempted murder.

The subject claims that he has made great strides in his level of maturity. He has not incurred any disciplinary infractions since 1985, receives outstanding work evaluations, completed a number of educational/vocational programs, and tutored other inmates in Math and English.

The subject's representative recommended that the Commission look at the totality of the subject's institutional adjustment in making a recommendation.

In summary, the subject has been in custody for 387 months which places him 89 months below the bottom of the guidelines. Although he has not incurred any disciplinary infractions since 1985, he is still viewed as a more serious risk based on his original criminal offense for Rape, current offense for Murder, Attempted Murder (2 counts), Assault on a Staff Member (2 counts), Escape, and 32 administrative infractions.

*EXHIBIT B-5*

Based on time served, guideline range and being a more serious risk, parole is not recommended. A CTE is recommended to ensure the subject continues to program and takes into consideration the gravity of his behaviors and issue of accountability. The subject will reach the bottom of the guidelines of 476months on 2/5/2014, and will MR on 2/3/2017 after the service of 507 months.

A Sex Offender Special Condition is recommended based on his YCA conviction for Rape. The subject was advised that although the examiner packet did not include specifics about all of the disciplinary infractions, a review of his USPO file will be conducted and if there is any indication of disciplinary infractions for intoxicants or drugs, a Drug Aftercare/Alcohol Special Condition will be recommended.

**Recommendation:** Continue to Expiration

**Conditions:** Sex Offender Treatment.

**Statutory Interim Hearing:** September, 2008.

**Guideline Use:** A decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines. While serving an 8-year term for rape, you murdered an inmate, committed an attempted murder, attempted to escape from custody, and assaulted a staff member by stabbing him 17 times. In addition, you incurred other disciplinary infractions which include 3 incidents of new criminal conduct involving Assaults and Possession of Prohibited Weapon, and 32 administrative infractions. Although you have incurred any disciplinary infractions since 1985, your criminal history and poor institutional adjustment warrants your continue to incarceration to your mandatory release date.

**Additional Text:** None.

**I certify that I have reviewed this hearing summary.**

*Paul R.A. Howard.*

Paul R. Howard, Hearing Examiner

PRH/PAH
September 27, 2006

**Executive Reviewer's Comments:**

EXHIBIT C-1

U.S. Department of Justice          Notice of Action
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

Name: THOMPSON, Richard          Institution : Marquette Branch Prison
                                  Detroit CCM
Register Number: 20080-101        Date        : October 13, 2006

As a result of the hearing conducted on September 20 2006, the following action was ordered:

Continue to expiration.

You shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your Probation Officer.

In addition, you shall not have any contact or communication with the victim of your offense.

**REASONS:**

Your offense behavior has been rated as Category Eight severity because it involved Murder. Your salient factor score is 1. See the attached sheet for an explanation of your individual Salient Factor Score items. The table at the bottom presents the points for Salient Factor Score item C. You have been in federal confinement as a result of your behavior for a total of 387 months as of September 5, 2006. Guidelines established by the Commission for the above offense behavior indicate a range of 180+ months to be served before release for cases with good institutional adjustment and program achievement.

You have committed 16 non-drug related infraction(s). Guidelines established by the Commission indicate a range of up to 2 months be added to your guideline range for each non-drug related infraction.

You escaped or attempted to escape from secure custody 1 time(s). Guidelines established by the Commission indicate a range of 8-16 months to be added to your guideline range for each occurrence.

In addition, you committed new criminal conduct while in a prison facility of Category Three severity because it involved Assault on Correctional Officer. Guidelines established by the Commission indicate a range of 12-16 months to be added to your guideline range.

In addition, you committed new criminal conduct while in a prison facility of Category Eight severity because it involved Attempted Murder. Guidelines established by the Commission indicate a range of 120+ months to be added to your guideline range.

Exhibit ___11___

*EXHIBIT C-2*

In addition, you committed new criminal conduct while in a prison facility of Category Eight severity because it involved Attempted Murder. Guidelines established by the Commission indicate a range of 120+ months to be added to your guideline range.

In addition, you committed new criminal conduct while in a prison facility of Category Three severity because it involved Possession of a Weapon (Knife). Guidelines established by the Commission indicate a range of 12-16 months to be added to your guideline range.

In addition, you committed new criminal conduct while in a prison facility of Category Three severity because it involved Possession of a Weapon (Knife). Guidelines established by the Commission indicate a range of 12-16 months to be added to your guideline range.

In addition, you committed new criminal conduct while in a prison facility of Category Three severity because it involved Assault on a Correctional Officer. Guidelines established by the Commission indicate a range of 12-16 months to be added to your guideline range.

Your aggregate guideline range is 176+ months to be served.

After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating case factors. You are a more serious risk than indicated by the guidelines. While serving an 8-year term for rape, you murdered an inmate, committed an attempted murder, attempted to escape from custody, and assaulted a staff member by stabbing him 17 times. In addition, you incurred other disciplinary infractions which include 3 incidents of new criminal conduct involving Assaults and Possession of Prohibited Weapons and 32 administrative infractions. Although you have incurred any disciplinary infractions since 1987, your criminal history and poor institutional adjustment warrants your continue to incarceration to your mandatory release date.

In addition, you have also been scheduled for a statutory interim hearing during September 2008.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     U.S. Probation Office
        Eastern District of Michigan
        901 U.S. Courthouse
        231 West Lafayette Street
        Detroit, MI 48226

EXHIBIT D

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

Notice of Action on Appeal

| | | |
|---|---|---|
| Name: Thompson, Richard | | Institution: Detroit CCM |
| Register Number: 20080-101 | Date: | January 19, 2007 |

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

## REASONS:

You have claimed on appeal that the aggregate guideline range was incorrectly calculated, but you have not identified any specific error in the calculation. The Notice of Action dated 10/13/06 explains the calculation of your aggregate guideline range and the Notice of Action dated 4/28/03 reviewed the calculation of your SFS. Your aggregate guideline range has not changed since your last interim hearing.

You have also claimed on appeal that the decision to continue to expiration is not supported by the facts. The National Appeals Board finds no merit in your claim. The Board recognizes that you have established a positive institutional record in the past 20 years, but the Board finds that the Commission's decision is reasonable based on the gravity of your multiple offenses in and out of prison.

You have claimed on appeal that the examiner referred to a forcible kidnapping during the hearing. The Commission's file has several copies of the transcript you mentioned. The file indicates that the offense was an Assault with intent to Rape. The decision does not refer to any kidnapping.

You claim that the examiner was not sufficiently prepared to conduct a fifteen-year reconsideration hearing. The Board finds no merit in your claim. As stated in the reasons for the decision, the Commission's decision considered your entire record, including your institutional progress, the seriousness of your offenses, and your family circumstances.

All decisions by the National Appeals Board on appeal are final.

Cc:    U.S. Probation Office
        Eastern District of Michigan
        901 U.S. Courthouse
        231 West Lafayette Street
        Detroit, MI 48226

Exhibit  12

## HEARING SUMMARY

**Name: Thompson, Richard**

Reg No: 20080-101

**Hearing Parameters**

Hearing Format............................: In Person
Hearing Type ...............................: **Statutory Interim**
Hearing Date ...............................: March 11, 2011
Examiner......................................: Joseph M. Pacholski
Institution.....................................: Trenton, New Jersey State Prison, 129 Taft Street,
Trenton, NJ

**Sentence Parameters**

Sentence Type..............................: **Federal**
MR/Statutory Release ...................: 2/3 Date: 3/3/2017
Full Term Date..............................: Life
Months in Custody........................: 369 as of 3/4/2011
Fines/Restitution/Assessment ......: None noted
Detainer.......................................: None noted

**Additional text regarding the above parameters:** None

**Prior Action & Institutional Factors**

**Prior Action:** See the Pre-review completed by Lynne Jenkins dated 2/16/2011.

**Codefendants:** Please see the Pre-review dated February 16, 2011.

**Victim Information:** There are not registered victims in this case for notification however, he was convicted of assaulting a Federal Correctional Officer in 1985. Information within the file would suggest that there has been no response by the Bureau of Prisons regarding that offense.

**Representative & Representative's Statement:** The subject stated that he wanted a witness for today's hearing and that the staff representative was a Chaplin Rasul Suliki. He was denied by the prison officials here for having that staff representative at today's hearing. However, this examiner was willing to go forward with today's hearing if the subject was willing to identify his progress over the last 2 years.

**Prisoner's Statement:** Our subject did not waive his right for representation however did provide information on his progress the hearing went forward as such. Our subject has completed the 20 hour Paralegal Course which is dated 3/25/2010. The subject still works in the hospital as an Orderly helping other individuals who are handicapped and is receiving excellent work evaluations.

Thompson, Richard, Reg. No. 20080-101          Page 1 **Exhibit** _14_

The subject has not received any other incident reports and has programmed as well as he could for today's hearing. There are no other programs available for his case.

**Discipline:** None.

**Program Achievement:** The subject completed a 20 hour Paralegal Program. The subject also has worked on Koran readings and has about 16 months of study in that course. The subject will complete the course study portion of it in 10 months.

The subject is working in the hospital and is receiving outstanding work evaluations.

**Release Plans:** The subject plans to release to his mother ███████████ at ██████████
█████████

**Guideline Parameters, Evaluation & Recommendation**

**Evaluation:** This examiner would note that the subject has been in custody for 369 months as of 3/4/2011. The subject's severity rate of an 8 and SFS of a 1 remains unchanged. The subject has a 2/3 date of 2/3/2017.

This examiner does believe that if the subject is able to program and that program is dealing with a release type employment that the subject may be granted a Superior Program Achievement Award. The examiner at the time of that hearing will have to find out if is warranted. This examiner would further state that the subject did go forward with the hearing even though his representative was not allowed for today's hearing. The subject's mother was also supposed to attend and did not.

This examiner would note that the subject's has a 10 year consecutive sentence that was aggregated with the life term. It would appear that the initial hearing that was conducted back in the 90s would suggest that both sentences were reviewed and determined for parole eligibility. This issue will have to be reviewed by a second reviewer to see if that's a fact what has been identified. This examiner believes that the subject is serving both sentences.

This examiner also was given a question regarding the subject's ability for future parole hearing dates because of the Parole Commission not being extended at today's date. This examiner indicated that the subject would be able write the Parole Commission in early May of 2011 and determine the issues regarding our extension and who would be handling our subject's case.

Our subject submitted the New Jersey Department of Corrections Inmate Remedy and System Form indicating his denial of a staff representative at today's hearing.

This examiner conducted the hearing even though a representative was not present because the subject did want the Commission to review his progress since the last hearing of 2/2/6/2009.

Our subject should be given a Statutory Interim Hearing in 2 years to determine his progress. The subject may be subjected to additional programming which could change the Parole Commission's decision if a Superior Program Achievement Award is awarded.

Thompson, Richard, Reg. No. 20080-101            **Page 2 of 3**

This examiner notes that the subject is eligible for Original Jurisdiction consideration however, the subject was classified as an Original Jurisdiction Case at his Initial Hearing of 2/26/1992. However after the Commission after review declassified the case as Original Jurisdiction on 5/10/1996. This examiner does not believe that other than the sentence structure and the offense of Assault on a Correction Officer anything has changed to warrant the Original Jurisdiction declassification with the information supplied in the file.

**Recommendation:** No Change in previous decision. Continue to Expiration.

**Conditions:** Sex Offender Aftercare; Highest Level of Supervision; Annual Polygraph Examination; GPS Monitoring; No Direct or Indirect Contact with the Victim unless Approved by the USPO or the US Parole Commission.

**Statutory Interim Hearing:** March of 2013.

**Guideline Use:** A departure from the guidelines at this consideration is not warranted.

**Additional Text:** None.

[Signature]


JMP/PAH
March 17, 2011


**Executive Reviewer's Comments:**

EX. E 4

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

Notice of Action

| Name: THOMPSON, Richard | Institution: New York CCM |
|---|---|
| Register Number: 20080-101 | Date: April 11, 2011 |

As a result of the hearing conducted on March 11, 2011, the following action was ordered:

No change in continuance to expiration.

The Parole Commission has decided to continue you to the expiration of your sentence. If the two-thirds date of your sentence (30 years in the case of a sentence of 45 years or more) precedes the mandatory release date calculated by the Bureau of Prisons, the Commission will conduct a record review of your case approximately 9 months prior to the two-thirds date. If a parole is not ordered as a result of the record review, the Commission will conduct a hearing for you. The purpose of the review or hearing is to determine whether there is a reasonable probability that you will commit any Federal, State, or local crime, or whether you have frequently or seriously violated the rules of the institution. See 28 C.F.R. § 2.53(a). If parole is denied, you will be confined until the expiration of your sentence less good time.

The Bureau of Prisons is requested to forward a copy of the prisoner's progress report approximately 9 months prior to the scheduled two-thirds date.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall not have any contact or communication with the victim of your offense, without the prior written approval of your Probation Officer and the Parole Commission. This prohibition includes any written or electronic correspondence (for example, a letter or e-mail), telephone call (including a voice mail message), or communication through another person.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your U.S. Probation Officer.

REASONS:

Retroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category Eight) nor your recalculated salient factor risk category (old Category Poor, old score 1; new Category Poor, new score 1) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole

Ex. E 5

Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

You have also been scheduled for a statutory interim hearing during March 2013.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     U.S. Probation Office
        Eastern District of Missouri
        Thomas F. Eagleton U.S. Courthouse
        111 South 10th Street, Suite 2.325
        St. Louis, MO 63102-1116

        Designation & Sentence Computation Ctr
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX 75051

EX. E6

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

Notice of Action

| | |
|---|---|
| Name: THOMPSON, Richard | Institution: New York CCM |
| Register Number: 20080-101 | |
| DCDC No: | Date: April 15, 2011 |

### Amend Notice of Action Dated April 11, 2011 to Read:

As a result of the hearing conducted on **March 7, 2011**, the following action was ordered:

No change in continuance to expiration.

The Parole Commission has decided to continue you to the expiration of your sentence. If the two-thirds date of your sentence (30 years in the case of a sentence of 45 years or more) precedes the mandatory release date calculated by the Bureau of Prisons, the Commission will conduct a record review of your case approximately 9 months prior to the two-thirds date. If a parole is not ordered as a result of the record review, the Commission will conduct a hearing for you. The purpose of the review or hearing is to determine whether there is a reasonable probability that you will commit any Federal, State, or local crime, or whether you have frequently or seriously violated the rules of the institution. See 28 C.F.R. § 2.53(a). If parole is denied, you will be continued until the expiration of your sentence less good time.

The Bureau of Prisons is requested to forward a copy of the prisoner's progress report approximately 9 months prior to the scheduled two-thirds date.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall not have any contact or communication with the victim of your offense, without the prior written approval of your Probation Officer and the Parole Commission. This prohibition includes any written or electronic correspondence (for example, a letter or e-mail), telephone call (including a voice mail message), or communication through another person.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your U.S. Probation Officer.

### REASONS:

Retroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Poor**, old score 1; new Category **Poor**, new score 1) is more favorable. This statement means that a finding has been made by the Parole

---

THOMPSON 20080-101                                                    -1-                                              Clerk: GNK
Queued: 04-15-2011 14:59:52 BOP-New York CCM | BOP-Designation & Sentence Computation Ctr | USPO-Eastern
District of Missouri, 1 - Main (St. Louis) |

**Exhibit** ___15___

Ex. E7

Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

You have also been scheduled for a statutory interim hearing during March 2013.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     U.S. Probation Office
        Eastern District of Missouri
        Thomas F. Eagleton U.S. Courthouse
        111 South 10th Street, Suite 2.325
        St. Louis, MO 63102-1116

        Designation & Sentence Computation Center
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX 75051

# HEARING SUMMARY

**Name: Thompson, Richard**                                   **Reg No: 20080-101**

## Hearing Parameters

Hearing Format............................: In-Person

Hearing Type ...............................: SIH

Hearing Date....,....................: 5/7/2013

Examiner.......................................: Mark A. Tanner

Institution.....................................: Trenton State Prison, Trenton, NJ

## Sentence Parameters

Sentence Type.............................: Federal

2/3rds Date.................................: 2/3/2017

Full Term Date.............................: Life

Months in Custody......................: 395 as of 5/4/2013

Fines/Restitution/Assessment......: N/A

Detainer .......................................: None

**Additional text regarding the above parameters:**  The subject is serving a Life sentence for a murder he committed while housed at USP Lompoc, CA in 1977.  He also has a 5-year consecutive sentence for attempted escape from USP Marion in 1982 and a 10-year sentence for assault on a correctional officer in which he stabbed him 17 times.

## Prior Action & Institutional Factors

**Prior Action:**  See Prehearing Assessment dated 3/20/2013 by L. Jenkins

**Codefendants:**  See PHA

**Victim Information:**  The BOP was contacted since the subject was involved in killing another inmate at USP Lompoc and he stabbed a staff member 17 times.  The BOP responded in a written letter stating they were opposed to parole.

**Representative & Representative's Statement:**  The subject indicating he wanted his mother as a representative but she was ill and could not make the hearing.  He waived representation and went forward with the hearing.

Community Corrections Manager Tracy Rivers was present and had no comment.

**Prisoner's Statement:**  The subject said he has been in custody a long time, is now 56-years old and tired of incarceration.  He said he has maintained clear conduct and done some programming but New

USPC000073

Jersey State system does not offer much for him to do. He would like to get to a lower level facility where they have more programs but because of his life sentence, he cannot be moved.

Fines/Restitution:     None

**Program Achievement:** None

No SPA is recommended

**Release Plans:**

████████████ – mother
████████████

### Guideline Parameters, Evaluation & Recommendation

Richard Thompson is a ██ year old male offender appearing before the Commission for an SIH after being ordered to Continue to Expiration at a 15-year reconsideration hearing in 2006. He has had a violent history during his incarceration to include killing another inmate in 1977, attempting to escape from USP Marion in 1982 and stabbing a Correctional Officer 17 times in 1985. He has served 395 months as of this hearing and is currently housed in New Jersey State custody due to gang separation issues and the fact that he compromised a female BOP Staff Member. His current 2/3rds date is 2/3/2017 and I see no reason to recommend anything but No Change in his CTE. His guidelines are 476 + months

**Conditions:** N/A

**Statutory Interim Hearing:** 5/2015

**Guideline Use:** Within

**Additional Text:** None

**I certify that I have reviewed this hearing summary.**

*Mark Tanner*

Mark A. Tanner, Hearing Examiner

MAT
May 10, 2013

**Executive Reviewer's Comments:**

EX. G1

U.S. Department of Justice                          **Notice of Action**
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

| Name: THOMPSON, Richard | Institution: New York CCM |
| Register Number: 20080-101 | Date: May 28, 2013 |

As a result of the hearing conducted on May 7, 2013, the following action was ordered:

No change in continuance to expiration.

The Parole Commission has decided to continue you to the expiration of your sentence. If the two-thirds date of your sentence (30 years in the case of a sentence of 45 years or more) precedes the mandatory release date calculated by the Bureau of Prisons, the Commission will conduct a record review of your case approximately 9 months prior to the two-thirds date. If a parole is not ordered as a result of the record review, the Commission will conduct a hearing for you. The purpose of the review or hearing is to determine whether there is a reasonable probability that you will commit any Federal, State, or local crime, or whether you have frequently or seriously violated the rules of the institution. See 28 C.F.R. § 2.53(a). If parole is denied, you will be continued until the expiration of your sentence less good time.

The Bureau of Prisons is requested to forward a copy of the prisoner's progress report approximately 9 months prior to the scheduled two-thirds date.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your U.S. Probation Officer, with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall not have any contact or communication with the victim of your offense, without the prior written approval of your Probation Officer and the Parole Commission. This prohibition includes any written or electronic correspondence (for example, a letter or e-mail), telephone call (including a voice mail message), or communication through another person.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your U.S. Probation Officer.


**REASONS**:

Retroactivity does not apply. Neither your recalculated severity rating (old Category **Eight**; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Poor**, old score **1**; new Category **Poor**, new score **1**) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole

THOMPSON 20080-101                          -1-                          Clerk: MDR
Queued: 05-28-2013 15:12:07 BOP-New York CCM | BOP-Designation & Sentence Computation Ctr | USPO-Central District of California, 1 - Main (Los Angeles) |

USPC000071

Case 3:12-cv-04569-FLW Document 10-1 Filed 03/15/19 Page 118 of 213 PageID: 264
Case 1:17-cv-02603-RDM Document 1-1 Filed 12/06/17 Page 23 of 87

EX. G 2

Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

You have also been scheduled for a statutory interim hearing during May 2015.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Trenton State Prison
       2nd St & Cass Street
       Trenton, NJ 08611

       U.S. Probation Office
       Central District of California
       312 North Spring Street
       600 U.S. Courthouse
       Los Angeles, CA 90012-4708

       Designation & Sentence Computation Ctr
       U.S. Armed Forces Reserve Complex
       Grand Prairie Office Complex
       346 Marine Forces Drive
       Grand Prairie, TX 75051

THOMPSON 20080-101        -2-        Clerk:  MDR
Queued: 05-28-2013 15:12:07 BOP-New York CCM | BOP-Designation & Sentence Computation Ctr | USPO-Central District of California, 1 - Main (Los Angeles) |

USPC000072

Ex. H



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*Reentry Services Division*

*Residential Reentry Management Office*
*100 29th Street, 2nd Floor*
*Brooklyn, New York 11232*
*Tel: 718-840-4219*
*Fax: 718-840-4207*

January 20, 2016

Earl Bracey
Case Operations Assistant
United States Parole Commission
90 K Street, N.E. 3rd Floor
Washington, DC 20530

Re: Richard THOMPSON
    Register No.: 20080-101

Dear Mr. Bracey:

Inmate THOMPSON has a presumptive parole date of February 3, 2017.
He has maintained clear conduct since his last parole hearing on
August 4, 2015.  Therefore, we are requesting that his presumptive
parole date of February 3, 2017, be made parole effective.  We have
enclosed a current progress report for your review which documents
his clear conduct.

If you have any further questions or concerns, please do not hesitate
to contact me or Ms. Figueroa, Contract Oversight Specialist at
(718) 840-4219.  Thank you for your consideration in this matter
of mutual concern.

Sincerely,

Patrick McFarland
Residential Reentry Manager

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## UNITED STATES PROBATION OFFICE

**MARY R. FARASHAHI**
CHIEF U.S. PROBATION OFFICER
600 Granby Street, Suite 200
Norfolk, Virginia 23510-1922
(757) 222-7300

February 12, 2016

**REPLY TO:**
Suite 100
10500 Battleview Parkway
Manassas, Virginia 20109
(703) 366-2100

Patrick McFarland
Residential Reentry Manager
Residential Reentry Management Office
100 29th Street, 2nd Floor
Brooklyn, New York 11232

        **RE:   THOMPSON, Richard**
                  **Register No. 20080-101**

              **RELEASE PLAN APPROVED**

Dear Case Manager MacFarland:

Reference is made to your letter received on January 20, 2016, wherein you requested our office investigate the release plan for the above-named defendant.

On February 10, 2015, this officer inspected the home of the above defendant at ███████ ███████████████████████████ On that date, this officer met with the defendant's brother who is the primary caretaker for the defendant's mother, ███████████ It is with reluctance that we accept this case due to the high crime area in which the home is located and the defendant's brother's extensive criminal history.

Should you find another, more suitable residence for the defendant, we would investigate it upon your request.

If you have any questions regarding this matter, you may contact me at (703) 366-2118.

              Sincerely,

              Raymond M. Hess
              Senior U.S. Probation Officer

RMH/lmg

COIPFLET

Department of Corrections
Inmate Management
PROGRESS NOTES REPORT

Ex. 5

OIRPRGNT

NEW JERSEY STATE PRISON
BATCH: 168 OF 187

| INM# | SBI# | Last Name | First Name | Init | Sfx | Location | Status | Date | PED | PDS | Admin Hold |
|------|------|-----------|------------|------|-----|----------|--------|------|-----|-----|------------|
| 568888 | 00S01S8535 | THOMPSON | RICHARD | | | NJSP-WEST-2 RIGHT-2 TIER-CELL 123; | MAX | 06/02/2015 | | | N |

| Date | Seq# | Type | Result | Note |
|------|------|------|--------|------|
| | | | | Case Action |
| | | | | TO A GENERAL POPULATION HOUSING UNIT HERE AT NJSP. SHOULD INMATE THOMPSON ENGAGE IN A VIOLENT BEHAVIOR AS IN THE PAST THEN IMMEDIATE CONSIDERATION WILL BE GIVEN TO MCU PLACEMENT. /JP |
| 02/20/2007 | 12 | GENERAL NOTES | | MCU ROUTINE REVIEW 2/20/07 (CONT) |
| 02/23/2007 | 13 | ORIENTATION | | Institutional Orientation MCURC CHAIR MAN MR. KENDELL /JP |
| 01/15/2008 | 14 | GENERAL NOTES | | progress report for the period 1/1/07 - 1/1/08 sent to the BOP |
| 07/10/2008 | 15 | GENERAL NOTES | | progress report sent to BOP for the period of 12-07 - 7-08 Institutional Orientation completed on February 23, 2007 |
| 01/06/2009 | 16 | GENERAL NOTES | | Progress notes sent for period 7/1/08 - 12/31/08. |
| 02/26/2009 | 17 | GENERAL NOTES | APPROVED | US PAROLE HEARING IMI's Statuory Interim Hearing (SIH) by the US Parole Commission was conducted on 02/26/2009. |
| 02/26/2009 | 18 | GENERAL NOTES | APPROVED | BOP - SENTENCING DATA Rec'd copy of the Sentence Monitoring Computation Data with regards to IMI's Sentence structure. Indictments for Murder, Attempted Escape & Assault on a Federal Correctional Officer. |
| 07/06/2009 | 19 | GENERAL NOTES | | Progress notes sent for period 1/1/09 - 6/30/09. |
| 01/05/2010 | 20 | GENERAL NOTES | | Progress notes sent for period 7/1/09 - 12/31/09. |
| 06/02/2010 | 21 | GENERAL NOTES | | Prog. notes sent for period 12/1/09 - 5/31/10. |
| 06/21/2010 | 22 | GENERAL NOTES | | Prog. notes sent for period 1/4/10 - 6/30/10. |
| 01/24/2011 | 23 | GENERAL NOTES | | Prog. notes sent for period 7/1/10 - 12/31/10. |
| 02/03/2011 | 24 | GENERAL NOTES | | consideration for an inter-institutional transfer should not be considered without the consent of the BOF |
| 03/04/2011 | 25 | GENERAL NOTES | | On 3/1/2011 IM provided with a copy of the notice from Federal Bureau of Prisons - USPC Hearing Docket scheduled for Monday, 3/7/2011. |
| 07/14/2011 | 26 | GENERAL NOTES | | Prog. notes sent for period 1/1/11 - 6/30/11. |
| 11/19/2011 | 29 | GENERAL NOTES | | prog report to the BOP for the period 5/12 - present |
| 05/29/2013 | 31 | GENERAL NOTES | | prog report sent to BOP for the period 1/13 - 6/13 |
| 12/03/2013 | 33 | GENERAL NOTES | | prog report sent to the BOP for the period 6/13 - 12/13 |
| 06/11/2014 | 34 | GENERAL NOTES | | prog report sent to BOP for the period 12/13 - 6/14 |
| 10/15/2015 | 35 | GENERAL NOTES | | prog report sent to BOP for the period 12/13 - 6/14 |
| 11/23/2016 | 36 | GENERAL NOTES | | prog report sent to BOP for the period 5/15-11/15 BOP conducted the yearly In-person interview with IM Thompson |
| 05/26/2016 | 38 | GENERAL NOTES | APPROVED | FBOP RELEASE FEDERAL BUREAU OF PRISONS Effective; 5/26/2016 - The U.S. Parole Commission has authorized IM Thompson's furlough to Volunteers of America in Baltimore Maryland, in anticipation of his Parole. |
| 08/19/2016 | 39 | ORIENTATION | COMPLETED | ORENT. On 9/16/2016 Orientation Completion. |

Case Notes

# Memorandum

E x . K



| Subject | Date |
|---|---|
| **Thompson, Richard**<br>**Reg. No. 20080-101** | May 26, 2016 |

| To | From |
|---|---|
| Commissioner<br>U.S. Parole Commission | Stephen T. Nasko<br>Case Analyst<br>U.S. Parole Commission |

**Summary:** Richard Thompson is a ▮ year old who has a two-thirds date of 2-3-2017 for the offenses of Murder, Knowingly and Intentionally Attempting to Escape from the Custody of the Attorney General and Assault on a Federal Correctional Officer. Thompson has been in custody on the aforementioned charges for 431 months as of 5-26-2016 and will have been in custody for 440 months upon his two-thirds date. Thompson released to the current term from an 8 year federal sentence for Rape (State and Government Reservations) and he has been in continuous custody since 6-5-1974 (503 months).

Section 2.53 of the USPC Rule and Procedure Manual indicates that a review for Mandatory Parole must focus on two elements, whether there is a reasonable probability that the prisoner will commit and new crimes upon release or whether the prisoner has seriously or frequently violated the rules of the institution. The probability that Thompson will commit a new crime upon release to the community is difficult to determine given the length of the time that he has remained incarcerated (Approximately 42 years), however while incarcerated it appears that Thompson has seriously violated the rules of the institution. On 1-13-1982, less than two years into his current sentence, Thompson attempted to escape from federal custody while at USP Marion and he was sentenced to a 5 year concurrent term. On 7-17-1983 Thompson and another inmate stabbed a correctional officer 17 times and he was convicted of Assault on a Federal Correctional Officer and was sentenced to a ten year consecutive term. Additionally, Thompson committed the instant offense of murder while serving a federal sentence for Rape and he incurred 32 administrative disciplinary infractions and 3 incidents of new criminal conduct including Assault and Possession of a Prohibited Weapon. Thompson maintained clear conduct from 1985 until 6-4-2014 when he received a disciplinary infraction for Refusing Work / Accepting Assignment after he refused to share a cell with another inmate. Thompson's rescission guidelines are 276+ months.

Although Thompson has largely been compliant with the rules of the institution since 1985, his major disciplinary infractions prior to that resulted in the death of another inmate and significant bodily harm to a correctional officer. I recommend that Commission decline to order Mandatory Parole at this time and instead schedule Thompson for a Mandatory Parole Hearing on the next available docket based on Thompson seriously violating the rules of the institution. A hearing will provide a more appropriate venue to make a determination regarding Thompson's suitability for Mandatory Parole release.

EX. L

**Recommendation:** Schedule for a Mandatory Parole Hearing on the next available docket

| | | | |
|---|---|---|---|
| Reviewer: | _____ Agree | _____ Disagree | _____ Discuss |
| Commissioner: | ✓_____ Agree | _____ Disagree | _____ Discuss |
| Comm/Designee: | _____ Agree | _____ Disagree | _____ Discuss |

_____          5/27/2016
**Commissioner/Designee**                      **Date**


_____          _____
**Commissioner/Designee**                      **Date**

**U.S. DEPARTMENT OF JUSTICE**
**U.S. Parole Commission**

EX. M

## ORDER

Name:          Thompson, Richard

Reg. No:       20080-101

Institution:   New York CCM

In the case of the above-named, the Commission has ordered the following:

Schedule for a Mandatory Parole Hearing on the next available docket

Stephen T. Nasko, Case Analyst

5/27/16

cc:    New York CCM
       100 29th Street
       Brooklyn, NY 11232

EX. N

U.S. Department of Justice                    **Notice of Action**
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

Name: THOMPSON, Richard                    Institution: New York CCM

Register Number: 20080-101        Date:    May 31, 2016

In the case of the above-named, the following action was ordered:

Schedule for a mandatory parole hearing on the next available docket.



THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies
may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

USPC000028

## BOP DOCKET COVERSHEET

EX. O

Coordinator: **EFB**

Name THOMPSON, Richard          Register # 20080-101

FBI# 304203N7

Hearing Type Mandatory Parole

Institution_____          Week of Docket_____

*NOTE*: Send Final Docket to Institution 2 weeks prior to scheduled date

Examiner_____          (leave blank if unassigned at time of *PH)

IN - PERSON          VIDEO / ROOM #_____

Date Received BOP Docket List_____          BOP Contact Person_____

(If not received – Date Dkt Requested_____          Method: e-mail / telephone / other (maintain written record)

Date to PreHearing Shelf (*PH) 6/21/16

### UPDATED CASEFILE DOCUMENTS (for use in PreHearing preparation)

Date Printed/Placed in File

1. PSCD (current computation, 2 mths or less to dkt)          6/21/16

2. PD15 (disciplinary actions)          6/21/16

3. PEED (education/vocation programming)          6/21/16

4. PP44 (victim notification) __✓__(YES) (NO)_____ {Notify VW of all cases with violent offenses}
   E-mail Notification to VW_____ (Date)

5. NCIC (criminal record) 6/18/15 _____ Initial Hrg _____ Rescission {escape}; _____ Revocation

6. BOP Progress Report          __✓__(YES) (NO)_____ Date Report Requested_____

7. PreSentence Report (Year Prepared)_____ __✓__(YES) (NO)_____ Date Report Requested_____

CONTINUED HEARING: New Hearing Date:_____

OTHER INFORMATION:_____

USPG000013
02/28/13

Ex. P1

** DRAFT ***** DRAFT ***** DRAFT ***** DRAFT ***** DRAFT ***** DRAFT **
## Case Operations Victim Referral Summary

**To:** USPC Victim/Witness Unit

**Date:** June 21, 2016

**From:** Earl F. Bracey
Hearing Coordination Specialist

This case is scheduled for an upcoming hearing. The offense(s) of conviction involved either violence or fraud and thus requires an attempt to notify victims of the hearing.

## Background information re: offender and current hearing

**Prisoner Name:** Thompson, Richard

**Register#:** 20080-101

**Institution:** Volunteers of America-Baltimore

**Week of Docket:** TBD

**Hearing Type:** Mandatory Parole

Hearing Examiner assigned to docket: **Phyllis R. Baker** (leave blank if unassigned at this time)

**Type of hearing docket:** In Person

**Background Information re: the criminal case and victim participation**

    1. Have victims provided input into past parole decisions (yes or no)?   No (If yes, provide the names of all victims in (2) below, if no, skip to (3))

    2. Names of all victim representative(s) that participated in past hearings
        Laurie Williams
        Denise Victoria Rice

**(Note: Complete 3 through 9 only if answer to #1 is NO)**

    3. Judicial District of Conviction (If Military, specify branch): California, Central dist.

    4. Criminal Case #: CR76-1538

    5. Offense(s) of conviction (list the most serious offense): Murder

    6. Name(s) of victim(s) (if indicated in presentence report): William Allen Lewis

    7. Does BOP require victim notification (yes or no)?   Yes

USPC000081

Case 1:17-cv-02603-RDM Document 1-1 Filed 12/06/17 Page 33 of 87

\*\* DRAFT \*\*\*\*\* DRAFT \*\*\*\*\* DRAFT \*\*\*\*\* DRAFT \*\*\*\*\* DRAFT \*\*\*\*\* DRAFT \*\*

    8. Does file show evidence of previous unsuccessful attempt(s) by USPC Victim Witness Unit to locate victim(s) (yes or no)?   Yes

    9. If yes to 8, provide last contact phone # or address if available (otherwise N/A): N/A

    10. Are there any victim registration forms in Section II of case file (yes or no) ?   No

    If yes, list the names of those victims that registered: .

EFB
June 21, 2016

USPC000082

*Ex. Q*

# BOP DOCKET COVERSHEET

Coordinator: **EFB**

Name Thompson, Richard

Register # 20080-101

FBI# 304203 N7

Hearing Type  SIH

Institution  TBD / current Trenton NJ. Prison

Week of Docket _____

<u>NOTE</u>: **Send Final Docket to Institution 2 weeks prior to scheduled date**

Examiner _____ (leave blank if unassigned at time of *PH)

<div style="text-align:center">

**IN – PERSON**                **VIDEO / ROOM #** _____

</div>

Date Received BOP Docket List _____ BOP Contact Person _____

(If not received –Date Dkt Requested _____ <u>Method</u>: e-mail / telephone / other (maintain written record)

Date to PreHearing Shelf (*PH)  6-19

---

## UPDATED CASEFILE DOCUMENTS (for use in PreHearing preparation)

<u>Date Printed/Placed in File</u>

1. PSCD (current computation, 2 mths or less to dkt)  6-18

2. PD15 (disciplinary actions)  6-18

3. PEED (education/vocation programming)  6-18

4. PP44 (victim notification) ____ (YES) (NO) ✓ {Notify VW of all cases with violent offenses} E-mail Notification to VW _____ (Date)

5. NCIC (criminal record)  6-18  _____ Initial Hrg _____ Rescission {escape}; _____ Revocation

6. BOP Progress Report  ____(YES) (NO) ____ Date Report Requested _____

7. PreSentence Report (Year Prepared) _____ ____(YES) (NO) ____ Date Report Requested _____

**CONTINUED HEARING:** New Hearing Date: _____

*OTHER INFORMATION:* _____

EX. R



**U.S. DEPARTMENT OF JUSTICE**
**U.S. Parole Commission**

**ORDER**

Name: THOMPSON, RICHARD

Reg. No: 20080-101
MANDATORY P MD

In the case 7/22/2016
its disposal
status is hereby ordered:

examined all the information at
:role status, or mandatory release

*DENY MANDATORY PAROLE PURSUANT TO 28 CFR 2.53 AND CONTINUE TO EXPIRATION.*

Date: 7/22/16

*Mark Tanny 7/27/16*
*7-28-2016*

Date: _____

(Date Notice Sent)

National Appeals Board: _____

Regional Commissioners: _____

Full Commission _____

Parole Form H-6
December 2004
USPC000003

EX. S

U.S. Department of Justice
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

**Notice of Action**

| | |
|---|---|
| Name: THOMPSON, Richard | Institution: New York CCM<br>Trenton State Prison, NJ |
| Register Number: 20080-101 | Date: August 10, 2016 |

In the case of the above-named, the following action was ordered:

Deny mandatory parole. Continue to expiration.

**REASONS**:

You have seriously and frequently violated the rules of the institutions you were confined in over the last 40 years. Specifically, you killed an inmate while at USP Lompoc in 1976, attempted to escape from USP Marion in 1983, stabbed a BOP staff member 17 times in 1983, found guilty of fighting, assault, threatening bodily harm and possession of dangerous weapons. These and many more infractions highlight your inability to comply with the institutions rules and indicate a high probability that you will not follow society's folkways and mores if released. For these reasons, mandatory parole is being denied.

**You have also been scheduled for a statutory interim hearing during July 2018. At that time, your case will be reviewed again pursuant to 18 U.S.C. §4206(d).**

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     Designation & Sentence Computation Ctr
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX 75051

THOMPSON 20080-101                                          -1-                                   Clerk:   MDR
Queued: 08-10-2016 11:12:49 BOP-New York CCM | BOP-Designation & Sentence Computation Ctr |

USPC000001

EXHIBIT T1

**Richard Thompson**
#568688 / #158535
New Jersey State Prison
Post Office Box 861
Trenton, N.J. 08625-0861

~~December~~ November 28, 2016

**U.S. Parole Commission**
Appeal Unit
90 K. Street North East 3$^{rd}$ Floor
Washington, D.C. 20530

RE: LATE APPEAL U.S.P. COMMISSION
RULES AND PROCEDURE MANUAL
§ 2.26-09

Dear Appeals Unit:

<u>PLEASE ACCEPT THIS LATE APPEAL FOR GOOD CAUSE; PETITIONER IS
A FEDERAL PRISONER BEING HOUSED IN A STATE FACILITY.  MY
FEDERAL REGISTRATION NUMBER IS 20080.101.</u>

I was sent to a Halfway house on May 23, 2016, prior to seeing the Board for an
effective parole date.  On or about June 16, 2016, I was taken into custody by the U.S.
Marshals, and subsequently transported to a County jail in Maryland where I appeared
before the Board, on or about July 22, 2016.  On or about August 8, 2016 I was
transported from the County jail where I subsequently arrived back at Trenton State
Prison on September 9, 2016.  Since Petitioner arrival at Trenton State Prison Petitioner
have diligently tried to get an official copy of his Notice of Action to no avail. Petitioner
has contacted the prison administration in an effort to get a copy of his N.O.A., who has
contacted the B.O.P., and since September 23, 2016, the B.O.P., have not contacted the
New Jersey State Prison Administration. (See: Attached copy of Inquiry Form Dated:
10/4/16).

Petitioner wrote to Earl Bracy, of the U.S.P. Commission on October 16, 2016,
requesting an official copy of his N.O.A. Mr. Bracy, did not answer Petitioner's letter.
Petitioner's brother, David Thompson, called Mr. Bracy's office on numerous occasions

EXHIBIT D-2

leaving voice messages to contact him about sending Petitioner a copy of his N.O.A. At one point Mr. Bracy, contacted Petitioner's brother and assured him he would send Petitioner an official copy of his N.O.A. Petitioner never received a copy of his N.O.A. from Mr. Bracy.

In an unrelated case, Petitioner received a copy of his N.O.A. in a letter dated 11/14/16, and received by Petitioner on 11/17/16. (See: Attached copy of front of envelop, dated 11/14/16, specifically page 2, copy of Petitioner's N.O.A. and receipt indicating date Petitioner received letter, 11/17/16.

To eliminate further delay in the appeal process the enclosed appeal is based on the copy of Petitioner's N.O.A. contained in the letter on page 2.

Respectfully submitted,

Richard Thompson
**Richard Thompson**

c:
  FILE

EXHIBIT 005 T3

33

G-21

NEW JERSEY STATE PRISON

Legal Mail/Accountable Non Legal Mail

Process and Delivery Receipt #

R. Thompson    568688    ZR    11/17/16
Inmate Name    Number    Wing    Date

US Dept of Justice    11/14/16
Sender    Address    Date (Postmark)
    11/17/16

Processed by: (Print and Sign)    Date

Traffic Control Officer (if relocated) (Print and Sign)    Date    11/17/16

Issued by: (Officer Print and Sign)    Wing    Date

R. Thompson    11-17-16
Inmate: (Print and Sign)    Date

Item#

___ Legal Mail

___ Non Legal Accountable

___ Regular First Class (No special handling)

___ Inter Office (Truck Mail)

___ Registered/Certified

___ Return Receipt

___ Priority Mail

___ Express Mail

___ Common Carrier Overnight or Priority Delivery
(FedEx, UPS, etc.) carrier:_____

Housing Officer: If inmate has moved, hand deliver immediately to Traffic Control.
Traffic Officer: Promptly locate inmate housing location in iTag and arrange for immediate delivery.

WHITE - Mailroom I/M file    YELLOW - Inmate Receipt

David Bober, AUSA
U.S. Department of Justice
United States Attorneys Office
District of New Jersey.
402 E. State Street, Room 430
Trenton, New Jersey 08608-1507
Official Business

ADDRESS SERVICE REQUESTED

LEGAL MAIL- TO BE OPENED IN
THE PRESENCE OF THE
PRISONER

Richard Thompson
#568688
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625







EXHIBIT 74

02 1P
0001126707
MAILED FROM ZIP CODE 0
$000.
NOV 14
UNITED STATES POSTAGE
U.S. OFFICI
PENALTY
PRIVATE U
PITNEY B



EXHIBIT J5



**U.S. Department of Justice**

United States Attorney
District of New Jersey
*Civil Division*

---

PAUL J. FISHMAN
UNITED STATES ATTORNEY

*David Bober*
*Assistant United States Attorney*

402 E. State St., Room 430
Trenton, NJ 08608
david.bober@usdoj.gov

main: (609) 989-2190
direct: (609) 989-0564
fax:   (609) 989-2360

November 14, 2016

Hon. Freda L. Wolfson
United States District Judge
United States Courthouse
402 E. State St.
Trenton, NJ 08608

Re:  *Thompson v. D'Ilio*,
     No. 13-6282 (FLW)

Dear Judge Wolfson:

I write respectfully to address two issues raised in the Court's opinion of October 27, 2016, and also in response to the motion to reopen filed by petitioner Richard Thompson.

The first issue relates to Thompson's place of incarceration. In the October 27 opinion, the Court noted that Thompson may have been moved to a residential re-entry center in New York and, if that were the case, he had failed to comply with Local Rule 10.1 by not notifying the Court of his new address. In fact, Thompson continues to be incarcerated at the New Jersey State Prison in Trenton. The reason that the "inmate locator" on the website for the Bureau of Prisons indicates that he is incarcerated at "New York RRM" is that, when the BOP designates a state facility for service of a federal sentence, the relevant residential re-entry management field office is listed in the "inmate search" function as the inmate's place of incarceration, because there is no code for the non-federal facility. In this case, if and when Thompson is ever granted parole from his life sentence, the New York residential re-entry management field office would be responsible for facilitating his transition back into society.

The second issue relates to whether the claim raised by Thompson in the "supplement" to his petition is now moot. As the Court noted in its October 27 opinion, Thompson was scheduled to receive a new interim parole hearing in May 2015 and,

EXHIBIT T6

"because Petitioner seeks only a new parole hearing, his request to supplement his petition may be moot if he in fact received a new hearing." See October 27 Opinion (Docket No. 9) at 10. I have spoken with the United States Parole Commission to determine whether Thompson received the hearing as contemplated. Commission records indicate that Thompson received a statutory interim hearing on August 4, 2015, at New Jersey State Prison in Trenton. Following that hearing, by notice of action dated August 17, 2015, the Commission ordered "no change in continuance to expiration."

Following that hearing, on May 31, 2016, the Commission entered a notice of action scheduling Thompson for a mandatory parole hearing "on the next available docket" (a mandatory parole hearing is conducted pursuant to 18 U.S.C. § 4206(d), which creates a presumption of release after service of two-thirds of the sentence, unless the Commission finds that the prisoner has frequently or seriously violated institution rules, or that there is a reasonable probability that he will commit a federal, state or local crime). That hearing was conducted on July 22, 2016, at Kent County Detention Center in Chestertown, Maryland. Following that hearing, the Commission ordered by notice of action dated August 10, 2016:

Deny mandatory parole. Continue to expiration.

Reasons: You have seriously and frequently violated the rules of the institutions you were confined in over the last 40 years. Specifically, you killed an inmate while at USP Lompoc in 1976, attempted to escape from USP Marion in 1983, stabbed a BOP staff member 17 times in 1983, [were] found guilty of fighting, assault, threatening bodily harm and possession of dangerous weapons. These and many more infractions highlight your inability to comply with the institution's rules and indicate a high probability that you will not follow society's folkways and mores if released. For these reasons, mandatory parole is being denied.

You have also been scheduled for a statutory interim hearing during July 2018. At that time, your case will be reviewed again pursuant to 18 U.S.C. § 4206(d).

In sum, since filing this habeas petition in 2013, Thompson has received not one but two statutory interim hearings. As his petition sought only a new hearing, and he has now received two hearings, this claim should be dismissed as moot, and Thomson's motion to reopen should be denied. See October 27 Opinion at 10 (citing cases holding that habeas petition is moot if petitioner challenges parole refusal and subsequently receives new hearing).



EXHIBIT T7

Finally, the information provided above was gleaned from electronic records that were available as of this writing. If the Court requires copies of the original documents or a declaration attesting to the veracity of these facts, we will be happy to provide whatever the Court determines is required.

I thank the Court for its consideration of this matter.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

By: /s/ David Bober
DAVID BOBER
Assistant U.S. Attorney

cc: Richard Thompson (via regular mail)
#568688
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

3

EXHIBIT P.1



# APPEAL

U.S. Department of Justice
United States Parole Commission

Name   **RICHARD THOMPSON**

Register No. _#568688 / #158535_          Institution   **NEW JERSEY STATE PRISON**

I received a Notice of Action dated  _August 10, 2016_  ~~November 17, 2016~~          and appeal that decision.

_Richard Thompson_                                     _November_ ~~December~~ 28, 2016.
          _(Signature)_                                                                _(Date)_

**INSTRUCTIONS:**

**Procedures.** The appeal must be mailed to the Commission within 30 days from the date on the Notice of Action. The permissible grounds for appeal are described below. On page two of this form, you must provide a brief summary of all the grounds for your appeal. On page three of this form, you must provide a statement of the facts and reasons in support of each ground identified in your summary. Continuation pages are permitted for longer appeals. You may provide any additional information in an addendum to your appeal. The Commission may refuse to consider any appeal, which does not follow this format. The appeal will be decided on the record, and you will be notified of the Commission's decision through a Notice of Action. Do not submit multiple copies of your appeal, and do not submit documents, which are in the Commission's file.

**Mailing address.** You should mail the appeal to U.S. parole Commission, Appeals Unit, 90 K. Street, N.E. 3rd Floor, Washington, D.C. 20530.

**Permissible grounds for appeal.**

a) The Commission relied on erroneous information, and the actual facts justify a different decision.

b) There was significant information in existence but not know to me at the time of hearing, and a different decision would have resulted in the information had been presented.

c) The Commission made a procedure error in my case, and a different decision would have resulted if the correct procedure had been followed.

d) The Commission applied a statute or regulation incorrectly (e.g., in determining my period of imprisonment as a supervised release violator, and/or my further term of supervised release).

e) The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody).

f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

g) There, are especially mitigating circumstances in my case, which justify a different decision.

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

EXHIBIT 6-2

# SUMMARY OF GROUNDS FOR APPEAL

Instructions: Briefly describe the error, which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

Ground One: THE COMMISSION APPLIED STATUTES / AND OR REGULATION INCORRECTLY WHICH APPLIED CORRECTLY WOULD HAVE A DIFFERENT DECISION.

_____

_____

_____

Ground Two: THE COMMISSION MADE SEVERAL PROCEDURAL ERRORS, AND A DIFFERENT DECISION WOULD HAVE RESULTED IF THE CORRECT PROCEDURE HAD BEEN FOLLOWED.

_____

_____

_____

Ground Three: THE COMMISSION RELIED ON ERRONEOUS INFORMATION AND THE ACTUAL FACTS JUSTIFY A DIFFERENT DECISION.

_____

_____

_____

Ground Four: THE COMMISSION MADE ERROR IN CALCULATING TIME IN CUSTODY.

_____

_____

_____

Note: You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

EXHIBIT 4.3

# SUMMARY OF GROUNDS FOR APPEAL

**Instructions:** Briefly describe the error, which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

**Ground Five:** THE COMMISSION ENGAGED IN DISPARITY THAT WAS UNJUSTIFIABLY WIDE AND WHAT THE 1984, SENTENCING REFORM ACT WAS DESIGNED TO CORRECT. HAD THE COMMISSION FOLLOWED THE ACT'S INTENTIONS A DIFFERENT DECISION WOULD HAVE RESULTED.

**Ground Six:** THE COMMISSION'S STATED REASONS IN ITS NOTICE OF ACTION DATED AUGUST 10, 2016, ARE FACTUALLY NOT TRUE AND HAD THE DISC OF HEARING BEEN LISTENED TO A DIFFERENT DECISION WOULD HAVE BEEN REACHED.

**Ground Seven:** THERE ARE ESPECIALLY MITIGATING CIRCUMSTANCES WHICH JUSTIFY A DIFFERENT DECISION.

**Ground Eight:**

**Note:** You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

EXHIBIT P-4

# STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL

**Instructions:** Please present your grounds for appeal in the order in which they appeal in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

**Ground One:** (Circle the applicable ground for appeal from Page 1:  a  b  c  d  e  f  g).

**Facts:** SEE: GROUND ONE ATTACHMENT OF FACTS (1)

  ADDENDUM TO GROUND ONE FACTS (2)

  ADDENDUM TO GROUND ONE FACTS (3)

**Reasons:** SEE: ATTACHED REASONS (1)

  ADDENDUM TO REASONS (2)

  ADDENDUM TO REASONS (3)

**Ground Two:** (Circle the applicable ground for appeal from Page 1:  a  b  c  d  e  f  g).

**Facts:** SEE: GROUND TWO ATTACHMENT OF FACTS (1)

  ADDENDUM TO GROUND TWO FACTS (2)

  ADDENDUM TO GROUND TWO FACTS (3)

  ADDENDUM TO GROUND TWO FACTS (4)

  ADDENDUM TO GROUND TWO FACTS (5)

  ADDENDUM TO GROUND TWO FACTS (6)

**Reasons:** SEE: ATTACHED REASON (1)

  ADDENDUM TO REASONS (2)

  ADDENDUM TO REASONS (3)

  ADDENDUM TO REASONS (4)

  ADDENDUM TO REASONS (5)

  ADDENDUM TO REASONS (6)

EXHIBIT P-5

# STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL

**Instructions:** Please present your grounds for appeal in the order in which they appeal in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

**Ground Three:** (Circle the applicable ground for appeal from Page 1: a  b  c  d  e  f  g).

**Facts:** __SEE: GROUND THREE ATTACHMENT OF FACTS (1)__

**Reasons:** __SEE: ATTACHMENT REASONS (1)__

**Ground Four:** (Circle the applicable ground for appeal from Page 1: a  b  c  d  e  f  g).

**Facts:** __SEE: GROUND FOUR ATTACHMENT OF FACTS (1)__

**Reasons:** __SEE ATTACHED REASONS (1)__

EXHIBIT 4.6

**Ground Five:** (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f   g).

Facts:   SEE:  GROUND FIVE ATTACHMENT OF FACTS (1)

Reasons:   SEE: ATTACHED REASONS (1)

**Ground Six:** (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f   g).

Facts: :  SEE: GROUND SIX ATTACHMENT OF FACTS (1)

Reasons:   SEE:  ATTACHED REASONS (1)

EXHIBIT 4-7

**Ground Seven:** (Circle the applicable ground for appeal from Page 1: a  b  c  d  e  f  g).

Facts:  SEE: GROUND SEVEN ATTACHMENT OF FACTS (1)

Reasons:  SEE: ATTACHED REASONS (1)

**Ground Eight:** (Circle the applicable ground for appeal from Page 1: a  b  c  d  e  f  g).

Facts:

Reasons:

EXHIBIT D-8

Petitioner's case from the very beginning has been rife with direct violations, in consistencies, and disparities that the 1984, Sentencing Reform Act was design to correct. These infirmities culminated and ultimately led to the U.S.P. Commission disproportionate decision as reflected in Petitioner's N.O.A. dated 8/10/16. Petitioner respectfully request the Commission to address these complaints chronologically as listed so Petitioner can preserve these issues for further review if need be.

## GROUND ONE ATTACHMENT OF FACTS (1)

The U.S. Parole Commission Rules and Procedure Manual § 2.5 Sentence Aggregation makes it clear prisoners serving more than one sentence are to have those sentences aggregated with the completion of two-thirds for each sentence before a single action of parole eligibility. Petitioner life sentence started in 1980 and ended with its two-thirds date in 2010.

## REASONS (1)

Petitioner ten (10) years consecutive sentence started in 2010, and ends with a two thirds date of 2017. When the Commission saw Petitioner, it was for his ten (10) year sentence since that sentence started running in 2010. Petitioner ten (10) year consecutive sentence expires on 2/3/17, at Petitioner's two-thirds date, and to deny Petitioner parole beyond that date the Commission would have to stop Petitioner's ten (10) year sentence and revert back to Petitioner's life sentence, which the Commission cannot do legally which is to stop and start time.

Petitioner's two-thirds date of 2/3/17 was calculated at the end of Petitioner's ten (10) year sentence, and not Petitioner's life sentence. The Court in Thompson v. Warren, USDC New Jersey, 2012, made this critical observation. U.S. Dist. Lexis, 147067, Civil

EXHIBIT U-9

Action No: 11.4813. (See: Attachment A-4, Bottom left hand corner).

The Commission cannot deny Petitioner parole beyond that two-thirds date. In its N.O.A., dated 9/20/06, the Commission acknowledges Petitioner had a mandatory release date, and the National Appeals Boards affirmed the Commission's decision on 1/19/07, to parole Petitioner to his mandatory release date (See: Attachment A-2). The Commission now seeks to violate its own decision made by the Commission in 2006, and affirmed by the National Appeals Board in 2017

## ADDENDUM TO GROUND ONE FACTS (2)

U.S. Commission Rules and Procedure Manual § 2.53 (a), Mandatory Parole. Petitioner does not meet the criteria to be carried beyond his two-thirds date.

## ADDENDUM TO REASONS (2)

The first criteria is frequency excluding the Y.C.A. reports the examiner included in his determination in violation of the Commission's 1992 decision. Petitioner has had starting from 1980 until the present, 2016. May be six (6) reports. Petitioner has gone from 1984 to 1989, five (5) years without any infractions and from 1989 to 2104, twenty-five (25) years without any incident reports. This information is in the B.O.P. case files, which the Commission have access to, for the level of frequency of incident reports Petitioner have a score of zero.

Seriousness', Petitioner have a score of seven (7)-severity rating by the B.O.P. because of his conviction for a violent crime. However, Petitioner submits two of his six infractions were for serious infractions that occurred decades ago which Petitioner have paid the punitive aspect for and in recognition of that Petitioner custody level dropped from max to medium.

EXHIBIT P-10

The examiner determined Petitioner would not commit any crimes in the future and did not discuss that issue.

Additionally, Petitioner is serving a regular adult life sentence with a ten (10) year consecutive sentence. Life under the old law which Petitioner is serving has a forty five (45) year cap of thirty (30) years less good time, and a two-thirds date of six (6) years and eight (8) months less good time for his ten (10) year sentence for an aggregated thirty six (36) years and eight (8) months two-thirds date.

Furthermore, the Commission appears to base its decision to deny Petitioner parole on Title 18 § 4206 (d), and on it's understanding of the word has and how it applies to Petitioner. Petitioner submits the Commission has broad discretion in granting or denying parole. However, Petitioner also submits the Commission must take all of the relevant facts in evaluating a prisoner for parole and not just a mechanical and narrow application of the above statute. The meaning and definition of the word has, have, both past and present usage.

Petitioner would contend (d) (See: Attachment B, Title 18 § 4206), which the Commission relied on, is unfair and unreasonable because it relates back to incidents almost forty (40) years ago when Petitioner was technically a juvenile being oriented and influenced by an environment his YCA sentence was designed to protect him from which the B.O.P. violated. (See: Attachment B), is more relevant and more applicable to Petitioner because of the far greater number of years covered, and is reflective of Petitioner as a mature adult. At Petitioner initial hearing, in 2/26/95, he was given a fifteen (15) year reconsideration hearing. At Petitioner's 4/21/98, S.I.H., he was given a twelve (12) month Superior Program Achievement Award reducing his fifteen (15) year

EXHIBIT 9-11

reconsideration hearing by one (1) year because of Petitioner's maintaining clear conduct and a positive attitude. Carrying Petitioner beyond his two-thirds date wipes that out and is inconsistent with the Commission awarding Petitioner the S.P.A. Petitioner has not incurred any frequent or / and serious institutional rule violations that would warrant the Commission regretting awarding Petitioner the S.P.A. or justifying canceling it.

What further tilts the scale in Petitioner favor in support of his contention is in La Magna v. B.O.P., 494 F.Supp. 189, where the Court determined Mandatory Parole is expressly conditioned upon the Commission finding the inmate will not be a risk to him or society. The examiner made such a finding, and this should be the overall determining factor in the application of (a) or (d) and whether or not Petitioner is suitable for parole after considering the totality of Petitioner's case.

## ADDENDUM TO GROUND ONE FACTS (3)

In 2/22/01, the examiner at Petitioner's S.I.H., Mr. John F. Sicoli, determined Petitioner was a better risk for parole than his salient factor score indicated

## ADDENDUM TO REASONS (3)

Because of the substantial period of time, Petitioner has been in custody, substantial period of time with no incident reports and Petitioner's strong community ties. The Commission's decision of no change in Petitioner's N.O.A, is totally in consistent with the overall factual record.

## GROUND TWO ATTACHMENT OF FACTS (1)

In 1974, Petitioner was originally sentence as a Y.C.A. Offender. The Court imposing the sentence made a determination Petitioner would benefit from the provisions of the Y.C.A.

EXHIBIT 4.18

However, Petitioner was never given the opportunity to benefit from the Act. In 1979, the Court found the B.O.P. in violation of the Y.C.A., and ordered the B.O.P. to transfer Petitioner to a Y.C.A. facility after Petitioner had already spent years in adult facilities. The B.O.P. stated in its argument before the Courts. "Petitioner was one of those prisoner's who fell through the cracks".

Those cracks had dire consequences for Petitioner. Petitioner did not enter into the B.O.P. with a life sentence. Petitioner takes full responsibility for his actions to the degree that a youthful offender can at that stage in his mental development. This violation has never been considered or mentioned in any of the Commission's N.O.A.

### REASON (1).

In 1992, the Commission determined in a modified N.O.A. that none of the incident reports incurred by Petitioner while serving his Y.C.A. sentence could be used or counted against his adult sentence. (See: Attachment A-1 6th Paragraph. Although Petitioner YCA conviction is decades old and not a point of contention herein. Petitioner nonetheless, in the event of further review would like judicial notice of misinformation contained in Petitioner's file, to wit: Petitioner was convicted of rape. The Commission has Petitioner's commitment papers, and is aware of Petitioner's and the BOP complaints regarding this misinformation and the Commission have acknowledged there is misinformation contained in Petitioner's file). At petitioner's mandatory hearing, the examiner, Mr. Tanner, used those incident reports against Petitioner's objections in making his recommendation to deny Petitioner parole at his two-thirds date.

EXHIBIT Ψ-13

## ADDENDUM TO GROUND TWO FACTS (2)

§ 2.13-01, Examiner Functioning (a) U.S. Parole Commission Rules and Procedure Manual Mandates the appropriate case manager is to be in attendance at hearings.

## ADDENDUM TO REASON (2).

This procedure policy was violated at Petitioner's hearing.

## ADDENDUM TO GROUND TWO FACTS (3)

§ 2.13-011, of the U.S. Parole Commission Rules and Procedure Manual governs Interested Parties Opposing Parole.

## ADDENDUM TO REASON (3).

There is absolutely nothing in (a) or (b) that allows or gives the Commission authority to reach out to the B.O.P. Director for his/her input regarding Petitioner's parole suitability. The B.O.P. Director is not a Criminal Justice Official, to compound this violation; the director's opposition letter was never read or summarized to Petitioner by any examiner depriving Petitioner of his right to respond.

To further compound this violation there is a "clean hands" doctrine, which means, a person must have clean hands to prevail in Court. A person running a swindle cannot take their victim to Court for damages once the victim becomes aware of the swindle because the scammer does not have clean hands. The B.O.P. does not have clean hands. After initially violating Petitioner's right under the Y.C.A., and forty-two (42) years later when they have an opportunity to correct their mistake and at least give Petitioner the chance they took away is bureaucracy at its worst.

EXHIBIT P-14

The Director does not know Petitioner. He did not write the letter. He only signed off on it, without any investigation of the facts. Worse still, § 2.13-011, does not allow the Commission who is suppose to be an independent agency, authority to reach out to the BOP director, prior to reaching out to the BOP the Commission's file indicates they were moving towards releasing Petitioner at his two-thirds date (See: Attachment A-2). But, after receiving the BOP opposition letter in 2013, which Petitioner still have not seen it was only then the Commission began backing away from Petitioner's projected two-third release date.

### ADDENDUM TO GROUND TWO FACTS (4)

§ 2.14, Subsequent Proceedings. There was no progress report made in violation of the Commission's policy and procedure. The purpose of a progress report is to afford The Commission an opportunity to review Petitioner progress from one report and hearing to the next so the Commission can make an informed decision based on relevant information.

### ADDENDUM TO REASON (4)

This violation hurt Petitioner as well as the Commission by depriving the Commission of important relevant information in its decision making process. Had a progress report been prepared some of the information of importance to the Commission would have been:

1. **Petitioner had completed a typing course, while at the halfway house.**

2. **Petitioner completed several program goals designed by his unit team.**

3. **Petitioner had enrolled at a Mental Health Facility to ascertain the effect of long-term incarceration.**

EXHIBIT U.15

4. Petitioner had gone on furloughs and several passes all
   unescorted and without any incidents.

5. While at the K.C.C.D.C., Petitioner was approached by law
   enforcement officials to speak to the youth about joining in
   gangs and making bad decisions. Petitioner readily agreed
   to participate in the program. The program was approved.
   Petitioner was waiting for the chief of security to work out
   the logistics when the Marshals started the procedure to have
   Petitioner transported back to New Jersey State Prison.

6. Although Petitioner went to the halfway house
   serendipitously, his accomplishments while there and the facts
   Petitioner went on furloughs and passes all unescorted and
   without incident have to be looked at and evaluated.

The most recent report from New Jersey State Prison Classification Committed
(See attachment C, reclassification instrument dated: 9/21/16).highlighting Petitioner's
parole suitability in factual contrast to the Commission N.O.A. in consistent decision.

### ADDENDUM TO GROUND TWO FACTS (5)

§ 2.53-06 Subsequent hearing for long-term prisoners denied mandatory parole.

### ADDENDUM TO GROUND TWO FACTS (5)

Petitioner last S.H.I., was on August 4, 2015, Petitioner received a mandatory
hearing on May 31, 2016, and was continued to the expiration of his sentence. Petitioner
next S.I.H. is schedule for July 2018. This is wrong. A mandatory hearing is not the same
type of hearing as a S.I.H., the S.I.H., date set is beyond Petitioner's 8/4/15, S.I.H. by (11)
eleven months. Petitioner's S.I.H., date should be 8/4/17, which is twenty-four (24)
months from Petitioner's S.I.H., held on 8/4/15.

### ADDENDUM TO GROUND TWO FACTS (6)

At Petitioner's fifteen (15) year reconsideration hearing, the examiner, Mr. Paul
Howard, was under the impression Petitioner would be statutory release on 2/3/17, and
consequently failed to consider Petitioner for an effective Parole date, which made

EXHIBIT ⑪-16

Petitioner's fifteen (15) year reconsideration hearing totally void and deprived Petitioner of his right to appeal the decision on those grounds. In the Commission's NOA the Commission compounded this deprivation as well.

### ADDENDUM TO GROUND TWO FACTS (6)

In the Commission's NOA dated 10/13/06, it clearly indicated a presumption of Petitioner's release at his two-thirds date by its language. If the Commission had followed its own procedure and intent of its NOA, a different decision would have resulted. In the intervening years, Petitioner received no serious or frequent rule violations to warrant a change in its decision. At petitioner fifteen (15) years reconsideration hearing held on 9/20/06, Petitioner's entire record was taking into account and Petitioner was continue to expiration of his sentence with a presumption of release after service of two-thirds of his sentence.

The examiner's recommendation was affirmed by the Commission and later by the National Appeals Board. All of Petitioner's subsequence S.I.H., and National Appeals affirmed the decision reach at Petitioner's fifteen (15) year reconsideration hearing. Between that hearing and presumption of release Petitioners Mandatory hearing head on July 22, 2016, Petitioner have not engage in any serious or frequent rule violation that would warrant a change in the Commissions or National Appeals Board decision to Parole Petitioner at his two-thirds date. The Commission's N.O.A. dated 10/10/16, denying Petitioner Mandatory Parole contradicts these earlier decisions and is not explainable. Petitioner has done nothing and there is no new information to warrant such a drastic departure. The N.O.A. also violates the Commissions policy of consistency.

EXHIBIT U-17

## GROUND THREE ATTACHMENT OF FACTS (1)

Petitioner is unsure of which incident as it relates to a fight the Commission is referring to in its N.O.A.

## REASONS (1)

Petitioner has known Mr. Tanner, for a little over six (6) years and for four (4) of those years Mr. Tanner, has been the examiner at two of Petitioner's hearing where he has engaged Petitioner in lengthy conversation on and off the record. In about 1989, Petitioner intervened in a fight where groups of prisoners were assaulting another prisoner, who petitioner did not know. If this is the incident the Commission is referring to in its N.O.A. and what Mr. Tanner questioned Petitioner about the Commission has the facts wrong. Petitioner did not receive an infraction for this incident.

Petitioner was credited with saving this prisoner's life. If the Commission is referring to a fight during the latter part of 1989, for which Petitioner did receive an infraction the Commission still have the facts wrong. In retaliation for stopping the assault Petitioner was the victim of an assault by these same group of prisoners, and ultimately Petitioner had to be placed in State custody for his own protection.

## GROUND FOUR ATTACHMENT OF FACTS (1)

The Commission made an error in calculating time in custody.

## REASONS (1)

There was no break in custody. The Commission credited Petitioner with his Y.C.A. time. (See: S.I.H. Dated 2/01/03).

EXHIBIT Q-18

## GROUND FIVE ATTACHMENT OF FACTS (1)

The 1984 Sentencing Reform Act was designed to correct disparities. The examiner, Mr. Tanner, made the determination that he felt Petitioner would no longer engage in any future criminal activity and was not an issue for him to discuss. Three of Petitioner's Co-Defendants have been paroled.

## REASONS (1)

§ 2.18, (Parole Manual) Granting Parole. (1) Reports and Recommendation by staff. (5) Reports of Psychiatric examination. As early as 1994, and up until 2015, after having been incarcerated for forty (40) years, both Federal and State staff have supported Petitioner's effort for Parole high lighting Petitioner's achievements. The Commission have never acknowledged or even mentioned any of these staff observations. In 1994, the Commission recommended Petitioner be transferred from U.S.P. Marion to a lesser secure facility.

Petitioner unit team complied with the Commission's recommendation and Petitioner was transferred to U.S.P. Atlanta hoping the transfer would increase Petitioner's chance at making parole. However, the Commission ignored their own recommendation, and failed to mention it in its N.O.A., as there was no change.

Petitioner held an orderly job for approximately seven years at New Jersey State Prison assisting prisoners with special needs. Petitioner did such an exemplary job the Assistant Superintendent at that time, Mr. Holmes, wrote to the B.O.P. inquiring if Petitioner could receive meritorious good time. Because Petitioner is serving a life sentence, he was not eligible to receive meritorious good time.

EXHIBIT P-19

These factual in consistencies contained in the Commission's files for review makes Petitioner's N.O.A. denying parole completely arbitrary, and not supported by the factual record. This arbitration is further compounded by the Commission's authorization to send Petitioner to a halfway house in anticipation of Petitioner being granted parole (See attachment D, Progress Notes Report. Bottom right corner), and then denying Petitioner parole.

The psychiatric examination report contained in Petitioner's parole file by Dr. Urbanik detailed Petitioner's growth in maturity and impulse control. The report was completely ignored by the Commission and never acknowledged in any of its N.O.A.

§ 2.20-6, Clinical Judgment Regarding Parole Risk. The Commissioners and examiners are not trained psychologist or psychiatrist. When John Hinkley, who committed one of the most worst crimes besides a nuclear attack, by attempting to assassinate the President of the U.S. psychologist /psychiatrist gave a clinical analysis of his mental state and parole eligibility.

The Commission deferred to their reports. However, Petitioner's psychiatric report prepared by Dr. Urbanik, noting Petitioner would be an excellent parole risk was not given the same level of deference and never acknowledged or mentioned in any of the Commission's N.O.A. Petitioner is well aware each case has its own merits. Nonetheless, the only real difference besides level of offense is that Mr. Hinkley was impaired by mental complications and to a degree so was Petitioner to the degree Petitioner was impaired by weak impulse control do to his youthfulness and level of maturity.

EXHIBIT U-20

Petitioner is the youngest of all his co-defendants. None of Petitioners co-defendants started out with life sentences. All received numerous disciplinary transfers, and all at some point incurred institution infractions for various related offenses that were rated as serious.

Nonetheless, the Commission took a chance on them and they were granted parole. Discounting Petitioner's Y.C.A. infractions, from 1984 to the present, everyone including all of Petitioner's examiners recognized and acknowledged a shift in Petitioner's behavior. Petitioner has incurred (3) three infractions in (32) thirty-two years, and for twenty-five (25) of those years Petitioner received no infractions! Petitioner has less infraction than any of his paroled Co-Defendants.

Petitioner is aware each case has its own unique characteristic, and what specifically sets petitioner's case apart from his Co-Defendants and similar situated prisoners is the Commission took a more riskier chance of granting them parole while they were still in prison without any measure of degree or indication how they would function once they were released. One of Petitioner's Co-Defendants has since returned to prison.

Petitioner's strongest argument is the Commission had a barometer to measure Petitioner's behavior once released. Petitioner was already on the streets in a halfway house waiting to see the parole board and establishing a factual record for the Commission to review which they never had an opportunity to do because no progress report was prepared. The Commission's decision to deny Petitioner his two-thirds date is such a wide disparity it is a travesty of justice and a really bad decision.

EXHIBIT UP-21

## GROUND SIX ATTACHMENT OF FACTS (1)

The Commission's stated reasons for denying Petitioner Mandatory Parole are in consistent with the **disc** of the hearing held on May 31, 2016.

## REASONS (1)

In the Commission's N.O.A., the first part of its reasons for denying Petitioners Mandatory Parole is Petitioners, "seriously and frequently violated the rules of the institutions you were confined in over the last forty (40) years". This rational and statement is utterly not true, and once more, Petitioner's institutional record and the Commissions own findings can prove this observation to not be true.

As early as 1996, at Petitioner's S.I.H., held on April 15, 1996, at U.S.P. Marion, Petitioner's staff represented Mr. Bozman, who has known Petitioner for years acknowledge he as well as staff at U.S. Marion had recognized a shift in Petitioner's behavior.

In its N.O.A. of May 10, 1998, the Commission itself, and later affirmed by the National Appeals Board, Petitioner was awarded a twelve (12) month reduction of his fifteen (15) years Reconsideration hearing for Superior Program Achievement for maintaining a clear conduct record and positive attitude.

At the time Petitioner was awarded the Superior Program Achievement Award, the Commission was fully aware Petitioner had been convicted and received a Life Sentence for the demise of another prisoner in 1976, the attempted escape from U.S.P. Marion in 1983, and the stabbing of a B.O.P. staff member in 1983.

Starting from 1983, to the present, 2016, Petitioner have incurred approximately, two (2) institutional rules violations in thirty (33) years. Neither of thee reports were

24

EXHIBIT P-22

serious. More specifically from the time Petitioner was awarded the Superior Program Achievement Award until 2016, Petitioner have incurred only one minor rule violation so the assertion Petitioner have seriously and frequently violated the rules of the institutions Petitioner were confined in over the last forty (40) years is patently not true.

The second part of the Commission's stated reason for denying Petitioner Mandatory Parole were Petitioner's many infractions starting from June 1980 until 2016, Petitioner have incurred approximately six(6) institutional rule violations over thirty six (36) years period. The remaining rule violations the Commission alluded to in its rational were incurred while Petitioner was serving his Y.C.A. sentence for which the National Appeals Board have already determined in its modified N.O.A. dated 7/31/92, could not be used against Petitioner. Furthermore, this was a Y.C.A. sentence and by law, the Commission is prohibited from mixing these reports with Petitioner's adult sentence.

The third and final rational for the Commission denying Petitioner Mandatory Parole is because of Petitioner's inability to comply with institution's rules (which Petitioner and the Commission's own files have already debunked as not true). Indicate a high probability that he will not follow society folkways and more if released. Petitioner urges the Appeal Panel to listen to the disc of Petitioner's Mandatory hearing held on May 31, 2016. The examiner, Mr. Tanner, never felt or made a determination that there was a reasonable probability that Petitioner would commit any Federal, State or local crime if release. The disc will should when Petitioner tried to address that issue the examiner indicated he did not feel Petitioner would commit or be involved in any future criminal activity, and did not want to address that aspect of the hearing.

EXHIBIT P-23

Instead, Mr. Tanner's focus was on what he believes to be Petitioner seriously or frequently violation of institution rules, which included Petitioner's Y.C.A. infractions. To raise that issue now is very unfair to Petitioner when listening to the disc it clearly was not an issue at the hearing. After ~~twelve (12)~~ Y 2 years of incarceration, and the reasons given for denying Petitioner Parole which have prove to be factually in–correct based on Petitioner's past thirty six (36) years of incarceration and the Commissions own records where Petitioner was awarded the S.P.A. Award is really sad. The stated reasons are further compounded wrong when viewed against the fact Petitioner was already in a halfway house moving towards becoming a productive member of society.

## GROUND SEVEN ATTACHMENT OF FACTS (1)

Petitioner has health complications and Petitioner was already in a Halfway House prior to appearing before the Parole Commission.

## REASONS (1)

Physically, Petitioner has a deteriorating chronic back condition that he is currently on medication for. Because of this condition Petitioner walks tilted forward with the assistance of a cane in a hunched over position. Petitioner is no longer able to run or engage in certain physical activities. Petitioner's left hand no longer open and closes properly, and at some point in the future will need further surgery.

During petitioner's long incarceration, he has lost his father, a Sister, a Brother, and just recently while at the halfway house his Mother. Petitioner's Mother anticipating his release willed Petitioner her house and a substantial amount of money. Petitioner's probation officer, Mr. Hess, also anticipating petitioner's release visited petitioner's house and talked with Petitioner's family members. While Petitioner was on furlough, he

EXHIBIT P-24

reacclimated with family members; some Petitioner was meeting for the very first time. Paroling Petitioner to his two-thirds date would not depreciate or promote disrespect for the law.  Petitioner would have served out the punitive aspect of his sentence. Petitioner has satisfied the bottom half for his guidelines of four hundred and seventy six (476) months.

Petitioner will be in continuous custody for forty-two (42) years.  The overall factual record and staff support on both Federal and State level illustrates petitioner, who is now ████ year old is not the same immature weak impulse control kid that he was at (17) years old, when he first entered the B.O.P.

Petitioner's short stay at the halfway house also illustrates this point.  Petitioner is/was engaged to be married, that may be put in jeopardy now.  Petitioner was going about his business of moving forward with his life by seeking employment, health care insurance, and establishing his identification.

Prior to Petitioner's Mother's medical complications where she needed constant around the clock care, Petitioner's family members attended his parole hearings.  They witnessed and heard the many staff accolades complementing Petitioner's rehabilitation and their support for Petitioner's parole efforts, which included the Commission's examiners determination Petitioner, is a better risk for parole than his salient factor score in the case.

After hearing, such observations Petitioner would contend the Commission's decision to deny Petitioner parole at his two-thirds date would depreciate and promote disrespect for the law because of its callousness.

After forty-two (42) years of continuous custody, testimony by staff as to

EXHIBIT O-25

Petitioner's rehabilitation, and releasing Petitioner to a halfway house where he went on furloughs and numerous passes all unescorted and without incident.

Having Petitioner to reacclimate with his family, and then for the Commission to not only deny Petitioner parole, but to continue Petitioner to the expiration of his sentence is like a cruel magic bait and switch act on Petitioner and his family. Paroling petitioner to his two third date would allow Petitioner to continue his forward progress of reintegrating into society.

Having experienced the difficulties of reintegrating into society after forty-two (42) years of incarceration Petitioner submits he will need to be placed in a halfway house. Continuing Petitioner to expiration of a life sentence that has no end date except death is extremely harsh when reviewed against petitioner's factual record and other prisoners similarly situated and defeats the purpose of the sentencing Reform Act which was designed to correct these wide disparities.

The halfway house is not a secure facility. The doors only locked from the out side to keep the public from entering unannounced. The residents could leave at any time. The doors did not lock inwardly. When Petitioner was told to report down stairs and the Marshals were waiting. Petitioner surrendered without incident, which validates the clinical psychiatric report done by Dr. Urbanik.

This Commission will never know what it feels like to be incarcerated for forty-two (42) years, but consider this, after leaving Trenton Petitioner made a commitment to himself to never be placed in cuffs again.

Then after almost a month of being in the halfway house, going on furlough, passes all unescorted, and without incident and starting to build a life to suddenly be

EXHIBIT P-26

placed back in cuffs again is an indescribable experience fraught with all kinds of emotions, and a true testament to Petitioner's level of maturity and impulse control. If the Commission allow Petitioner to be parole to his two-thirds date, he will not disappoint himself first, his family second, all the people who have supported Petitioner over the years, and lastly this Commission.

     If Petitioner is granted parole to his two-thirds date, it will still allow Petitioner some time in the half way house and once released he will still be under the jurisdiction of this Commission allowing the Commission to keep track of Petitioner progress. Petitioner will also be under very strict conditions while on parole. At the very least, petitioner should be given a new hearing to correct all the deficiencies noted in this appeal.

**Respectfully submitted,**

Dated: ~~December~~ November 28, 2016

Richard Thompson
**Richard Thompson**

c:
    **FILE**

Case 3:18-cv-04563-FLW Document 10-1 Filed 03/15/19 Page 165 of 213 PageID: 311
Case 1:17-cv-02603-RDM Document 1-3 Filed 12/06/17 Page 73 of 87

A-1

RICHARD THOMPSON, Petitioner, v. CHARLES WARREN, Respondent.
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
2012 U.S. Dist. LEXIS 147067
Civil Action No. 11-4813 (JAP)
October 12, 2012, Decided
October 12, 2012, Filed
Notice:
NOT FOR PUBLICATION
Counsel     RICHARD THOMPSON, Petitioner, Pro se, Trenton, New Jersey.
Judges: JOEL A. PISANO, United States District Judge.
Opinion
Opinion by:     JOEL A. PISANO
Opinion

PISANO, District Judge
Petitioner Richard Thompson ("Petitioner"), a federal prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. 2241, 1 on or about August 22, 2011, alleging that the United States Parole Commission ("USPC") violated Petitioner's due process rights under the Fifth Amendment in failing to set a final parole date for Petitioner at his last parole hearing and for denying Petitioner his representative of choice. The named respondent is Charles Warren, Administrator at the New Jersey State Prison, where Petitioner was, and is presently, confined at the time he filed this petition. 2 On March 14, 2012, the United States Attorney answered the petition, providing the relevant record, on behalf of the respondent and the USPC (hereinafter "the Government"). Petitioner filed a reply on or about April 9, 2012.
For the reasons as set forth below, this petition will be denied.
I. BACKGROUND
In 1974, Petitioner was serving an eight-year term under the Youth Corrections Act for rape. While serving that sentence, Petitioner killed another inmate and was convicted for that murder, by judgment of conviction entered on June 27, 1977 before the United States District Court for the Central District of California. Petitioner was sentenced to life in prison on the murder conviction. On June 4, 1980, Petitioner was released from his Youth Corrections Act sentence to serve his consecutive life sentence. (Certification of Sharon Gervasoni ("Gervasoni Cert."). Exhibits 1 and 2).
While incarcerated on his life sentence, Petitioner committed other offenses for which he was sentenced. For instance, on August 2, 1985, Petitioner was sentenced by the United States District Court for the Southern District of

Illinois to five years for attempted escape and a ten-year consecutive term for assaulting a federal corrections officer. (Gervasoni Cert., Ex. 1). At that time, Petitioner's sentence made him eligible for parole consideration beginning June 3, 1980. 3 (Id., Ex. 1 at pg. 3).
In 1992, the USPC conducted its initial parole hearing for Petitioner. The USPC denied parole and ordered that Petitioner serve to a 15-year reconsideration hearing in February 2007. (Id., Ex. 3). Petitioner appealed that decision. On administrative appeal, the full Commission made the following modifications on its initial determination:
The Full Commission has reviewed your appeal and has modified your salient factor score, time in custody, and guidelines. The Full Commission finds that you received a mandatory parole on a Youth Corrections Act sentence on June 4, 1980 to the consecutive adult sentences. Consequently, as of July 1992 you have been in custody on your adult sentences only from June 1980 for a total of 145 months. All incident reports you received prior to June 1980 are not countable towards your current aggregate guidelines. The Full Commission finds that your current offense behavior is a category eight murder offense. While serving this commitment you have suffered one attempted escape which requires guidelines of 8-16 months. You have also committed four separate category three new criminal conduct in a prison facility which required an additional 48-64 months to be added to your original guideline range. You have also twice committed category eight attempted murder behavior which requires 240 plus months to be added to your original guideline range. Your total aggregate guideline range is 476 plus months.(Gervasoni Cert., Ex. 4).
Thereafter, in 1994, 1996, 1998, 2001 and 2003, Petitioner received his statutory interim parole hearings. At each occasion, the USPC ordered no change in the prior order that Petitioner serve to a 15-year reconsideration hearing. (Id., Exs. 5-9). On September 20, 2006, the USPC conducted Petitioner's 15-year reconsideration hearing de novo. (Id., Ex. 10 - hearing summary). After the hearing, the USPC ordered that Petitioner serve to the expiration of his sentence. In particular, the USPC decision stated:
After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating case factors. You are a more serious risk than indicated by the guidelines. While serving an 8-year term for rape, you murdered an inmate, committed an attempted murder, attempted to escape from custody, and assaulted a staff member by stabbing him 17 times. In addition, you incurred other disciplinary infractions which include 3 incidents of new criminal conduct involving Assaults and

its expiration, a date that has been extended several times, the Parole Commission must set a release date which, of course, could be scheduled for long in the future. See 28 C.F.R. 2.64(b)(1996)("The release dates required by section 235(b)(3) need not be set any earlier than the time required to allow an administrative appeal within the ten-year period, i.e., three to six months before the end of that period."); Lightsey v. Kastner, 846 F.2d 329, 332 (5th Cir. 1988).Furnari v. United States Parole Commission, 531 F.3d 241, 248 (3d Cir. 2008).

Congress has repeatedly extended the USPC since the SRA was enacted. Section 235(b)(1)((A), 98 Stat. 2032, kept the USPC in existence for five years after the November 1, 1987 effective date of the SRA, until October 31, 1992, to allow the USPC to process cases of prisoners convicted of crimes committed before the effective date of the SRA, who would still be incarcerated after that date. See Romano v. Luther, 816 F.2d 832 (2d Cir. 1987). This initial five-year extension was subsequently extended by Congress numerous times to 26 years. In fact, relevant here, on August 2, 2008, Congress extended the USPC for three more years, until October 31, 2011, by the United States Parole Commission Extension Act of 2008. Pub.L. 110-312, 122 Stat. 3013 (Aug. 12, 2008). Most recently, on October 21, 2011, Congress extended the USPC for two additional years, until October 31, 2013, by the United States Parole Commission Extension Act of 2011. Pub.L. 112-44, 125 Stat. 552 (Oct. 21, 2011).

The Government contends that, because Congress has extended the existence of the USPC until October 31, 2013, it is not in its final "winding up" period, and thus, Section 235(b)(3) does not require that the USPC set a final release date for Petitioner.

This Court agrees. On this point, the Third Circuit's opinion in Furnari is instructive. As the Third Circuit stated:

... inasmuch as section 235(b)(3) still requires that the Parole Commission before its expiration set dates for release early enough for appeals for prisoners still within its jurisdiction one day before its expiration, as of now no later than three to six months prior to October 31, 2008, it should set release dates for prisoners who will be within its jurisdiction one day before that date. See United States ex rel. D'Agostino v. Keohane, 877 F.2d 1167, 1172 (3d Cir. 1989). Nevertheless, the Parole Commission does not have to act before the expiration of the three- to six-month period, and if it does choose to act before or during the three- to six-month period, it is free later to set release dates beyond October 31, 2008. See id.

Here, on July 8, 2005, the Parole Commission denied Furnari parole and adhered to the rehearing date it had set for 2011 and thus it cannot be said that it set a release date in the three- to six-month period before October 31, 2005,

when, prior to its latest extension, it was scheduled to expire. Though the Parole Commission's failure to set a release date might have been problematical, Congress eliminated, or at least postponed, the problem when on September 29, 2005, it extended the life of the Parole Commission to October 31, 2008, when it now will expire unless, as the Government contemplates will happen, Congress extends its life.Furnari, 531 F.3d at 248-49. Here, the USPC denied Petitioner parole, deciding to continue Petitioner' confinement until the expiration of his sentence in 2017. It has scheduled a statutory interim hearing for Petitioner in March 2013. Thus, although the USPC did not set a release date in the three to six months before the then-scheduled expiration date of October 31, 2011, the USPC's "failure" to do so is not actionable at this time because Congress has extended the life of the USPC to October 31, 2013. See Furnari, supra. Petitioner's next rehearing date is scheduled for March 2013, six months before the statutory expiration of the USPC on October 31, 2013. Accordingly, this Court will dismiss Petitioner's action without prejudice to Petitioner filing a new habeas action at the end of the three-to-six month period prior to October 31, 2013, if the USPC by that time has not set a release date for him. See Furnari, 531 F.3d at 249.

B. Representative Claim

Petitioner next argues that he was denied due process when his request to allow his chaplain to represent him at his parole hearing was denied. This claim will be denied for lack of merit.

Petitioner does not have a constitutional right to a representative at a parole hearing. The Supreme Court has held that a parole statute might be so drafted as to entitle a prisoner "to some measure of constitutional protection," but the Court rejected the suggestion that parole hearings should be full-scale adversary hearings. Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 12, 14, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Instead, the Supreme Court found that due process requires simply that the inmate has an opportunity to be heard (a parole hearing) and a statement of the reasons for denial of parole. Id. at 16. See also Toolasprahad v. Grondolsky, 570 F. Supp. 2d 610, 619 (D.N.J. 2008).

Moreover, to the extent that the federal parole statute does permit an inmate to be represented at his parole hearing under 18 U.S.C. 4208(d)(2), Petitioner's inability to have his chaplain be his representative at his statutory interim hearing did not rise to the level of a unconstitutional due process violation. First, it was not the USPC, but rather the state prison administration, that denied Petitioner's chaplain to represent Petitioner at his federal parole hearing. Second, the USPC offered Petitioner the opportunity to postpone his hearing to try to work out a

3

...ctions under ...shall be gov-...policies pro-...

2, Mar. 15, ...ended Pub.L. ...13, 1982, 96 ...§ 58(a), Nov.

**Authority To ...Commission-**

...ne 9, 1976, 41

...ty vested in me ...United States ...)(5) of title 18, ...enacted by the ...Reorganization ...and as President ...America, it is ...ttorney General ...nt's designee for ...a designations of ...nited States Pa-...e on the National ...chairman of the ...egional Commis-

**RALD R. FORD**

**bility for release**

...ed and serving a ...of more than one ...be eligible for re-...erving one-third of ...r after serving ten ...or of a sentence of ...cept to the extent ...law.

...a judgment of con-...ving jurisdiction to ...n in its opinion the ...best interest of the ...he defendant be sen-...ent for a term ex-...ay (1) designate in ...isonment imposed a ...come eligible for pa-...ay be less than but ...han one-third of the ...imposed by the court, ...ay fix the maximum ...nment to be served in ...urt may specify that ...released on parole at

174

such time as the Commission may deter-mine.

(c) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commit-ment shall be deemed to be for the maxi-mum sentence of imprisonment pre-scribed by law, for a study as described in subsection (d) of this section. The results of such study, together with any recom-mendations which the Director of the Bu-reau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiv-ing such reports and recommendations, the court may in its discretion: (1) place the offender on probation as authorized by section 3651; or (2) affirm the sen-tence of imprisonment originally im-posed, or reduce the sentence of impris-onment, and commit the offender under any applicable provision of law. The term of the sentence shall run from the date of original commitment under this section.

(d) Upon commitment of a prisoner sentenced to imprisonment under the provisions of subsection (a) or (b) of this section, the Director, under such regula-tions as the Attorney General may pre-scribe, shall cause a complete study to be made of the prisoner and shall furnish the Commission a summary report to-gether with any recommendations which in his opinion would be helpful in deter-mining the suitability of the prisoner for parole. This report may include but shall not be limited to data regarding the pris-oner's previous delinquency or criminal experience, pertinent circumstances of his social background, his capabilities, his mental and physical health, and such other factors as may be considered perti-nent. The Commission may make such other investigation as it may deem neces-sary.

(e) Upon request of the Commission it shall be the duty of the various police officers and government bureaus and agencies to furnish the Commission infor-mation available to such officers, bureaus, or agency, concerning any eligible prison-er or parolee and whenever not incompa-tible with the public interest, their views

and recommendation with respect to any matter within the jurisdiction of the Com-mission.

(f) Any prisoner sentenced to imprison-ment for a term or terms of not less than six months but not more than one year shall be released at the expiration of such sentence less good time deductions pro-vided by law, unless the court which im-posed sentence, shall, at the time of sen-tencing provide for the prisoner's release as if on parole after service of one-third of such term or terms notwithstanding the provisions of section 4164. This sub-section shall not prevent delivery of any person released on parole to the authori-ties of any State otherwise entitled to his custody.

(g) At any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defen-dant has served. The court shall have jurisdiction to act upon the application at any time and no hearing shall be re-quired.

(h) Nothing in this chapter shall be construed to provide that any prisoner shall be eligible for release on parole if such prisoner is ineligible for such re-lease under any other provision of law.

(Added Pub.L. 94–233, § 2, Mar. 15, 1976, 90 Stat. 222.)

**§ 4206.   Parole determination criteria**

(a) If an eligible prisoner has substan-tially observed the rules of the institution or institutions to which he has been con-fined, and if the Commission, upon con-sideration of the nature and circum-stances of the offense and the history and characteristics of the prisoner, deter-mines:

(1) that release would not depreciate the seriousness of his offense or pro-mote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commis-sion pursuant to section 4203(a)(1), such prisoner shall be released.

(b) The Commission shall furnish the prisoner with a written notice of its deter-mination not later than twenty-one days, excluding holidays, after the date of the parole determination proceeding. If pa-role is denied such notice shall

state with particularity the reasons for such denial.

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided,* That the prisoner is furnished written notice stat-ing with particularity the reasons for its determination, including a summary of the information relied upon.

(d) Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be re-leased on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each con-secutive term or terms of more than for-ty-five years including any life term, whichever is earlier: *Provided, however,* That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will com-mit any Federal, State, or local crime. 

(Added Pub.L. 94–233, § 2, Mar. 15, 1976, 90 Stat. 223.)

**§ 4207.   Information considered**

In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:

(1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;

(2) official reports of the prisoner's prior criminal record, including a re-port or record of earlier probation and parole experiences;

(3) presentence investigation re-ports;

(4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge;

(5) [1] a statement, which may be pre-sented orally or otherwise, by any vic-tim of the offense for which the prison-er is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim; and

(5) [1] reports of physical, mental, or psychiatric examination of the offend-er.

175

COIH2/5

BATCH: 10 of 13

DEPARTMENT OF CORRECTIONS

NEW JERSEY STATE PRISON

Page 10 of 1

OIRNREC

R E C L A S S I F I C A T I O N     I N S T R U M E N T

Name:   THOMPSON, RICHARD

SBI#:        0OS0158535        INM#:        568688

Committee:   CLASSIFICATION COMMITEE

Entered By:  COITA35

Age:   59

Institution:   NJSP-WEST-2 RIGHT-FLATS-CELL 33

Approval Date:   09/21/2016

| Questions | Score |
|---|---|
| Severity of Current Offense...................... | 6 |
| Prior Assaultive Off. History-Last 10yr........... | 0 |
| Escape History-Last 5yr incarceration............. | 0 |
| History of Institutional Viol.-Last 5yr........... | 0 |
| Number of Disciplinary Reports.................... | -2 |
| Most Severe Disciplinary-Last 12mth............... | 0 |
| Age.............................................. | -2 |
| Program Participation-Last 12 mth................. | 0 |
| Total Score | 2 |

Custody Status At Time Of Review: MAXIMUM        Custody Status Assigned: MAXIMUM

Institution Assigned:

Override:        K1 OVRD HIGH/FIELD ACCOUNT OF OFFENSE

Override Comments:

--------------------------------------------------------------------

--------------------------------------------------------------------

Signature/Title _____ Date _____

PSI <>          CCH <>          PROMIS GAVEL <> III (TRIPLE I) <> OBCIS <>

NOTE: 6 represents current offense. -2 is taken off
because I have no infractions, and another -2
is taken off for my age leaving me a total score
of 2. I'm actually a minimum custody level
prisoner, but because of my initial charge
(current offense) I have an override. The
B.O.P. did not do a progress report.

09/19/2016 17:48
COIFLET
Page 6 of 7
OIRPRGNT

State of New Jersey
Department of Corrections
Inmate Management
PROGRESS NOTES REPORT

NEW JERSEY STATE PRISON
BATCH:   168 OF 187

| INM# | SBI# | Last Name | First Name | Init | Sfx | Location | Status |
|---|---|---|---|---|---|---|---|
| 568888 | 0OSO1S8535 | THOMPSON | RICHARD | | | NJSP-WEST-2 RIGHT-2 TIER-CELL 123; | MAX |

| Date | Seg# | Type | Result | Note | Date | Case Action |
|---|---|---|---|---|---|---|
| | | | | | | TO A GENERAL POPULATION HOUSING UNIT HERE AT NJSP. SHOULD INMATE THOMPSON ENGAGE IN A VIOLENT BEHAVIOR AS IN THE PAST THEN IMMEDIATE CONSIDERATION WILL BE GIVEN TO MCU PLACEMENT. JJP |
| 02/20/2007 | 12 | GENERAL NOTES | | MCU ROUTINE REVIEW 2/20/07 (CONT) | 06/02/2015 | MCURC CHAIR MAN MR. KENDELL /JP |
| 02/23/2007 | 13 | ORIENTATION | | Institutional Orientation | | Institutional Orientation completed on February 23, 2007 |
| 01/15/2008 | 14 | GENERAL NOTES | | progress report for the period 1/1/07 - 1/1/08 sent to the BOP | | |
| 07/10/2008 | 15 | GENERAL NOTES | | progress report sent to BOP for the period of 12-07 - 7-08 | | |
| 01/06/2009 | 16 | GENERAL NOTES | | Progress notes sent for period 7/1/08 - 12/31/08. | | |
| 02/26/2009 | 17 | GENERAL NOTES | APPROVED | US PAROLE HEARING | | IIM's Statuory Interim Hearing (SIH) by the US Parole Commission was conducted on 02/26/2009. |
| 02/26/2009 | 18 | GENERAL NOTES | APPROVED | BOP - SENTENCING DATA | | Rec'd copy of the Sentence Monitoring Computation Data with regards to IIM Sentence structure.  Indictments for Murder, Attempted Escape & Assault on Federal Correctional Officer. |
| 07/06/2009 | 19 | GENERAL NOTES | | Progress notes sent for period 1/1/09 - 6/30/09. | | |
| 01/05/2010 | 20 | GENERAL NOTES | | Progress notes sent for period 7/1/09 - 12/31/09. | | |
| 06/02/2010 | 21 | GENERAL NOTES | | Prog. notes sent for period 12/1/09 - 5/31/10. | | |
| 06/21/2010 | 22 | GENERAL NOTES | | Prog. notes sent for period 1/1/10 - 6/20/10. | | |
| 01/24/2011 | 23 | GENERAL NOTES | | Prog. notes sent for period 7/1/10 - 12/31/10. | | |
| 02/03/2011 | 24 | GENERAL NOTES | | consideration for an inter-institutional transfer should not be considered without the consent of the BOF | | |
| 03/04/2011 | 25 | GENERAL NOTES | | | | On 3/1/2011 IIM provided with a copy of the notice from Federal Bureau of Prisons - USPC Hearing Docket scheduled for Monday, 3/7/2011. |
| 07/14/2011 | 26 | GENERAL NOTES | | Prog. notes sent for period 1/1/11 - 6/30/11. | | |
| 11/19/2012 | 29 | GENERAL NOTES | | prog report to the BOP for the period 5/12 - present | | |
| 05/29/2013 | 31 | GENERAL NOTES | | prog report sent to BOP for this period 1/13 - 5/13 | | |
| 12/03/2013 | 33 | GENERAL NOTES | | prog report sent to the BOP for the period 6/13 - 12/13 | | |
| 06/11/2014 | 34 | GENERAL NOTES | | prog report sent to BOP for the period 12/13 - 6/14 | | |
| 10/15/2015 | 35 | GENERAL NOTES | | FEDERAL BUREAU OF PRISONS | | BOP conducted the yearly in-person interview with IIM Thompson |
| 11/23/2015 | 36 | GENERAL NOTES | | prog report sent to BOP for the period 5/15-11/15 | | |
| 05/26/2016 | 38 | GENERAL NOTES | APPROVED | FBOP RELEASE | | Effective: 5/26/2016 - The U.S. Parole Commission has authorized IIM Thompson's furlough to Volunteers of America in Baltimore Maryland, in anticipation of his Parole. |
| 09/16/2016 | 39 | ORIENTATION | COMPLETED | ORENT. | | On 9/16/2016 Orientation Completion. |

Case Notes

EX. V

Case 1:17-cv-02603-RDM Document 11-1 Filed 12/06/17 Page 75 of 87

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

U.S. Parole Commission
Appeal Unit
90 K Street N.E 3rd Fl.
Washington, D.c 20530

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by ( Printed Name ) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☑ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label) 7005 3110 0003 3941 6894

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

Richard Thompson #568688
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

April 13, 2017

U.S. Parole Commission
Correspondent Specialist
90 K Street, N.E. 3rd Floor
Washington, D.C. 20530

  Re: Parole Tapes, CD's, and any
   and all Relevant Information
  Request.

Dear Correspondent Specialist:

  Please be advised I am a federal
prisoner being housed in the New
Jersey Department of Corrections
at New Jersey State Prison pursuant
to the Interstate Compact Agreement
Act. My federal registration number
is: 20080-101.

  This request is for your office to
send me at the above address; the
tape or CD preliminary work
sheets, evaluation reports, second
examiner recommendation report
notes, and any and all relevant
material related to my mandatory
parole hearing held at the Kent
County Detention Center in Chester
town, Maryland on July 22, 2016 by
United States Parole Commission

EX. W2

examiner Mark Tanner.

Enclosed along with this request is
a notarized affidavit.

Thank you in advance for your
time and consideration to this
matter.

Sincerely,
R. Thompson

<<: File

EX. W3

STATE OF NEW JERSEY )
                     ) ss:
COUNTY OF MERCER     )

### AFFIDAVIT OF RICHARD THOMPSON

1. I declare under the penalty of perjury the following to be true and correct.

2. I am the above affiant.

3. I request the tape or CD, and any and all relevant materials related to my mandatory parole hearing held at the kent County Detention Center in Chestertown, Maryland on July 22, 2016, by United States Parole Commission examiner Mark Tanner.

4. My federal registration number is: 20080-101.

_Richard Thompson_
RICHARD THOMPSON

Subscribed to and sworn before me

On this 12 day of April, 2017

_Zisa Levine_
NOTRARY PUBLIC

Ex. W.4

STATE OF NEW JERSEY )
                     ) ss:
COUNTY OF MERCER     )

## AFFIDAVIT OF RICHARD THOMPSON

I, Richard Thompson, the affiant, do hereby declare under the penalty of perjury that the below statements are freely given with out any form of coercion.

1. I, Richard Thompson am the above affiant.

2. On or about May 31, 2016, I appeared before the United States Parole Commission (hereafter U.S.P.C.) for a mandatory hearing.

3. On or about August 10, 2016, the U.S.P.C. issued it's Notice of Action (hereafter N.O.A.) denying me mandatory parole.

4. On or about December 6, 2016, I filed an appeal to the National Appeals Board challenging the U.S.P.C., N.O.A.

5. I hereby authorize David Thompson, who is the affiant's brother, to pick up my N.O.A. from the National Appeals unit at 90 K. Street, N.E. 3rd Floor, Washington, D.C. 20530.

-1-

Ex W5

Subscribed and sworn before me
on this _12_ day of ~~March~~ April, 2017.

Zisa Levine
NOTARY PUBLIC

Richard Thompson
AFFIANT

[Notary seal: ZISA LEVINE / My Comm. Exp. 02-09-2022 / NOTARY PUBLIC / No. 50054145 / NEW JERSEY]

- 2 -

EXHIBIT X

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature _Emly Aaron_    ☐ Agent<br>**X**              ☐ Addressee<br>B. Received by *(Printed Name)* APR 24 2017   C. Date of Delivery |
| 1. Article Addressed to:<br><br>U.S. Parole Commission<br>Correspondent Specialist<br>90 K street N.E. 3#F)<br>Washington D.C.<br>         20530 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered      ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*    ☐ Yes |
| 2. Article Number : 7065 3110 0003 3941 7651<br>    *(Transfer from service label)* | |

PS Form **3811**, February 2004     Domestic Return Receipt     102595-02-M-1540

EXHIBIT 24

CO-30 A NEW JERSEY STATE PRISON   Rev. 12/24/14
**POSTAGE REMIT**

DATE: 6/13/17   LOCATION: 2-L-48

SBI NUMBER: 000S0158535

INMATE NAME: Richard Thompson

INMATE SIGNATURE: Richard Thompson

TO: BUSINESS MANAGER          DATE MAILED: _____

| (✔) | Check Appropriate Box (s) | | |
|---|---|---|---|
| ✔ | Legal Postage | $ | 7.24 |
| | Certified Cert. # | | |
| | Return Receipt Requested | | |
| | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | | |
| | Regular Postage   or   UPS   Property | | |
| | Additional Insurance Amount $ | | |
| | No Postage Inter Office Mail | | |
| | Total Postage and Fees | $ | 7.24 |

SENT TO: U.S.P Commission Appicut

ADDRESS: PRINT 90 k Street N.E. 3rd Fl.

Washington D.C. 20530

WITNESS: _____          APPROVED BY
SIGNATURE: PRINT

CHECK# _____     DATE: 6/13

EXHIBIT Z

CO-30 A     NEW JERSEY STATE PRISON    Rev. 12/24/14
**POSTAGE REMIT**

DATE: 7/23/17   LOCATION: 2-L-48

SBI NUMBER: 00S0158535

INMATE NAME: Richard Thompson

INMATE SIGNATURE: Richard Thompson

TO: BUSINESS MANAGER     DATE MAILED: _____

Check Appropriate Box (s)

| ✔ | | $ |
|---|---|---|
| | Legal Postage | $ |
| | Certified Cert. # | |
| | Return Receipt Requested | |
| | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | |
| ✓ | Regular Postage or UPS Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| | Total Postage and Fees | $ |

SENT TO: Earl Thompson

ADDRESS: PRINT 2514 S. Kenwood St.
Arlington, VA 22206

WITNESS: PRINT _____

SIGNATURE: _____     APPROVED BY:

CHECK#        DATE:



**U.S. Department of Justice**

Federal Bureau of Prisons

---

*Office of the Director*

*Washington, DC 20534*

March 3, 2011

RECEIVED

U.S. Par...

Isaac Fulwood, Jr.
Chairman
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815

RE:  Thompson, Richard L.
     Register Number: 20080-101

Dear Chairman Fulwood:

This is in response to your February 28, 2011, letter providing
the Bureau of Prisons (Bureau) the opportunity to submit a statement
in conjunction with the March 7, 2011, Statutory Interim Hearing for
inmate Richard Thompson.

The Bureau opposes the United States Parole Commission granting
parole to inmate Thompson because his current aggregated Life term
is based on three separate convictions for serious offenses committed
while in our custody.  Specifically, while serving the incarceration
portion of his original sentence, he murdered an inmate and received
a consecutive Life term.  While serving that Life term, he was
subsequently convicted for an attempted escape and received a
five-year concurrent term.  The third offense related to his current
term was for the assault of a correctional officer.  The assault,
which involved the officer being stabbed 17 times, resulted in the
Court's imposition of a ten-year sentence which "[…]shall run
consecutive to all state or federal sentences that Defendant is
presently serving or previously imposed."

Approving inmate Thompson for parole would serve to depreciate
the seriousness of his sentence for the murder he committed while

incarcerated and the subsequently imposed consecutive sentence for
the stabbing of a correctional officer. Thank you for the
opportunity to comment.

Sincerely,

Harley G. Lappin
Director

USPC000113



**U.S. Department of Justice**

Federal Bureau of Prisons

---

*Office of the Director*                      *Washington, DC 20534*

April 9, 2013

Isaac Fulwood, Jr.
Chairman
United States Parole Commission
90 K Street NE
Washington, DC 20530

RE: Thompson, Richard
Register Number: 20080-101

Dear Chairman Fulwood:

This is in response to your March 20, 2013, letter providing the Bureau of Prisons (Bureau) the opportunity to submit a statement regarding the potential parole of inmate Richard Thompson.

The Bureau opposes the United States Parole Commission granting parole to inmate Thompson and believes he should serve the maximum term of his sentence. Inmate Thompson was responsible for an assault on Bureau staff member Richard Haynes, on July 17, 1983. Inmate Thompson stabbed Mr. Haynes seventeen times. Previous to this incident, inmate Thompson was involved in the murder of another inmate at the United States Penitentiary, Lompoc, California.

Bureau staff members, like all law enforcement officers, are exposed to risks while performing their duties protecting staff, the community, and inmates. It is particularly heinous when law enforcement officers are deliberately targeted while performing their duties. Inmate Thompson's crimes demonstrate a callous disregard for the rule of law and for human life.

Approving inmate Thompson for parole would be an affront to the service of Richard Haynes and the men and women of the Bureau. Thank you for the opportunity to comment.

Sincerely,

Charles E. Samuels, Jr.
Director

USPC000115

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLOMBIA

RICHARD THOMPSON,

Plaintiff,

V.

ISSAC FULWOOD, JR., Chairman, et. al,
Defendants.

*CIVIL ACTION*

NO:

**CERTIFICATION OF SERVICE**

I, Richard Thompson, Plaintiff, pro se, do hereby declare and certify that I have

placed for mailing an original and (1) copy to the Clerk of the Court, and eleven (11)

copies for each defendant of plaintiff's complaint, Exhibits A1 to A3, B1 to B5, C1 to

C2, D, E1 to E7, F1 to F2, G1 to G2, H, I, J, K, L, M, N, O, P1 to P2, Q, R, S, T1 to T7,

U1 to U26, V, W1 to W5, X to X, Y, Z, AA1 to AA3, and Certificate of Service to be

mailed to: District of Colombia, United States Courthouse, 3rd and Constitution Avenue,

N.W. Washington, D.C. 2001, on this 25th day of November, 2017, by the prison mailing

system by placing the above said document in the hands of the officer in charge of the

mail on unit 2-Left for which a postage remit was submitted for first class mailing and

signed by the unit officer whose name appear on the postage remit.

**Respectfully submitted,**

*Richard Thompson*

**Richard Thompson, (Pro-Se)**

**Dated: November 25, 2017**

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Richard Thompson #568688 SBI#OOS0158535 | Issac Fulwood, Jr., et. al |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625-0861

ATTORNEYS (IF KNOWN)

Case: 1:17-cv-02603
Assigned To : Moss, Randolph D.
Assign. Date : 12/4/2017
Description: Pro Se Gen. Civil

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III. CITI... PLAINTIF...

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)** OR **◉ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 27 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

Other Statutes
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/* *2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K. *Labor/ERISA* *(non-employment)* | ○ L. *Other Civil Rights* *(non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. 1983

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒  NO ☐ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐  NO ☐ | If yes, please complete related case form |
| DATE: ___12/4/17___ | SIGNATURE OF ATTORNEY OF RECORD | | NCD |

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI. CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

Richard Thompson
#568688/SBI#OSO158535
New Jersey State Prison
Post Office Box 861
Trenton, N.J. 08625-0861

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLOMBIA

| | |
|---|---|
| **RICHARD THOMPSON,** | *CIVIL ACTION* |
| Plaintiff, | NO: 1:17-CV-02603 (RDM) |
| **V.** | **MOTION FOR PRELIMINARY EMERGENCY INJUNCTION** |
| **ISSAC FULWOOD, JR. etal.** | |
| Defendant. | |

TO: Clerk of the Court
For the District of Colombia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

    Please find enclosed for filing along with this cover letter Plaintiff's;

    1. Motion for Preliminary Emergency Injunction,
    2. Certificate of service,
    3. Memorandum of Law In Support for Preliminary Emergency Injunction,,
    4. Attached Separately Exhibits,
    5. Certificate of Service.

In the above referenced matter. Thank you for your attention.

                                       **Respectfully submitted,**

**Dated: 7 - 8 - 2018**

                                       *Richard Thompson*
                                   **Richard Thompson, (Pro-Se)**

RECEIVED
Mail Room

JUL 11 2018

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Exhibit 24

Richard Thompson
#568688/SBI#OSO158535
New Jersey State Prison
Post Office Box 861
Trenton, N.J. 08625-0861

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLOMBIA

| RICHARD THOMPSON, | *CIVIL ACTION* |
|---|---|
| Plaintiff, | NO: 1:17-CV-02603 (RDM) |
| V. | **MOTION FOR PRELIMINARY EMERGENCY INJUNCTION** |
| ISSAC FULWOOD, JR. etal. | |
| Defendant. | |

Richard Thompson, Plaintiff, Pro-Se, moves before this Court pursuant to

F.R.C.P. 65, for a Preliminary Injunction for the following reasons:

1. Plaintiff, filed a Bivens Actions Requesting the Court to;

   A. Adjudge and declare the practices, acts, and failure to act

   by the Defendants Violates Bivers, and the Constitution of

   the United States and for these Violations Plaintiff seeks

   compensatory damages in the amount of 31, 200 from each

   Defendant. On 12/04/17.

   B. Adjudge and declare Defendants actions as set forth in the

   Complaint and paragraphs demonstrates they maliciously,

   arbitrarily, capriciously, and intentionally deprived Plaintiff

   of his Due Process Rights by their unauthorized actions and

1

in actions. Consequently, Plaintiff is <u>seeking</u> and award for punitive damages in the amount of 10,000.000. (Ten Million) dollars from each defendant which hopefully is sufficient amount to deter defendants from continuing <u>in such practices in the future.</u>

C. A permanent injunction ordering defendants, their agents, official employees, and all persons acting in concert with them <u>to take</u> all necessary actions to: (1) Correct the violations herein the complaint by reinstating Plaintiff release date immediately, returning Plaintiff back to the halfway-house, and any other amenities this Court deem just and fair.

D. Appoint Counsel.

2. On 3/15/18, proof of service is on Court file as all Defendants having been served.

3. On or about June 27, 1977, Plaintiff, was sentenced by the U.S. District Court for the District of Central California to Life for violating <u>18 U.S.C. 1111.</u>

4. On or about November of 1982, Plaintiff, was sentence by the U.S. District Court for the Southern District of Illinois to a five (5) year concurrent sentence for attempted escape.

5. On or about May 18, 1983, Plaintiff, was sentence by the U.S. District Court for the Southern District of Illinois to a ten (10) year consecutive sentence for violating <u>18 U.S.C. 111.</u>

6. Plaintiff, received his Life sentence and ten (10) year consecutive sentence under the old law before the Sentencing Reform Act. Under Plaintiff's old law life sentence he had a thirty (30) years statutory two-thirds mandatory release date for 2010. However, because Plaintiff's ten (10) years consecutive sentence was aggregated into his life sentence Plaintiff's statutory two-thirds mandatory release date was established at February 3, 2017.

7. On April 29, 1992, Plaintiff, appeared before the United State Parole Commission (hereafter, U.S.P.C.) for his initial Parole hearing, and was given a fifteen (15) year reconsideration hearing for February of 2007.

8. Thereafter, pursuant to 18 U.S.C. 4208(h). Plaintiff, received a Statutory Interim Hearing (hereafter S.I.H.) every two (2) years.

9. From 1992 to 1996, Plaintiff, appeared before the U.S.P.C. for his S.I.H. Where Plaintiff, was continued to his fifteen (15) year reconsideration hearing. In 1998, Plaintiff, appeared before the U.S.P.C. for his S.I.H., where the examiner recommended a two (2) year reduction from Plaintiff, fifteen (15) year reconsideration hearing for Superior Program Achievement for maintaining clear conduct (15 years) and a positive attitude. However, the U.S.P.C. would not agree with the examiner recommendation, and instead, reduced Plaintiff's fifteen (15) year reconsideration hearing by one (1) year.

10. From 1998, to 2014, Plaintiff, appeared before the U.S.P.C. for his S.I.H. where he was continued to his fifteen (15) year reconsideration hearing.

11. On September 20, 2006, Plaintiff, appeared before U.S.P.C. examiner Mr. Howard for his Fifteen (15) year reconsideration hearing where Plaintiff's entire criminal history including Plaintiff, institutional prison history was evaluated. At the conclusion

of that hearing Plaintiff, was recommended to continue to his statutory two-thirds mandatory release date with specific condition of parole.

12. On October 13, 2006, the U.S.P.C. adopted the examiner's recommendation and Plaintiff, was continued to his statutory two-thirds mandatory release date with specific conditions of parole.

13. Plaintiff, appealed the U.S.P.C. decision to the National Appeal's Board, and on January 19, 2007, the National Appeals Board affirmed the U.S.P.C. decision creating an expectation of release at Plaintiff's statutory two-thirds mandatory release date. All decisions by the National Appeals Board are final and binding on the U.S.P.C.

14. From, 2006 to 2010. Plaintiff, appeared before the U.S.P.C. for his S.I.H. where Plaintiff, was continued to his statutory mandatory release date.

15. On May 7, 2013, Plaintiff, appeared before U.S.P.C. examiner Mr. Tanner, for his S.I.H. where Plaintiff, was continued to his statutory mandatory release date. Also, at the hearing, and for the very first time Plaintiff, was made aware the Bureau of Prisons (hereafter B.O.P.) was contacted about Plaintiff's parole suitability which they opposed. The U.S.P.C. had no authority to contact the B.O.P. the U.S.P.C never revealed the contents of the letter or summarized it, or who signed off on the letter and Plaintiff, was never given an opportunity to respond to the letter.

16. On August 4, 2015, Plaintiff, appeared before the U.S.P.C. for his S.I.H., where he was continued to release at his two-thirds date. On August 17, 2015, the U.S.P.C. affirmed the examiner's recommendation in its Notice of Action.

17. On May 23, 2016, Plaintiff, was released to Volunteers of America Halfway House in Baltimore MD, in anticipation of his parole release at February 3, 2017.

18. On May 31, 2006, the B.O.P. Community Correction Office in Brooklyn, New York received a N.O.A. from the U.S.P.C. scheduling Plaintiff, for a mandatory parole hearing on the next available docket.

19. On or about June 9, 2016, Plaintiff, was taken into custody by the U.S. Marshall Service and taken to a County jail.

20. On or about July 22, 2016, while at the Kent County jail located on the Eastern Shore of Maryland early in the morning Plaintiff, appeared before U.S.P.C. examiner Mr. Turner where he was given a mandatory parole hearing. At the conclusion of the hearing Plaintiff, was suddenly and without warning continued to the expiration of his life sentence. Plaintiff, was subsequently transferred back to New Jersey State Prison.

21. On September 9, 2016, Plaintiff, arrived back at NJSP. After months of trying to get an official copy of his N.O.A. from the U.S.P.C. to no avail. Plaintiff, filed an appeal on November 28, 2016, challenging the U.S.P.C. decision to continue him to the expiration of his sentence.

22. On January 31, 2016, three (3) days before Plaintiff, mandatory release date. Plaintiff, finally received an official copy of his N.O.A. denying him Mandatory Parole.

23. After seven (7) months of not hearing from the U.S.P.C. Plaintiff's Brother, Earl Thompson, went to the parole office building on or about June 8, 2017, and inquired about the status of Plaintiff, appeal. Plaintiff's Brother was told the U.S.P.C. appeals unit never received Plaintiff's appeal! Plaintiff's appeal was mailed to the U.S.P.C. appeal's unit certified mail with a request for receipt. The receipt was returned to Plaintiff, on or about December 3, 2016, received at the U.S.P.C. appeals unit.

24. On June 13, 2016, Plaintiff, had no choice, but to re-file his appeal.

5

25. On June 27, Plaintiff appeared before the U.S.P.C., for his S.I.N. the hearing was conducted by Joseph Polawski. At the end of the hearing, Mr. Polawski was unable to reach a decision and would contact Plaintiff's case worker, Ms. Figueroa, and seek Plaintiff's medical file prior to making his decision.

26. Plaintiff, request an evidentiary hearing on this Motion be schedule at the Court's earliest possible date.

## RELIEF SOUGHT

Plaintiff, request an order, ordering the Defendant's to restore Plaintiff, to his former status at the Halfway House prior to being taken in to custody by the U.S. Marshall Service until the Court resolve this matter.


Respectfully submitted,


Dated: 7- 8- 2018

**Richard Thompson, (Pro-Se)**
**#568688/SBI#OSO158535**
**New Jersey State Prison**
**Post Office Box 861**
**Trenton, N.J. 08625-0861**

Richard Thompson
#568688/SBI#OSO158535
New Jersey State Prison
Post Office Box 861
Trenton, N.J. 08625-0861

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLOMBIA

| | |
|---|---|
| **RICHARD THOMPSON,** | *CIVIL ACTION* |
| Plaintiff, | NO: 1:17-CV-02603 (RDM) |
| V. | **MEMORANDUM OF LAW IN SUPPORT FOR PRELIMINARY EMERGENCY INJUNCTION** |
| **ISSAC FULWOOD, JR. etal.** | |
| Defendant. | |

## A PRELIMINARY INJUNCTION SHOULD ISSUE TO MAINTAIN THE STATUS QUO PENDING FINAL RESOLUTION OF THIS ACTION

The purpose of a Preliminary Injunction is to preserve the status quo between the parties pending final determination on the merits. University of Texas v. Camenisch, 451 US 390, 395, 68 L.Ed. F.2d. 175, 180 (1981). Plaintiff, submits this is an extraordinary ancillary remedy, so the right to relief must be clear and unequivocal. Beer Heide v. Zavaras, 997 F. Supp. 1405, 1409-10 (CO. 1998).

The criteria for Preliminary Injunction are (1) whether the Movant is likely to succeed on the merits. (2) Whether the Movant will suffer irreparable injury absent an injunction. (3) Whether the injunction will cause substantial harm to others and (4) whether the public interest will be served by the injunction. Capobianco v. Summents,

1

377 F.3d. 559, 561 (Cag, 2004); <u>Overstreet v. Lexington, Fayette Urgan County Gov't</u>, 305 F. 3d. 566, 573 (Cag, 2002). Plaintiff, will address these criteria seriatim.

<div align="center">

(1) <u>LIKELIHOOD OF SUCCESS OF THE MERITS</u>

</div>

Although this cause is in its early stages of litigation the salient facts, applicable law, and exhibits have been well presented in Plaintiff's complaint on file and herein. Plaintiff, specifically calls the Court attention to Exhibits B1 to B5, C1 to C2, and D. When Plaintiff, was ordered by the United States Parole Commission (Hereafter U.S.P.C.) to continue to his statutory mandatory release date with specific conditions for parole, and then finalized by the National Appeals Board (Hereafter N.A.B.) which decisions are non appealable and binding created an expectation of release at Plaintiff,'s statutory mandatory release date.

When the N.A.B. made its final decision in January of 2007, there was no new information for the U.S.P.C. to base or justify its decision to deny Plaintiff, mandatory parole. All of its reasons cited in its Notice of Action (Hereafter N.O.A.) Exhibit S, the U.S.P.C. knew in 2006, when they first continued Plaintiff, to his statutory mandatory release date. There is absolutely nothing in Plaintiff's conduct between 2006, and 2016, to warrant such a drastic change in the U.S.P.C. decision. The violation of Plaintiff, Fourteen Amendment Due Process Rights clearly violates established law and has been repeatedly held actionable. Plaintiff, has a clear likelihood of success upon the merits if the Court views evidence in the light most favorable to Plaintiff as the law requires. See: <u>Ashcroft v. Igbal</u>, 556 U.S. 662, 678. The most compelling evidence are (1) Exhibits B-1 to B-5, (attached to complaint) C-1 to C-2, D (attached to complaint) and national Appeal Summary identified as 1,2, and 3 (attached to this injunction) on page 3, lines 22 and 12

<div align="center">2</div>

under notes, the U.S.P.C. alleged to have gave Plaintiff a (15) fifteen year reconsideration hearing at Plaintiff's 9/20/06 hearing which it did not. See: Exhibits B-1 to B-5. (Attached to complaint). The U.S.P.C. is all over the place in their decision from giving Plaintiff a mandatory release date, continue to expiration, and now a (15) fifteen year reconsideration hearing!

## (2) <u>IRREPARABLE INJURY</u>

When Plaintiff, was at the Halfway House he was actively obtaining insurance under the Affordable Care Act (Hereafter A.C.A.). Now, the Act is being threatened to be replaced and repealed. Plaintiff, is one of the estimated twenty three (23) million Americans who will lose and cannot afford insurance. Plaintiff, suffers from Osteoarthritis of the lower lumbar spine, and walks with a cane. (See: Exhibit O).

These is no doubt that long term confinement has physical as well as psychological effects. While Plaintiff, was at the Halfway House he was scheduled to undergo psychological evaluation at a mental health facility to determine the effects of long term incarceration. Plaintiff, has been incarcerated forty four (44) years.

Whatever psychological and physical effects Plaintiff, is suffering will progressively get worse if this Court does not intervene. In a U.S. Supreme Court decision the Court held that ... "The loss of First Amendment Freedom, for even minimal periods, unquestionably Constitute Irreparable Injury". <u>Elrod v. Burns</u>, 427 US 347 49 L.Ed. 2d. 547, 565 (1976). Although this action is not a First Amendment Violation. Plaintiff, Fourteen Amendment Violation is far from minimal.

### (3) <u>SUBSTANTIAL HARM TO OTHERS</u>

A Preliminary Injunction Order ordering the Defendants to return Plaintiff, to his former Status at the Halfway House at Volunteers of America in Baltimore, Maryland until the adjudification of this instant cause will not harm the Defendants or jeopardize the Public and will allow Plaintiff, to continue his forward progress of reintegrating into society while this litigation continues without placing Plaintiff, in harm's way. Prisoners at N.J.S.P. are serving a minimal of (50) fifty years. Plaintiff, has not had an institutional incident report, in over thirty (30) years. While at the Halfway House Plaintiff, went on numerous furloughs all unescorted, and without incident. When Plaintiff, was taken back into custody he surrendered without incident. When Plaintiff, was being held at the Kent County Jail he was approached by Law Enforcement to speak to the youth at the jail about joining gangs and the pitfall of making bad decisions. Plaintiff, agreed to speak to the youths. Since Plaintiff, has been back at NJSP after such a devastation turn around he has remained positive.

### (4) <u>PUBLIC INTEREST.</u>

Affording prisoner's Fundamental Rights is in the Public Interest. <u>Beerheide v. Zavaras</u>, Supra. 997 F. Supp. At 1411, because ... "the public clearly has an interest in vindicating Constitutional Rights..." <u>Overstreet v. Lexington, Fayette Urgan County Gov't</u>, Supra 305 F. 3d. at 579. Plaintiff, submit he meets all of the criteria for issuance of a Preliminary Injunction by a clear showing. <u>Masvurek v. Armstrong</u>, 520 U.S. 968, 972 (1997).

4

## RELIEF SOUGHT

Wherefore, Plaintiff, respectfully request and prays this Honorable Court to issue an Order, ordering the Defendant to return Plaintiff, to his former Status at the Halfway House at Volunteers of America in Baltimore, Maryland until the adjudification of this instant cause and any other such relief that this Court deem just and equitable under the circumstances.

Respectfully submitted,

Dated: 7·8– 2018

Richard Thompson, (Pro-Se)
#568688/SBI#OSO158535
New Jersey State Prison
Post Office Box 861
Trenton, N.J. 08625-0861

5

# PLAINTIFF,'S
# EXHIBITS

## NATIONAL APPEAL SUMMARY

Name ..........................: Thompson, Richard

Reg No .......................: 20080-101

Months at Release.... : N/A

Appeal Received ...... : 8/3/2017

Reviewer .................. : GJT

**Recommended Action:**

Affirm the previous decision.

**Recommended Reasons:**

In your appeal, you claim that: (1) "[t]he Commission applied statutes/and or regulation incorrectly which applied correctly would have a different decision;" (2) "[t]he Commission made several procedural errors and a different decision would have resulted if the correct procedure had been followed;" (3) "the Commission relied on erroneous information and the actual facts justify a different decision; (4) "the Commission made error in calculating time in custody;" (5) "the Commission engaged in disparity that was unjustifiably wide and what the 1984, Sentencing Reform Act was designed to correct. Had the Commission followed the act's intent, a different decision would have resulted;" (6) "the Commission's stated reasons in its notice of action dated August 10, 2016, are not factually true and had the [audio] of the hearing been listened to a different decision would have been reached;" and (7) "there are especially mitigating circumstances which justify a different decision." For the following reasons, your appeal is denied.

In your first claim, you argue that you have completed your life sentence for murder in 2010. You further argue that you are currently *only* serving your 10 year sentence for Assault on a Federal Correctional Officer which was ordered to be served consecutively to your life sentence. Your first claim is meritless.

Pursuant to 28 C.F.R. § 2.53, the Commission holds mandatory parole hearings when a federal inmate has served 30 years of a life sentence unless there are additional consecutive sentences. Because you had a 10 year sentence that will run consecutive to your life sentence for murder, the Commission held your mandatory parole hearing on July 27, 2016 before your aggregate two-thirds date calculated in compliance with 28 C.F.R. § 2.53. The calculation of your mandatory parole hearing date (i.e. your two-thirds date as calculated by the Bureau of Prisons) does not mean that either your life sentence for murder or your consecutive 10 year sentence for Assault on a Federal Correctional Officer have expired. The calculation is done for your mandatory parole hearing only.

In addition, your understanding of the Commission's term "mandatory parole" is in error. The Commission makes a decision to grant an inmate parole at a mandatory parole hearing in accordance with 18 U.S.C. § 4206(d) which states:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however*, That the Commission shall not release such prisoner if it determines that he

has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

In the Notice of Action dated August 10, 2016, the Commission stated that it denied you mandatory parole because "[y]ou have frequently and seriously violated the rules of the institutions you were confined in over the last 40 years." Specifically, "you killed an inmate while at USP Lompoc in 1976, attempted to escape from USP Marion in 1983, stabbed a BOP staff member 17 times in 1983, [were] found guilty of fighting, assault, threatening bodily hard, and possession of dangerous weapons...." Therefore, the Commission's decision to deny you mandatory parole was in compliance with 18 U.S.C. § 4206(d) and your first claim is denied.

In your second claim, you argue that the Commission erred by considering the entirety of your record in prison and should have limited its review of your disciplinary and criminal infractions while incarcerated to a more limited time frame. 28 C.F.R. § 2.19 governs the information considered by the Commission. While the timing of criminal convictions and violations of the rules of the institution are considered by the Commission, the Commission also considers the seriousness of the violations. Here, the Commission complied with 28 C.F.R. § 2.19 and your second claim has no merit.

In your third claim, you argue that a letter submitted by the Director of the Bureau of Prisons opposing your parole should not have been considered by the Commission in its decision. You also argue that the Commission did not consider your latest progress report and that the Commission's decision would have been different had they considered the progress report. Again, the Commission complied with 28 C.F.R. § 2.19, so your third claim has no merit. Furthermore, the submission of the letter by the Director of the Bureau of Prisons did not prejudice you. Notwithstanding the letter, you had murdered another inmate and stabbed a BOP staff member 17 times while incarcerated. Furthermore, you have committed over 45 DHO level violations while incarcerated. The weight of the evidence, excluding the letter from the Director of the Bureau of Prisons, supports the Commission's decision and reasons to deny you parole.

In your fourth claim, you argue that the Commission made an error in calculating your time in custody. The Commission is not responsible for calculating your time in custody and does not have the authority to change your time credited. If you have an issue with the calculation of your time in custody, you are required to address that with the Bureau of Prisons.

In your fifth claim, you argue that the Commission has engaged in sentence disparity by not granting you parole because the co-defendants of your original rape charge have been paroled and some members of prison staff have written letters supporting your parole. This claim lacks merit. While your co-defendants have been paroled, they also were not convicted of murder and did not stab a corrections officer 17 times. Furthermore, the Commission is presumed to have considered all letters of support of your parole that you submit. The Commission made its decision in accordance with 18 U.S.C. § 4206(d) based on the entirety of your record. Therefore, your fifth claim is denied.

In your sixth claim, you argue that the Commission's reasons for denying you parole as stated in the Notice of Action are not consistent with the record of your hearing. The Commission is presumed to have reviewed the entirety of your hearing. Furthermore, all of the Commission's reasons for denying your mandatory parole are supported by documentary evidence in your record. Your sixth claim is meritless.

In your seventh and final claim, you argue that there are exceptionally mitigating circumstances in your case that justify a different decision. Specifically, you argue that you had performed well when placed in a halfway house and that you have major health complications. The Commission reviewed that the entirety of your record and determined that your frequent and serious violations of institutional rules outweigh factors in mitigation.

The Commission also found that there is a high probability you will violate laws if released. Therefore, ground seven does not have merit.

**Notes:**

On 9/13/1974, subject was originally sentenced to 6-8 years for rape under the Youth Corrections Act. While serving this sentence, subject murdered another inmate at Lompoc. On 2/16/1976, subject received a life sentence for his murder of another inmate. On 5/18/1983, subject was sentenced again for Attempting to Escape. Subject received a 5 year sentence to run concurrently with his other sentences. On 8/2/1985, subject was convicted of Assault on a Federal Correctional Officer and was sentenced to 10 years to run consecutively with his other sentence. Specifically, subject had stabbed the correction's officer 17 times.

On 2/26/1992, the Commission held subject's initial hearing and designated his case as Original Jurisdiction. Subject was denied parole and scheduled for a 15-year reconsideration hearing in February 2007. At time of 2/26/1992 hearing, subject had committed 46 DHO level violations.

Subject's case was declassified from Original Jurisdiction on 5/10/1996.

On 9/20/2006, the Commission held subject's 15-year reconsideration hearing. The Commission decided to continue subject to a 15-year reconsideration hearing.

On 7/27/2016, the Commission conducted subject's mandatory parole hearing. Subject had served 40 years of his sentences at that time. The Commission denied mandatory parole citing subject's frequent and serious violations of the rules of the institution.

I recommend that the Board affirm.

GJT

October 12, 2017

Richard Thompson #568688
S.B.I. 0OS0158535
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD THOMPSON, | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 17:-cv-02603 (MRD) |
| | : | |
| v. | : | |
| | : | |
| ISSAC FULWOOD, Jr., et al. | : | |
| Defendants. | : | |
| | : | |

**CERTIFICATE OF SERVICE**

I, Richard Thompson, Plaintiff, Pro Se, do hereby declare

and certify that I have placed for mailing an original and 12

(12) copies, (an original and one copy to clerk of court and one

courtesy copy to Judge's Chamber's)and one copy for each

defendant, of Plaintiff's Motion For Preliminary Emergency

Injunction, Exhibit S, and Certificate of Service, to be mailed

to the Clerk of Court whose address is: United States District

Court for the District of Columbia, United States Courthouse,

333 Constitution Avenue, N.W. Washington, D.C. 20001, on this 8

day of July, 2018, and one copy to each named defendant whose

names and addresses'are to wit: Issac Fulwood, Jr., J. Patricia

Wilson-Smoot, Patricia K. Cushwa, Earl Bracey, Stephen T. Nasko,

Stephen Husk, and Mark Tanner, at the United States Parole

RECEIVED
Mail Room
JUL 11 2019
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Commission, 90 K. Street, N.E. Washington, D.C. 20530, Charles

E. Samuels, Jr., and Harley Lappin, at Federal Bureau of Prisons

Central Office, 320 First Street, N.W. Washington, D.C. 20534,

and Jeff Sessions, at Attorney General's Office, Tenth and

Constitution Avenue, N.W. Washington, D.C. 20530, by the prison

mailing system by placing the above said documents in the hands

of the officer in charge of the mail on the cell block 2-left

for which a postage remit was submitted for first class mailing

and signed by the officer whose name appear on the postage

remit.

                                  Respectfully Submitted,

                                   *Richard Thompson*

                                   RICHARD THOMPSON #568688
                                   S.B.I. 00S0158535
                                   NEW JERSEY STATE PRISON
                                   P.O. BOX 861
                                   TRENTON, NJ. 08625

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

RICHARD THOMPSON,           )
                               )
          **Plaintiff,**         )
                               )
       **v.**                )     **Civil Action No. 17-2603-RDM**
                               )
**J. PATRICIA WILSON-SMOOT, _et al.,_**   )
                               )
        **Defendants.**      )
_____)

## OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

      J. Patricia Wilson-Smoot, Chair, United States Parole Commission ("Commission") _et al._

("Defendants"), in their official and individual capacities, by and through the undersigned

counsel, respectfully file this Opposition to the Motion for Preliminary Injunction ("PI") filed by

Richard Thompson ("Plaintiff").

## INTRODUCTION AND SUMMARY

      Plaintiff commenced this action apparently under the erroneous belief that the Parole

Commission lacks the discretion to deny him parole under the mandatory parole statute. 18

U.S.C. § 4206(d). Subsequently, Plaintiff filed this pre-Answer motion for preliminary

injunction. Plaintiff's motion should be denied because this Court has already ruled, both in a

previous case on point and Plaintiff's motion to appoint counsel, that his claim is not likely

meritorious because "mandatory parole in the federal system is not, in fact, mandatory at all."

_Thompson v. Fulwood_, 2018 U.S. Dist. Lexis 112179 (D. D.C. 2018); _see also Dufur v. U.S.P.C._,

2018 U.S. Dist. Lexis 87330 (D. D.C. 2018). Moreover, because Plaintiff seeks an immediate

release to a halfway house, his claim sounds in habeas and will likely not succeed on the merits

because subject matter jurisdiction, personal jurisdiction over his custodian and venue are

Exhibit 25

lacking.  Finally, Plaintiff has not satisfied any of the other factors that would merit entry of an injunction.

## **<u>BACKGROUND</u>**

Plaintiff commenced this action alleging that Defendants violated his Due Process rights when he was "continue[d]…to his mandatory release date" of February 3, 2017, his "release plan was approved," he was released to a halfway house in Baltimore on May 23, 2016, but he was returned to custody on June 7, 2016.  *See generally* ECF No. 1 ("Pl's Compl.").  In his complaint, Plaintiff seeks money damages as well as injunctive relief.  It appears that Plaintiff believes that his mandatory parole release date was February 3, 2017, and the Commission was obligated to release him on or before that day.  *Id*.  Subsequently, Plaintiff filed his PI alleging essentially the same claims and seeking and order that "Defendant[]s [] restore Plaintiff[] to his former status at the Halfway House prior to being taken into by the U.S. Marshall Service until the Court resolve this matter."  ECF No. 15 at 6.

By his own admission, Plaintiff has not been a model citizen.  In 1974, Plaintiff was convicted and sentenced on a rape charge.  Pl's Compl. at 6, ¶ 15.  In 1977, while incarcerated, he was convicted and sentenced on a charge of murdering another inmate.  *Id*., ¶ 16; PI at 2, ¶ 3.  In 1982, Plaintiff was sentenced to a concurrent five years sentence for attempted escape.  Pl's Compl. at 7, ¶ 18; PI at 2, ¶4.  In 1983, Plaintiff was sentenced to a consecutive ten years sentence for the attempted murder of a corrections officer who was stabbed seventeen times.  Pl's Compl. 7, ¶19; PI 2, ¶5.  At his initial parole hearing, Plaintiff received a 15 year setoff until 2007, although he received "statutory interim hearing[s]."  Pl's Compl. at 7, ¶¶ 21-27.

The crux of the matter appears to be that, although the Parole Commission had consistently stated that Plaintiff should be continued to expiration, Plaintiff believed that he was

to be "continued to his statutory two-thirds mandatory release date" of February 3, 2017.  PI at 4,

¶ 12.  Plaintiff alleges that the Commission's language "creat[ed] an expectation of release at

Plaintiff's statutory two thirds mandatory release date."  *Id.*, ¶ 13.  Plaintiff's belief appears to be

based on an erroneous reading of 18 U.S.C. § 4206(d), which provides as follows:

> Any prisoner, serving a sentence of five years or longer, who is not
> earlier released under this section or any other applicable provision
> of law, shall be released on parole after having served two-thirds of
> each consecutive term or terms, or after serving thirty years of each
> consecutive term or terms of more than forty-five years including
> any life term, whichever is earlier: Provided, however, That *the
> Commission shall not release such prisoner if it determines that he
> has seriously or frequently violated institution rules and
> regulations or that there is a reasonable probability that he will
> commit any Federal, State, or local crime* [emphasis added].

In his PI, Plaintiff argues that he is likely to succeed on the merits because all the

information upon which the Commission based its decision to return Plaintiff to custody was

known to it in 2006, when it created the "expectation" that Plaintiff will be paroled by his

statutory mandatory release date.  PI Brief at 2.  He further argues that he is exposed to

irreparable harm because "[w]hatever psychological and physical effects [he] is suffering will

progressively get worse if this Court does not intervene" and return him to the halfway house.

*Id.* at 3.  He further argues that his release to the halfway house does not pose a substantial harm

to others and promotes the public interest.  *Id.* at 4.

## **STANDARD OF REVIEW**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not

be granted unless the movant, by a clear showing, carries the burden of persuasion."  *See

Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Yakus v. United States*, 321 U.S. 414

(1944); *Emily's List v. Federal Election Comm'n*, 362 F.Supp.2d 43, 51 (D. D.C. 2005); *Nat'l

Head Start Ass'n v. Dep't of Health and Human Servs.*, 297 F.Supp.2d 242, 246 (D. D.C. 2004);

*Varicon Int'l v. Office of Personnel Mgmt.*, 934 F. Supp. 440 (D. D.C. 1996); *Kahane v. Secretary of State*, 700 F.Supp. 1162, 1165 (D. D.C. 1988).

The standards for interim injunctive relief, in the form of either a preliminary injunction or a temporary restraining order, are well established. The moving party must show: (1) a substantial likelihood of success on the merits; (2) that he would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. *See Mova Pharm. Corp.*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)) (internal quotation marks omitted). "A district court should not issue a mandatory preliminary injunction unless the facts and the law clearly favor the moving party." *Nat'l Conference on Ministry to Armed Forces v. James*, 278 F.Supp.2d 37, 43 (D. D.C. 2003) (internal quotation marks omitted). And a district court must "balance the strengths of the requesting party's arguments in each of the four required areas." *CityFed*, 58 F.3d at 747. "The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F.Supp.2d 58, 76 (D. D.C. 2013) (internal quotation marks and citation omitted). An interim injunction is "never awarded as of right," *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008), and "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion," *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

This Circuit has set a high standard for irreparable injury. First, the injury "must be both certain and great; it must be actual and not theoretical." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (citing *Wisconsin Gas Co. v. FERC*, 758 F.2d at 674). The moving

party must show "[t]he injury complained of is of such imminence that there is a 'clear and

present' need for equitable relief to prevent irreparable harm." *Id.* Second, the injury must be

beyond remediation. *See id.* at 297. As the D.C. Circuit has explained:

> The key word in this consideration is *irreparable*. Mere injuries,
> however substantial, in terms of money, time and energy
> necessarily expended in the absence of a stay are not enough. The
> possibility that adequate compensatory or other corrective relief
> will be available at a later date, in the ordinary course of litigation
> weighs heavily against a claim of irreparable harm.

*Id.* at 297-98 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d at 674) and *Va. Petroleum Jobbers*

*Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir.1958) (internal quotation marks omitted)); *see also*

*Sampson v. Murray*, 415 U.S. 61, 88-90 (1974).

## ARGUMENT

First, Plaintiff is unlikely to success on the merits because this Court has already ruled in

his motion to appoint counsel that his belief that he is entitled to "mandatory parole," based on

18 U.S.C. § 4206(d), is misplaced. "'Mandatory parole' in the federal system is not, in fact,

mandatory at all." *Thompson v. Fulwood*, 2018 U.S. Dist. Lexis 112179 *2 (D. D.C. 2018)

(citing *Dufur v. U.S. Parole Comm'n*, 17-0677 (RDM) 2018 U.S. Dist. Lexis 87330 (D. D.C.

2018) (holding that "Thompson has failed to demonstrate that…his claims are potentially

meritorious"). Secondly, in both his complaint and PI, Plaintiff seeks "reinstating [his] release

date immediately [and] returning [him] back to the halfway house." ECF No. 1 at 15; ECF No

15 at 12. Thus, because Plaintiff seeks immediate release, the likelihood of success on the merits

is further undermined by the fact that his complaint sounds in habeas for which both subject

matter jurisdiction and venue are lacking in this Court. Plaintiff currently has a habeas action

pending in the District of New Jersey that appears to challenge his various parole denials.

*Thompson v. D'Ilio*, No. 13-6282, 2016 WL 6305953 (D. N.J. 2016). Finally, in denying

Plaintiff's motion to appoint counsel, this Court has already ruled that "appointment of counsel would not otherwise serve the interests of justice" in this case. Therefore, Plaintiff's motion should be denied.

### a. Plaintiff's Motion has no Statutory Basis and Cannot Succeed on the Merits

The fact that the governing statute provides for "mandatory parole" could "understandably" lead Plaintiff to believe that he should have been granted parole. *Dufur*, 2018 U.S. Dist. Lexis 87330 at * 1. Any prisoner sentenced to more than 5 years imprisonment is entitled to be released on parole after serving two-thirds of each consecutive term or 30 years, whichever is first, unless the Commission determines that the prisoner "has seriously or frequently violated institution rules" or that there is a reasonable probability that he would commit further crimes. 18 U. S. C. § 4206 (d). *United States v. Addonizio*, 442 U.S. 178, 188-89 n13 (1979); *Dufur*, 2018 U.S. Dist. Lexis 87330 at * 1. The Commission has substantial discretion to determine whether a prisoner should be released on parole, once he is eligible, prior to the point where release is mandated by statute. *Id*. The mandatory parole exceptions "mean that 'mandatory' parole is not really mandatory." *Dufur*, 2018 U.S. Dist. Lexis 87330 at 19 (citing *Bruscino v. True*, 708 F.App'x 930, 935 (10th Cir. 2017)).

Notwithstanding the language of the statute, Plaintiff appears to be seeking to capitalize on an error or miscommunication that occurred between the Parole Commission and BOP that resulted in his short release to a halfway house before he was returned when the error was discovered. The Parole Commission has been clear since Plaintiff's initial parole hearing that his crimes and institutional conduct were of a nature that would make parole for him a difficult proposition. In 2011, 2013, and 2015, the Parole Commission "decided to continue you[r parole] until the expiration of your sentence." Exhibits A, B, C. Shortly after Plaintiff's release to a

halfway house in May 2016, he was apprehended and returned two weeks later, and he received

a parole hearing in August 2016.  At that time, the Parole Commission "denied [Plaintiff]

mandatory parole[] [and] continue[d] him to expiration.  *See* Exhibit C.  The Parole Commission

determined that, based on Plaintiff's past conduct, there was a "high probability" that he would

not be a law abiding citizen.  *Id*.  Plaintiff appealed the Parole Commission's denial, but was not

able to get a different result.  PI at 14.

Plaintiff received all the Due Process rights was constitutionally entitled within the

context of whatever "expectation" of release he might have had.  Plaintiff was "allowed an

opportunity to be heard and was provided a statement of the reasons why parole was denied" and

he was given parole hearing in 2009, 2011, 2013, 2015 and after he was erroneously released and

retaken into custody in August 2016.  *Dufur*, 2018 U.S. Dist. Lexis 87330 at 36-37 (citing

*Greenholtz v. Inmates of Nebraska Penal & Corr. Complex.*, 442 U.S. 1 (1979) (analyzing the

Due Process requirements and the balance between parole statutes' creation of an expectation of

release and the Parole Commissions total discretion to grant or deny parole).  Thus, Plaintiff's

claim will very likely fail on the merits because he was afforded all his Due Process rights or

notice and an opportunity to be heard.

> **b.** **Because Plaintiff seeks Release his Sole Relief is a Habeas Action**

This action is also unlikely to succeed on the merits because Plaintiff's claim sounds in

habeas for which personal jurisdiction over Plaintiff's custodian and venue are lacking in this

Court.  Moreover, Plaintiff has a habeas action pending in the District of New Jersey.  A person

who is "in custody in violation of the Constitution or laws or treaties of the United States" may

petition for a writ of habeas corpus in district court. 28 U.S.C. § 2241(c)(3).  A challenge to the

fact or duration of custody as being in violation of the Constitution or laws or treaties of the

United States is cognizable under the general habeas statute.  *See Rasul v. Bush*, 542 U.S. 466

(2005) ("§2241 confers . . . jurisdiction to hear petitioners' habeas corpus challenges to the

legality of their detention at the Guantanamo Bay Naval Base"); *Chatman-Bey v. Thornburgh*,

864 F.2d 804, 807 (D.C. Cir. 1988) (a prisoner's challenge to the date on which he was eligible

to be considered for parole "falls comfortably within the broad reach of habeas corpus").  Here,

Plaintiff questions the durations of his incarceration and requests that the Parole Commission be

ordered to immediately release him.  Thus, because Plaintiff's claim raises questions about the

fact or duration of his incarceration, he should be required to bring his claim as a habeas petition

in the jurisdiction where his custodian is located, and this action should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(2) and that also has personal jurisdiction over his custodian.  In addition,

for the same reasons, venue for a habeas action would be improper in this jurisdiction making

dismissal under Rule 12(b)(3) appropriate.

Because it is an available and efficacious remedy, Plaintiff's claim should be construed as

a petition for writ of *habeas corpus*, pursuant to Title 28 U.S.C. § 2241, and should be dismissed.

In this connection, transfer to the federal district of Plaintiff's incarceration is not necessary

because Plaintiff already has a habeas action pending in New Jersey where he is incarcerated.

The relevant language of the § 2241 *habeas* statute states: The writ of *habeas* corpus shall not

extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or

treaties of the United States[.]  Title 28 U.S.C. § 2241(c)(3).  A federal prisoner's attack on the

"fact or duration" of his confinement is relegated to § 2241 *habeas* relief which must be brought

in the federal district of incarceration.  *Chatman-Bey v. Thornburgh*, 864 F.2d 804 (D.C. Cir.

1988) (en banc).  Pursuant to § 2241, the federal district courts undeniably have subject matter

jurisdiction to entertain such complaints, 28 U.S.C. § 2241(a), and may subsequently fashion the

appropriate relief "as law and justice require."  28 U.S.C. § 2243.

In *Chatman-Bey*, the court went to great lengths in describing the "breadth and flexibility" of the § 2241 habeas writ as a remedy for federal prisoners seeking immediate or accelerated release from unlawful incarceration.  *Chatman-Bey*, 864 F.2d at 806-10.  The focus of its decision was on Congress' intent, manifested through § 2241, to provide a specific remedy to federal prisoners who are "in custody," and challenging the lawfulness of that custody.  By enacting § 2241, the Court concluded, Congress intended that federal prisoners use that provision, instead of other less narrowly tailored forms of relief, e.g., mandamus or declaratory judgment relief, in challenging their detention.  *Id*.  The court stated its reasoning was "of a piece with the well-settled principle that a specific statute displaces (or, as is frequently said, preempts) more general remedies."  *Id*.  Plaintiff's complaint, which directly attacks his imprisonment, should be preempted by § 2241 habeas statute for relief for the identical reasons that *Chatman-Bey* declared such relief the sole remedy for federal prisoners challenging the "fact or duration" of their confinement.

Not only is it unlike that Plaintiff will prevail on the merits, he has not made out any cogent case for any of the other elements of the preliminary injunction standard.  In his motion, he merely states that his irreparable injury is that his physical and psychological condition will only get worse if he remains incarcerated.  ECF No. 15 at 8.  It is axiomatic that speculative injury will not support emergency injunctive relief, and that the threat of irreparable injury must be real and imminent.  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Plaintiff does not submit any medical evidence to support this assertion.  Such "vague and unsubstantiated speculation" fails to demonstrate an actual or imminent injury that is both "certain and great."  *Am. Bioscience, Inc. v. Thompson*, 141 F.Supp.2d 88, 97 (D. D.C. 2001),

9

*vacated on other grounds*, 269 F.3d 1077 (D.C. Cir. 2001).

Thus, because Plaintiff is unlikely to prevail on the merits and none of the other

preliminary injunction facts favor such an extraordinary and drastic remedy, Plaintiff's PI should

be denied.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #474845
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

/s/ *Kenneth Adebonojo*
KENNETH ADEBONOJO, N.J. Bar #00676-2001
Assistant United States Attorney
U.S. Attorney's Office
555 Fourth Street, N.W. – Room E4210
Washington, D.C. 20530
(202) 252-2562
kenneth.adebonojo@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Opposition to Plaintiff's Motion for Preliminary

Injunction was served on August 6, 2018, by first-class United States mail, postage prepaid,

addressed to:

> Mr. Richard Thompson
> No. 568688/SBI# OOS0158535
> New Jersey State Prison
> P.O. Box 861
> Trenton, NJ 08625-0861